Kevin H. Marino
MARINO, TORTORELLA & BOYLE, P.C.
437 Southern Boulevard
Chatham, New Jersey 07928-1488
(973) 824-9300
*Attorneys for Plaintiff Sergey Aleynikov*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------x

| | |
|---|---|
| SERGEY ALEYNIKOV,<br><br>Plaintiff,<br><br>v.<br><br>THE GOLDMAN SACHS GROUP, INC.,<br><br>Defendant. | No. 12 Civ. _____<br><br>**PLAINTIFF'S STATEMENT OF**<br>**MATERIAL FACTS NOT IN DISPUTE** |

---------------------------------------------------------x

Plaintiff Sergey Aleynikov ("Aleynikov") respectfully submits this Statement of Material Facts Not In Dispute in support of his Motion for Summary Judgment and pursuant to Local Civil Rule 56.1(a).

1. Aleynikov is a resident of the State of New Jersey, the County of Essex and the Township of West Orange. (Verified Complaint ¶ 10.)

2. The Goldman Sachs Group, Inc. ("Goldman Sachs") is a corporation organized under the laws of the State of Delaware with its principal executive offices located at 200 West Street, New York, New York 10282. (Id. ¶ 11.)

3. Goldman Sachs is the limited partner of Goldman, Sachs & Co., which is an indirectly wholly owned subsidiary of Goldman Sachs. (Id.)

4. Goldman Sachs has offices in Jersey City and Princeton, New Jersey, and regularly conducts business in the State of New Jersey, both directly and through its subsidiaries. (Id.)

5. Complete diversity of citizenship exists between the parties, and Aleynikov's damages are in excess of $75,000. (Id. ¶ 12.)

6. A substantial part of the events or omissions giving rise to the claims in this case occurred in the State of New Jersey. Specifically, Aleynikov was arrested on both the State and Federal Charges while in New Jersey; Aleynikov resided in New Jersey during his tenure as a Goldman Sachs Vice President; and most of the defense costs at issue in this case were or will be incurred in New Jersey. (Id. ¶ 13.)

7. Goldman Sachs, through its subsidiary Goldman, Sachs & Co., provides financial services in the United States and around the world and is engaged in, among other activities, high-frequency trading on various commodity and equity markets. (Id. ¶ 14.)

8. From May 7, 2007, through June 30, 2009, Aleynikov was employed by Goldman, Sachs & Co. as a Vice President in its Equities Division. (Id. ¶ 15.)

9. As a former Vice President of Goldman, Sachs & Co's Equities Division, Aleynikov is an Officer within the meaning of Article IV, Section 4.1 and Article VI, Section 6.4 of the By-Laws. (Id. ¶ 41.)

10. Although Aleynikov was employed by Goldman, Sachs & Co. as an officer through June 30, 2009, his last day in the office was June 5, 2009. (Id. ¶ 15 n.1.)

11. Aleynikov was a member of the team of computer programmers that was responsible for developing and improving certain source code relating to Goldman Sachs's high-

frequency trading business, and had security clearance to access all files related to Goldman Sachs's high-frequency trading system.  (Id. ¶ 15.)f

12. On or about July 1, 2009, Goldman Sachs, through its employees and agents, contacted the United States Attorney's Office for the Southern District of New York and/or the Federal Bureau of Investigation (the "FBI"), to report that Aleynikov had electronically transferred files relating to its high-frequency trading system outside of Goldman Sachs during his final days at the office.  (Id. ¶ 16.)

13. Agents of the FBI arrested Aleynikov at Newark Liberty International Airport in Newark, New Jersey on July 3, 2009.  (Id. ¶ 17.)

14. Aleynikov was charged in a Criminal Complaint, which alleged that he violated federal law by, inter alia, transferring source code outside of Goldman Sachs during his final days at the office.  (Id.)

15. In a three-count indictment returned on February 11, 2010 (the "Indictment"), a federal grand jury charged Aleynikov with violations of federal law based on his alleged transfer of source code outside of Goldman Sachs.  (Id. ¶ 18 and Ex. A.)

16. The Indictment, charging that Aleynikov unlawfully downloaded and transported computer source code for Goldman Sachs's high-frequency trading system, was instituted against him by reason of the fact that he was an officer of Goldman, Sachs & Co.  (Id. ¶ 42.)

17. Aleynikov retained Marino, Tortorella & Boyle, P.C. ("MTB"), to represent him with respect to the Indictment on April 28, 2010.  (Id. ¶ 19.)

18. MTB filed a motion to dismiss the Indictment on July 16, 2010, arguing that it failed to state an offense under the federal statutes Aleynikov was charged with violating.  (Id. ¶ 20.)

19. In a written opinion issued on September 3, 2010, the Honorable Denise L. Cote, U.S.D.J., dismissed one count of the Indictment but declined to dismiss the other counts and ordered Aleynikov to proceed to trial. United States v. Aleynikov, 737 F. Supp. 2d 173 (S.D.N.Y. 2010). (Id.)

20. On December 10, 2010, a jury found Aleynikov guilty on both counts remaining in the federal Indictment. (Id. ¶ 21.)

21. On March 18, 2011, Judge Cote sentenced Aleynikov to a term of imprisonment of 97 months. (Id. ¶ 22.)

22. On March 23, 2011, Aleynikov timely filed a notice of appeal of his conviction and sentence to the United States Court of Appeals for the Second Circuit. (Id. ¶ 23.)

23. The Second Circuit heard oral argument on Aleynikov's appeal on February 16, 2012, and later that day summarily reversed his conviction and ordered his release from custody. (Id.)

24. The Second Circuit issued an opinion on April 11, 2012, explaining its conclusion that Aleynikov's conduct did not constitute a crime under either federal statute charged in the Indictment. United States v. Aleynikov, 676 F.3d 71 (2d Cir. 2012). (Id. ¶ 24.)

25. On June 5, 2012, following the issuance of the Second Circuit's Mandate, the District Court entered a Judgment of Acquittal in Aleynikov's favor, thereby confirming his successful defense of the Federal Charges in their entirety. (Id. ¶ 25 & Ex. B.)

26. In defending the Federal Charges, Aleynikov incurred legal fees and expenses totaling $2,383,002.56, of which he was only able to pay $547,960.00 before being rendered impecunious. (Id. ¶ 26.)

27. On August 2, 2012, Aleynikov was arrested in New Jersey as an alleged "fugitive from justice" based on New York State charges relating to his alleged download of computer source code to Goldman Sachs's high-frequency trading system during his final days at work — the same conduct underlying the Federal Charges. (Id. ¶ 27.)

28. The Felony Arrest Warrant, dated August 1, 2012, alleges that on June 5, 2009, at Goldman Sachs's offices in New York, New York, Aleynikov copied computer source code for Goldman's high-frequency trading system without having the right to do, thereby violating various state laws. (Id. ¶ 28 and Ex. C.)

29. The Manhattan District Attorney's Office has advised Aleynikov's counsel that it will seek an indictment in the near future on charges relating to his alleged copying of computer source code for Goldman's high-frequency trading system. (Id. ¶ 29.)

30. Although Aleynikov intends to fight the State Charges, he is currently unemployed, relies on the charity of friends to provide him with shelter, and lacks sufficient resources to retain MTB to defend him. (Id. ¶ 30.)

31. The Amended and Restated By-Laws of The Goldman Sachs Group, Inc., as amended and restated as of May 7, 2010 (the "By-Laws"), provide for the mandatory indemnification and advancement of legal expenses of former officers of its subsidiaries, including Goldman, Sachs & Co., to the fullest extent permitted by law. (Id. ¶ 31 and Ex. D.)

32. Section 6.4 of the By-Laws provides, in part, as follows:

> Section 6.4. Indemnification. The Corporation shall indemnify to the full extent permitted by law any person made or threatened to be made a party to any action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person or such person's testator or intestate is or was a director or officer of the Corporation, is or was a director, officer, trustee, member, stockholder, partner, incorporator or liquidator of a Subsidiary of the Corporation, is or was a member of the

Shareholders' Committee acting pursuant to the Amended and Restated Shareholders' Agreement, dated as of May 7, 1999, among the Corporation and the Covered Persons listed on Appendix A thereto, as amended from time to time, or serves or served at the request of the Corporation as a director, officer, trustee, member, stockholder, partner, incorporator or liquidator of or in any other capacity for any other enterprise. Expenses, including attorneys' fees, incurred by any such person in defending any such action, suit or proceeding shall be paid or reimbursed by the Corporation promptly upon demand by such person and, if any such demand is made in advance of the final disposition of any such action, suit or proceeding, promptly upon receipt by the Corporation of an undertaking of such person to repay such expenses if it shall ultimately be determined that such person is not entitled to be indemnified by the Corporation. The rights provided to any person by this by-law shall be enforceable against the Corporation by such person, who shall be presumed to have relied upon it in serving or continuing to serve as a director or officer or in such other capacity as provided above. In addition, the rights provided to any person by this by-law shall survive the termination of such person as any such director, officer, trustee, member, stockholder, partner, incorporator or liquidator and, insofar as such person served at the request of the Corporation as a director, officer, trustee, member, stockholder, partner, incorporator or liquidator of or in any other capacity for any other enterprise, shall survive the termination of such request as to service prior to termination of such request. No amendment of this by-law shall impair the rights of any person arising at any time with respect to events occurring prior to such amendment.

. . . .

For purposes of this by-law, the term "Subsidiary" shall mean any corporation, partnership, limited liability company or other entity in which the Corporation owns, directly or indirectly, a majority of the economic or voting ownership interest; the term "other enterprise" shall include any corporation, partnership, limited liability company, joint venture, trust, association or other unincorporated organization or other entity and any employee benefit plan; the term "officer," . . . when used with respect to a Subsidiary or other enterprise that is a corporation, shall refer to any person elected or appointed pursuant to the bylaws of such Subsidiary or other enterprise or chosen in such manner as is prescribed by the by-laws of such Subsidiary or other enterprise or determined by the board of directors of such Subsidiary or other enterprise . . . .

(Id.)

33. By letter dated August 24, 2012, MTB demanded that Goldman Sachs honor its obligations to Aleynikov under Delaware General Corporation Law ("DGCL") and the By-Laws to: (1) promptly indemnify him for the actual and reasonable legal expenses that he incurred in connection with his defense of the Federal Charges; and (2) promptly begin to advance the actual and reasonable legal expenses he incurs in connection with his defense of the State Charges.[1] (Id. ¶ 32 and Ex. E.)

34. By letter dated August 24, 2012, Aleynikov provided Goldman Sachs with an Undertaking by which he promised to repay the legal fees and expenses advanced in connection with the State Charges if it should ultimately be determined that he is not entitled to indemnification. (Id. ¶ 33 and Ex. E.)

35. Goldman Sachs has not complied with or even responded to Aleynikov's demand for indemnification and advancement. (Id. ¶ 34.)

36. Aleynikov incurred significant legal fees and expenses in connection with his successful defense of the Federal Charges. (Id. ¶ 35.)

37. Aleynikov exhausted his financial resources long before his trial on the Federal Charges and is currently indebted to MTB for the additional fees and expenses incurred through trial and appellate proceedings. (Id.)

38. MTB has agreed to defend Aleynikov on an hourly basis to defend the State Charges and has asked him to provide MTB with an initial retainer of $500,000 to secure payment of MTB's fees and expenses in connection with the State Charges. (Id. ¶ 36.)

---

[1] The amount demanded in that letter did not include additional expenses paid directly by Aleynikov totaling $46,960. Therefore, while Aleynikov demanded $2,336,042.56 in the August 24, 2012 letter, he seeks $2,383,002.56 in this action. (Id. ¶ 32 n.2.)

7

39. As Aleynikov's defense of the Federal Charges left him impecunious, he is unable to pay his debts, let alone the retainer necessary for his defense of the State Charges. (Id. ¶ 37.)

40. Goldman Sachs is a global investment banking and securities firm specializing in investment banking, trading and principal investments, asset management and securities services. (Certification of Kevin H. Marino, Ex. 1.)

41. Goldman Sachs provides services to corporations, financial institutions, governments, and high-net worth individuals. (Id., Ex. 1.)

42. On July 17, 2012, Goldman Sachs reported net revenues of $6.3 billion and net earnings of $962 million for the fiscal quarter ending June 30, 2012. (Id., Ex. 2.)

Respectfully submitted,

MARINO, TORTORELLA & BOYLE P.C.
*Attorneys for Plaintiff Sergey Aleynikov*

Dated: September 25, 2012          BY: _____
Chatham, New Jersey                           KEVIN H. MARINO