A. Ross Pearlson
WOLFF & SAMSON PC
One Boland Drive
West Orange, NJ  07052
(973) 325-1500

Matthew W. Friedrich (*pro hac vice* application pending)
Jonathan M. Shaw (*pro hac vice* application pending)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue N.W.
Washington, D.C.  20015
(202) 237-2727

*Counsel for Defendant The Goldman Sachs Group, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SERGEY ALEYNIKOV, <br><br> Plaintiff, <br><br> v. <br><br> THE GOLDMAN SACHS GROUP, INC., <br><br> Defendant. | No. 12-cv-5994-KM-MAH <br><br> **DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE** |

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1(a),

Defendant The Goldman Sachs Group, Inc. ("GS Group") submits the following as

its response to Plaintiff Sergey Aleynikov's ("Aleynikov's") Statement of Material

3520392.1

Facts Not In Dispute. To the extent not specifically stipulated to below, each factual assertion by Plaintiff is denied.

## RESPONSES TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.     Aleynikov is a resident of the State of New Jersey, the County of Essex and the Township of West Orange. (Verified Complaint ¶ 10.)

**Response:**  Because there has been no discovery in this matter, GS Group does not have sufficient information to stipulate to or deny this statement. The Goldman Sachs organization's (collectively, the "firm's") last known address for Aleynikov is a New Jersey address. (*See* Declaration of A. Ross Pearlson, dated October 10, 2012 ("Pearlson Decl.") ¶ 5(a).)

2.     The Goldman Sachs Group, Inc. ("Goldman Sachs") is a corporation organized under the laws of the State of Delaware with its principal executive offices located at 200 West Street, New York, New York 10282. (*Id.* ¶ 11.)

**Response:**  Stipulated.

3.     Goldman Sachs is the limited partner of Goldman, Sachs & Co., which is an indirectly wholly owned subsidiary of Goldman Sachs. (*Id.*)

**Response:**  Stipulated to the extent that "Goldman Sachs" is defined as GS Group.

2

4.     Goldman Sachs has offices in Jersey City and Princeton, New Jersey, and regularly conducts business in the State of New Jersey, both directly and through its subsidiaries. (*Id.*)

**Response:**   Stipulated to the extent that "Goldman Sachs" is defined as GS Group.  GS Group and certain of its subsidiaries regularly conduct business in New Jersey.  However, GS Group does not conduct business "through its subsidiaries."

5.     Complete diversity of citizenship exists between the parties, and Aleynikov's damages are in excess of $75,000. (*Id.* ¶ 12.)

**Response:**   Stipulated as to diversity of citizenship, assuming that Aleynikov's last known address in the firm's records is still accurate.  Stipulated that Aleynikov has pleaded damages in excess of $75,000.  However, Aleynikov in fact is not entitled to any damages. (*See* Defendant's Statement of Material Facts Not In Dispute ("Def. Statement") ¶¶ 28–30, 32.)

6.     A substantial part of the events or omissions giving rise to the claims in this case occurred in the State of New Jersey. Specifically, Aleynikov was arrested on both the State and Federal Charges while in New Jersey; Aleynikov resided in New Jersey during his tenure as a Goldman Sachs employee; and most of the defense costs at issue in this case were or will be incurred in New Jersey. (*Id.* ¶ 13.)

3

**Response:**   Stipulated that, on information and belief, Aleynikov was arrested on the Federal Charges while in New Jersey.  Because there has been no discovery in this matter, GS Group does not have sufficient information to stipulate to or deny the statements that: "A substantial part of the events or omissions giving rise to the claims in this case occurred in the State of New Jersey"; "Aleynikov was arrested on . . . the State . . . Charges while in New Jersey"; or that "most of the defense costs at issue in this case were or will be incurred in New Jersey." (*See* Pearlson Decl. ¶ 5(b)–(d).)  Aleynikov was never a vice president or employee of GS Group, to the extent that "Goldman Sachs" is defined as GS Group.  (*See* Def. Statement ¶¶ 31–32.)

7.     Goldman Sachs, through its subsidiary Goldman, Sachs & Co., provides financial services in the United States and around the world and is engaged in, among other activities, high-frequency trading on various commodity and equity markets. (*Id.* ¶ 14.)

**Response:**   Stipulated that GS Group and Goldman, Sachs & Co. ("GSCo.") provide financial services worldwide (GS Group) and in the United States (GSCo.).  Stipulated that GSCo. is engaged in high-frequency trading on various commodity and equities markets.

8.     From May 7, 2007, through June 30, 2009, Aleynikov was employed by Goldman, Sachs & Co. as a Vice President in its Equities Division.

4

3520392.1

(*Id.* ¶ 15.)

**Response:**  Stipulated that Aleynikov began working at GSCo. on May 7, 2007; that Aleynikov's official last day of employment at GSCo. was on June 30, 2009; and that Aleynikov held the functional title of "vice president" in the Equities Division.  However, Aleynikov's last day working in the office at GSCo. was June 5, 2009. (*See* Declaration of James M. Van Splinter, dated October 11, 2012 ("Van Splinter Decl.") Ex. 3(c), Tr. 463.)

9.      As a former Vice President of Goldman, Sachs & Co's Equities Division, Aleynikov is an Officer within the meaning of Article IV, Section 4.1 and Article VI, Section 6.4 of the By- Laws. (*Id.* ¶ 41.)

**Response:**  Denied. (*See* Def. Statement at ¶¶ 28–30, 32.)

10.      Although Aleynikov was employed by Goldman, Sachs & Co. as an officer through June 30, 2009, his last day in the office was June 5, 2009. (*Id.* ¶ 15 n.1.)

**Response:**  Denied, except that Aleynikov's last day working in the office at GSCo. was on June 5, 2009. (*See* Def. Statement ¶ 38.)

11.      Aleynikov was a member of the team of computer programmers that was responsible for developing and improving certain source code relating to Goldman Sachs's high-frequency trading business, and had security clearance to access all files related to Goldman Sachs's high-frequency trading system. (*Id.* ¶

5

15.)

**Response:** Stipulated, to the extent that "security clearance to access all files related to Goldman Sachs' high-frequency trading system" is understood to mean that Aleynikov had access to source code used in support of high-frequency trading at GSCo.

12.    On or about July 1, 2009, Goldman Sachs, through its employees and agents, contacted the United States Attorney's Office for the Southern District of New York and/or the Federal Bureau of Investigation (the "FBI"), to report that Aleynikov had electronically transferred files relating to its high-frequency trading system outside of Goldman Sachs during his final days at the office. (*Id.* ¶ 16.)

**Response:**    Stipulated, to the extent that the "agents" of GS Group are understood to include employees and agents of GSCo.

13.    Agents of the FBI arrested Aleynikov at Newark Liberty International Airport in Newark, New Jersey on July 3, 2009. (*Id.* ¶ 17.)

**Response:**    Stipulated, on information and belief.

14.    Aleynikov was charged in a Criminal Complaint, which alleged that he violated federal law by, inter alia, transferring source code outside of Goldman Sachs during his final days at the office. (*Id.*)

**Response:**   Denied to the extent that "Goldman Sachs" is defined as GS

6

Group.  The Criminal Complaint alleged that Aleynikov violated federal law by taking source code from "the Financial Institution," which the Criminal Complaint states employed Aleynikov as a computer programmer.  (*See* Van Splinter Decl. Ex. 11 ¶ 5(a); *see generally id.* ¶¶ 1–13.)  Aleynikov's employer, "the Financial Institution," was GSCo.  (*See* Affidavit of Adam Schlesinger, dated October 10, 2012 ("Schlesinger Aff.") ¶¶ 2–3.)  Aleynikov was never an employee of GS Group.  (*See* Def. Statement ¶ 31.)

15.   In a three-count indictment returned on February 11, 2010 (the "Indictment"), a federal grand jury charged Aleynikov with violations of federal law based on his alleged transfer of source code outside of Goldman Sachs.  (*Id.* ¶ 18 and Ex. A.)

**Response:**  Denied to the extent that "Goldman Sachs" is defined as GS Group.  The Indictment charged Aleynikov with stealing source code belonging to "Goldman," which the Indictment defined as GSCo.  (*See* Verif. Complaint Ex. A ¶ 1; *see generally id.* ¶¶ 16–20.)

16.   The Indictment, charging that Aleynikov unlawfully downloaded and transported computer source code for Goldman Sachs's high-frequency trading system, was instituted against him by reason of the fact that he was an officer of Goldman, Sachs & Co. (*Id.* ¶ 42.)

**Response:**  Denied.  The Indictment did not charge Aleynikov with

7

stealing source code from GS Group; rather, it charged Aleynikov with stealing source code from GSCo. (*See* Verif. Complaint Ex. A ¶ 1; *see generally id.* ¶¶ 16–20.) In addition, the Indictment does not indicate that charges were brought against Aleynikov "by reason of the fact that he was an officer of Goldman, Sachs & Co." (*See id.*) Further, Aleynikov was never an officer of GSCo. (*See* Def. Statement ¶¶ 28–30.)

17.    Aleynikov retained Marino, Tortorella & Boyle, P.C. ("MTB"), to represent him with respect to the Indictment on April 28, 2010. (*Id.* ¶ 19.)

**Response:**   Because there has been no discovery in this matter, GS Group does not have sufficient information to stipulate to or deny this statement. (*See* Pearlson Decl. ¶ 5(e).)

18.    MTB filed a motion to dismiss the Indictment on July 16, 2010, arguing that it failed to state an offense under the federal statutes Aleynikov was charged with violating. (*Id.* ¶ 20.)

**Response:**   Stipulated, on information and belief.

19.    In a written opinion issued on September 3, 2010, the Honorable Denise L. Cote, U.S.D.J., dismissed one count of the Indictment but declined to dismiss the other counts and ordered Aleynikov to proceed to trial. *United States v. Aleynikov*, 737 F. Supp. 2d 173 (S.D.N.Y. 2010). (*Id.*)

**Response:**   Stipulated, on information and belief.

8

20.    On December 10, 2010, a jury found Aleynikov guilty on both counts remaining in the federal Indictment. (*Id.* ¶ 21.)

**Response:**   Stipulated, on information and belief.

21.    On March 18, 2011, Judge Cote sentenced Aleynikov to a term of imprisonment of 97 months.  (*Id.* ¶ 22.)

**Response:**   Stipulated, on information and belief.

22.    On March 23, 2011, Aleynikov timely filed a notice of appeal of his conviction and sentence to the United States Court of Appeals for the Second Circuit. (*Id.* ¶ 23.)

**Response:**   Stipulated, on information and belief.

23.    The Second Circuit heard oral argument on Aleynikov's appeal on February 16, 2012, and later that day summarily reversed his conviction and ordered his release from custody. (*Id.*)

**Response:**   Stipulated, on information and belief.

24.    The Second Circuit issued an opinion on April 11, 2012, explaining its conclusion that Aleynikov's conduct did not constitute a crime under either federal statute charged in the Indictment. *United States v. Aleynikov*, 676 F.3d 71 (2d Cir. 2012).  (*Id.* ¶ 24.)

**Response:**   Stipulated, on information and belief, that the Court held that Aleynikov's conduct did not violate the National Stolen Property Act or the

9

Economic Espionage Act. *See United States v. Aleynikov*, 676 F.3d 71 (2d Cir. 2012).

25.     On June 5, 2012, following the issuance of the Second Circuit's Mandate, the District Court entered a Judgment of Acquittal in Aleynikov's favor, thereby confirming his successful defense of the Federal Charges in their entirety. (*Id.* ¶ 25 & Ex. B.)

**Response:**     Stipulated, on information and belief.

26.     In defending the Federal Charges, Aleynikov incurred legal fees and expenses totaling $2,383,002.56, of which he was only able to pay $547,960.00 before being rendered impecunious. (*Id.* ¶ 26.)

**Response:**     Because there has been no discovery in this matter, GS Group does not have sufficient information to stipulate to or deny this statement. (*See* Pearlson Decl. ¶ 5(f).)

27.     On August 2, 2012, Aleynikov was arrested in New Jersey as an alleged "fugitive from justice" based on New York State charges relating to his alleged download of computer source code to Goldman Sachs's high-frequency trading system during his final days at work — the same conduct underlying the Federal Charges. (*Id.* ¶ 27.)

**Response:**     Because there has been no discovery in this matter, GS Group does not have sufficient information to stipulate to or deny the statement that "[o]n

10

August 2, 2012, Aleynikov was arrested in New Jersey as an alleged 'fugitive from justice.'" (*See* Pearlson Decl. ¶ 5(g).) Denied to the extent that "Goldman Sachs" is defined as GS Group. The State of New York charged Aleynikov with certain crimes based on his theft of source code from "Goldman Sachs," which the arrest warrant described as Aleynikov's former employer. (*See* Verif. Complaint Ex. C.) Aleynikov's relevant former employer was GSCo. (*See* Schlesinger Aff. ¶¶ 2–3.) Aleynikov was never an employee of GS Group. (*See* Def. Statement ¶ 31.)

28.    The Felony Arrest Warrant, dated August 1, 2012, alleges that on June 5, 2009, at Goldman Sachs's offices in New York, New York, Aleynikov copied computer source code for Goldman's high-frequency trading system without having the right to do, thereby violating various state laws. (*Id.* ¶ 28 and Ex. C.)

**Response:**   Denied to the extent that "Goldman Sachs" is defined as GS Group. The State of New York charged Aleynikov with certain crimes based on his theft of source code from "Goldman Sachs," which the arrest warrant described as Aleynikov's former employer. (*See* Verif. Complaint Ex. C.) Aleynikov's relevant former employer was GSCo. (*See* Schlesinger Aff. ¶¶ 2–3.) Aleynikov was never an employee of GS Group. (*See* Def. Statement ¶ 31.)

29.    The Manhattan District Attorney's Office has advised Aleynikov's

11

counsel that it will seek an indictment in the near future on charges relating to his alleged copying of computer source code for Goldman's high-frequency trading system. (*Id.* ¶ 29.)

**Response:**   Because there has been no discovery in this matter, GS Group does not have sufficient information to stipulate to or deny this statement. (*See* Pearlson Decl. ¶ 5(h).)

30.   Although Aleynikov intends to fight the State Charges, he is currently unemployed, relies on the charity of friends to provide him with shelter, and lacks sufficient resources to retain MTB to defend him. (*Id.* ¶ 30.)

**Response:**   Because there has been no discovery in this matter, GS Group does not have sufficient information to stipulate to or deny this statement. (*See* Pearlson Decl. ¶ 5(i).)

31.   The Amended and Restated By-Laws of The Goldman Sachs Group, Inc., as amended and restated as of May 7, 2010 (the "By-Laws"), provide for the mandatory indemnification and advancement of legal expenses of former officers of its subsidiaries, including Goldman, Sachs & Co., to the fullest extent permitted by law. (*Id.* ¶ 31 and Ex. D.)

**Response:**   GS Group objects to this statement on the basis that it is a legal argument and conclusion of law, in violation of Local Civil Rule 56.1(a), which states: "Each statement of material facts . . . shall not contain legal argument or

3520392.1

conclusions of law." The Court should refer to the By-Laws for its provisions.

32. Section 6.4 of the By-Laws provides, in part, as follows:

Section 6.4. Indemnification. The Corporation shall indemnify to the full extent permitted by law any person made or threatened to be made a party to any action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person or such person's testator or intestate is or was a director or officer of the Corporation, is or was a director, officer, trustee, member, stockholder, partner, incorporator or liquidator of a Subsidiary of the Corporation, is or was a member of the Shareholders' Committee acting pursuant to the Amended and Restated Shareholders' Agreement, dated as of May 7, 1999, among the Corporation and the Covered Persons listed on Appendix A thereto, as amended from time to time, or serves or served at the request of the Corporation as a director, officer, trustee, member, stockholder, partner, incorporator or liquidator of or in any other capacity for any other enterprise. Expenses, including attorneys' fees, incurred by any such person in defending any such action, suit or proceeding shall be paid or reimbursed by the Corporation promptly upon demand by such person and, if any such demand is made in advance of the final disposition of any such action, suit or proceeding, promptly upon receipt by the Corporation of an undertaking of such person to repay such expenses if it shall ultimately be determined that such person is not entitled to be indemnified by the Corporation. The rights provided to any person by this by-law shall be enforceable against the Corporation by such person, who shall be presumed to have relied upon it in serving or continuing to serve as a director or officer or in such other capacity as provided above. In addition, the rights provided to any person by this by-law shall survive the termination of such person as any such director, officer, trustee, member, stockholder, partner, incorporator or liquidator and, insofar as such person served at the

13

request of the Corporation as a director, officer, trustee, member, stockholder, partner, incorporator or liquidator of or in any other capacity for any other enterprise, shall survive the termination of such request as to service prior to termination of such request. No amendment of this by-law shall impair the rights of any person arising at any time with respect to events occurring prior to such amendment.

For purposes of this by-law, the term "Subsidiary" shall mean any corporation, partnership, limited liability company or other entity in which the Corporation owns, directly or indirectly, a majority of the economic or voting ownership interest; the term "other enterprise" shall include any corporation, partnership, limited liability company, joint venture, trust, association or other unincorporated organization or other entity and any employee benefit plan; the term "officer," when used with respect to a Subsidiary or other enterprise that is a corporation, shall refer to any person elected or appointed pursuant to the bylaws of such Subsidiary or other enterprise or chosen in such manner as is prescribed by the by-laws of such Subsidiary or other enterprise or determined by the board of directors of such Subsidiary or other enterprise...

(*Id.*)

**Response:** Stipulated.

33.     By letter dated August 24, 2012, MTB demanded, among other things, that Goldman Sachs honor its obligations to Aleynikov under Delaware General Corporation Law ("DGCL") and the By-Laws to: (1) promptly indemnify him for the actual and reasonable legal expenses that he incurred in connection with his defense of the Federal Charges; and (2) promptly begin to advance the

14

actual and reasonable legal expenses he incurs in connection with his defense of the State Charges. (*Id.* ¶ 32 and Ex. E.)

**Response:**   Denied.  MTB's letter of August 24, 2012 demanded that "Goldman Sachs," which it did not define as either GS Group or GSCo., pay $2,336,042.56 in indemnification and advance a $500,000 retainer.  (*See* Verif. Complaint Ex. E at 4.)  It characterized those amounts as related to "actual and reasonable legal expenses," but did not make any showing that they were in fact "actual and reasonable legal expenses."  (*See id.* at 1–5.)

34.   By letter dated August 24, 2012, Aleynikov provided Goldman Sachs with an Undertaking by which he promised to repay the legal fees and expenses advanced in connection with the State Charges if it should ultimately be determined that he is not entitled to indemnification. (*Id.* ¶ 33 and Ex. E.)

**Response:**   Stipulated to the extent that "Goldman Sachs" is defined as GS Group.  However, in the Undertaking, Aleynikov falsely stated that he was "a former Vice President of Goldman Sachs ('Goldman'), a Delaware corporation." (*See* Verif. Complaint Ex. E.)  Aleynikov has never been an officer or employee of GS Group, or an officer of GSCo.  (*See* Def. Statement ¶¶ 28–32.)

35.   Goldman Sachs has not complied with or even responded to Aleynikov's demand for indemnification and advancement. (*Id.* ¶ 34.)

**Response:**   Denied.  The firm, through its counsel, responded to

15

Aleynikov's letter on September 26, 2012. (*See* Van Splinter Decl. Ex. 7.)

36.    Aleynikov incurred significant legal fees and expenses in connection with his successful defense of the Federal Charges. (*Id.* ¶ 35.)

**Response:**  Because there has been no discovery in this matter, GS Group does not have sufficient information to stipulate to or deny this statement. (*See* Pearlson Decl. ¶ 5(j).)

37.    Aleynikov exhausted his financial resources long before his trial on the Federal Charges and is currently indebted to MTB for the additional fees and expenses incurred through trial and appellate proceedings. (*Id.*)

**Response:**  Because there has been no discovery in this matter, GS Group does not have sufficient information to stipulate to or deny this statement. (*See* Pearlson Decl. ¶ 5(k).)

38.    MTB has agreed to defend Aleynikov on an hourly basis to defend the State Charges and has asked him to provide MTB with an initial retainer of $500,000 to secure payment of MTB's fees and expenses in connection with the State Charges. (*Id.* ¶ 36.)

**Response:**  Because there has been no discovery in this matter, GS Group does not have sufficient information to stipulate to or deny this statement. (*See* Pearlson Decl. ¶ 5(l).)

39.    As Aleynikov's defense of the Federal Charges left him impecunious,

3520392.1

he is unable to pay his debts, let alone the retainer necessary for his defense of the State Charges. (*Id.* ¶ 37.)

**Response:** Because there has been no discovery in this matter, GS Group does not have sufficient information to stipulate to or deny this statement. (*See* Pearlson Decl. ¶ 5(m).)

40.    Goldman Sachs is a global investment banking and securities firm specializing in investment banking, trading and principal investments, asset management and securities services. (Certification of Kevin H. Marino, Ex. 1.)

**Response:** Stipulated to the extent that "Goldman Sachs" is defined as GS Group. Defendant respectfully refers the Court to GS Group's website for a description of GS Group's business.

41.    Goldman Sachs provides services to corporations, financial institutions, governments, and high-net worth individuals. (*Id.*, Ex. 1.)

**Response:** Stipulated to the extent that "Goldman Sachs" is defined as GS Group. Defendant respectfully refers the Court to GS Group's website for a description of GS Group's business.

42.    On July 17, 2012, Goldman Sachs reported net revenues of $6.3 billion and net earnings of $962 billion for the fiscal quarter ending June 30, 2012. (*Id.* Ex. 2.)

**Response:** Denied. On July 17, 2012, GS Group reported net revenues of

17

$6.63 billion and net earnings of $962 million for the fiscal quarter ending June 30, 2012.  (Certification of Kevin H. Marino, Ex. 1 at 1.)


Dated:  October 11, 2012                    /s/ A. Ross Pearlson
                                            A. Ross Pearlson
                                            WOLFF & SAMSON PC
                                            One Boland Drive
                                            West Orange, NJ  07052
                                            (973) 325-1500

                                            Matthew W. Friedrich (*pro hac vice*
                                            application pending)
                                            Jonathan M. Shaw (*pro hac vice*
                                            application pending)
                                            BOIES, SCHILLER & FLEXNER LLP
                                            5301 Wisconsin Avenue N.W.
                                            Washington, D.C.  20015
                                            (202) 237-2727

                                            *Counsel for Defendant The Goldman
                                            Sachs Group, Inc.*

18

3520392.1