```
 1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
 2                    CIVIL ACTION 12-CV-5994-KM

 3    SERGEI ALEYNIKOV,            : TRANSCRIPT OF PROCEEDINGS
                                   :
 4                                 :      M O T I O N
                    Plaintiff,     :
 5                                 :      Pages 1 - 55
              -vs-                 :
 6                                 :
      GOLDMAN SACHS GROUP,         :
 7                                 :
                    Defendant.     :
 8    - - - - - - - - - - - - - - -

 9                                       Newark, New Jersey
                                         October 22, 2012
10
      B E F O R E:   HONORABLE KEVIN McNULTY,
11                   UNITED STATES DISTRICT JUDGE

12
      A P P E A R A N C E S:
13
              MARINO TORTORELLA & BOYLE, P.C.
14            BY:   KEVIN H. MARINO, ESQ.
              Attorney for the Plaintiff
15
              BOLES, SCHILLER & FLEXNER, LLP
16            BY:   MATTHEW W. FRIEDRICH, ESQ.
              Attorney for the Defendant
17

18

19    _____
      Pursuant to Section 753 Title 28 United States Code, the
20    following transcript is certified to be an accurate record as
      taken stenographically in the above entitled proceedings.
21

22                         S/Mollie Ann Giordano
                           MOLLIE ANN GIORDANO
23                         Certified Court Reporter
                           (973-220-9465)
24

25
```

```
 1            THE COURT:  Good afternoon.

 2            MR. MARINO:  Good afternoon.

 3            THE COURT:  Before I start, Mr. Marino, is the

 4    pronunciation Aleynikov?

 5            MR. MARINO:  That's correct, your Honor.

 6            THE COURT:  Thank you.  We are here today for argument

 7    on an application for a preliminary injunction in Aleynikov

 8    versus The Goldman Sachs Group, Inc.  That is civil number

 9    12-5994.

10            May I have appearance of counsel.

11            MR. MARINO:  Good afternoon, your Honor.  Kevin H.

12    Marino, Marino Tortorella & Boyle for the plaintiff, Sergei

13    Aleynikov.

14            MR. TORTORELLA:  John Tortorella from Marino,

15    Tortorella & Boyle for Sergei Aleynikov.

16            MR. BOYLE:  John Boyle from Marino, Tortorella & Boyle

17    for Sergei Aleynikov.

18            THE COURT:  It's Marino Tortorella & Boyle.

19            MR. MARINO:  We have the whole operation here.

20            MR. PEARLSON:  Good afternoon, your Honor.  Ross

21    Pearlson from the law firm of Wolff & Samson, on behalf of

22    defendant Goldman Sachs Group, Inc.  And it's my pleasure to

23    introduce on my left, Matthew Friedrich, who's from the law

24    firm of Boles Schiller & Flexner, who's been admitted pro hoc

25    vice.  And on my right Jonathan Shaw of the same firm.
```

Motion                                                                    3

```
 1                THE COURT:  Welcome to town, gentleman.

 2                Okay.  Well, plaintiff, it's your burden, why don't

 3     you start off.

 4                MR. MARINO:  Thank you, very much, your Honor.

 5                Your Honor, because in our view this case turns

 6     entirely on the Court's interpretation of the Goldman Sach

 7     Group's by-laws, and a couple of provisions of the by-laws,

 8     I've taken the liberty of enlarging the relevant provision.

 9     And with the Court's permission, I'll turn then around and make

10     sure that counsel can see them as well.

11                THE COURT:  This is a reproduction of stuff that's in

12     the record?

13                MR. MARINO:  Yes, that's correct, your Honor.

14                THE COURT:  Alright.  Okay.

15                MR. MARINO:  We are looking, your Honor, at a

16     provision of the amended and restated by-laws of the Goldman

17     Sachs Group, Inc., Articles 6 miscellaneous 6.4.

18                THE COURT:  I may ask you just to move that chair?

19                MR. FRIEDRICH:  I have it.

20                THE COURT:  Thanks.

21                MR. MARINO:  Can you see that all right, your Honor?

22                THE COURT:  Sure.

23                MR. MARINO:  So this provision is entitled Section

24     6.4.  It's entitled:  Indemnification.  The corporation shall

25     indemnify to the full extent permitted by law, any person made
```

 1    or threatened to be made a party to any action by reason of the

 2    fact that such person was an officer of a subsidiary of the

 3    corporation.  Expenses, including attorney's fee incurred by

 4    any such person in defending any such action, suit or

 5    proceeding shall be paid or reimbursed by the corporation

 6    promptly upon demand by such person.  And if any such demand is

 7    made in advance of the fine, disposition of any such action,

 8    suit or proceeding, promptly upon receipt by the corporation of

 9    an undertaking of such person to repay such expenses, if it

10    shall ultimately be determined that such person is not entitled

11    to be indemnified by the corporation.  The section includes the

12    rights provided to any person by this by-law shall be

13    enforceable against the corporation by such person who shall be

14    presumed to have relied upon it in serving or continuing to

15    serve as a director or officer, or in such other capacity as

16    provided above.

17         The second enlarged copy is also from the

18    indemnification section of Section 6.4, and it reads --

19         THE COURT:  Counsel, please fee free to walk around,

20    if you need to.

21         MR. MARINO:  Thank you very much, your Honor.

22         It reads:  For purposes of this by-law, the term

23    subsidiary shall mean any partnership or other entity in which

24    the corporation owns directly or indirectly a majority of

25    economic or voting ownership interest.  The term "officer" when

1   used with respect to the corporation shall refer to any officer

2   elected by or appointed pursuant to clauses 3 and 4 of Section

3   4.1 of these by-laws.  And when used with respect to a

4   subsidiary or other enterprise that is not a corporation, or is

5   organized in a foreign jurisdiction, the term "officer" shall

6   include, in addition to any officer of such entity, any person

7   serving in a similar capacity or as the manager of such entity.

8          The last provision I'd like to draw the Court's

9   attention to is this 4.1 that's referred to in this Section

10   6.4.  And 4.1 teaches, with respect to officers, election or

11   appointment, in addition, the order of directors at any time

12   and from time to time may elect one or more chairman of the

13   board and/or one or more vice chairman of the board from among

14   its members.  Two, one or more chief executives officers, one

15   or more presidents and/or one or more chief operating officers.

16   Three, one or more vice presidents, one or more treasurers,

17   and/or one or more secretaries.  And/or four, one or more other

18   officers in the case of each of one, two, three, and four, if

19   and to the extent the board deems desirable.  In addition, the

20   Board of Directors at any time and from time to time may

21   authorize any officer of the corporation to appoint one or more

22   officers of the kind described in clause 3 and 4 above.  So

23   those are the provisions that I respectfully submit govern the

24   proceeding before your Honor.

25          The entire case turns on whether Mr. Aleynikov was an

1    officer within the meaning of Goldman Sachs Group's by-laws and
2    we just looked at them.  If he was, then he's not only entitled
3    to relief on this order to to show cause, but he's entitled to
4    the ultimate relief on summary judgment.  Every other fact,
5    that is to say, every single fact necessary for the Court to
6    decide this motion for summary judgment has been established.
7    There's no need for discovery of any kind.  Mr. Aleynikov was
8    an officer of a subsidiary of the Goldman Sachs Group that was
9    not, or is not a corporation.  Mr. Aleynikov, and this is
10   undisputed, was a vice president of Goldman Sachs & Company,
11   Incorporated.

12           It's also undisputed that Goldman Sachs & Company,
13   Incorporated is a subsidiary of the Goldman Sachs Group, and a
14   capital S subsidiary within the meaning of the by-laws.  And
15   the notion that -- and my sense from all of the argument that's
16   been submitted by counsel in this case, and all the submissions
17   that counsel have made, my sense is that they want this Court
18   to conclude that there's some sort of factual dispute over
19   whether Mr. Aleynikov, as a vice president of a subsidiary that
20   is not a corporation of the Goldman Sachs Group, Inc., was an
21   officer within the meaning of the by-laws.  It is abundantly
22   clear by the plain meaning of the words that a vice president
23   is an officer, and this is not something that happens by
24   accident.  People don't become vice presidents of corporations
25   like Goldman Sachs & Company by accident.

 1          THE COURT:  I'll let you go on, but let me ask you one

 2     clarifying question, Which is in the papers.  I have seen

 3     things to the effect that he was vice president of some

 4     informal division.  Is that inaccurate, he is a vice president

 5     of GS company?

 6          MR. MARINO:  It is undisputed that Sergei Aleynikov

 7     was vice president of Goldman Sachs & Company, and that Goldman

 8     Sachs & Company, which, yes, they do -- I believe the word used

 9     is affiliate.  They loosely referred to it being an affiliate

10     of Goldman Sachs Group.  Just so this is clear, it is

11     undisputed that Aleynikov was a vice president of Goldman Sachs

12     & Company.  That Goldman Sachs & Company is a subsidiary of the

13     Goldman Sachs Group.  And a particular type of subsidiary, a

14     subsidiary that is not a corporation.  It is undisputed that

15     Goldman Sachs & Company was and is a limited partnership,

16     bringing it squarely within the meaning, if I may, your Honor

17     of Section 6.4,

18          THE COURT:  A non-corporate sub.

19          MR. MARINO:  And you can see, it's quite specific.

20     They talk about what subsidiary means with respect to the

21     corporation and that Cap C corporation, although it's not

22     defined in the by-laws, I believe it's undisputed, it refers to

23     the Goldman Sachs Group.  So the first category is

24     subsidiaries.  When the term "officer" is used with respect to

25     the part oft he corporation, it refers to any officer elected

1    by or appointed pursuant to clause 3 and 4.  Those are the

2    sections that I've drawn out.  Those are Sections 1, 2, 3, and

3    4.  It clearly includes a vice president, an officer.  The

4    officers of the Goldman Sachs Group, Inc., clearly include vice

5    presidents of the Goldman Sachs Group, Inc.

6         The second category, with respect to --

7         THE COURT:  Actually, let me just stop you for one

8    moment there and ask Mr. Friedrich a question.  This is not the

9    case, but if it were the case that the plaintiff were a vice

10   president of the parent corporate entity, would we have a

11   dispute here?

12        MR. FRIEDRICH:  If he were appointed in the manner

13   that is prescribed by Section 4.1, that is to say formerly

14   appointed as a vice president, we would not have a dispute

15   here.

16        THE COURT:  Okay, thank you.

17        MR. MARINO:  So, we have the three categories, and the

18   second category is, those who are officers of subsidiaries that

19   are corporations.

20        THE COURT:  Uh huh.

21        MR. MARINO:  And the third category is the one that

22   pertains to here.  When used with respect to a capital S

23   subsidiary or other enterprise that is not a corporation, or is

24   organized in a foreign jurisdiction, the term "officer" shall

25   include, in addition to any officer of such entity, any person

 1    serving in a similar capacity, or as the manager of such

 2    entity.

 3              THE COURT:  This is where I run into a little bit of

 4    trouble in interpretation.  Just because the -- and I

 5    realize -- I'm not hanging the drafting on you or your client,

 6    you didn't draft it.  But for a category C, it says officer

 7    means officer.

 8              MR. MARINO:  That's right.

 9              THE COURT:  And also some other things.

10              MR. MARINO:  That's right.  And the cases that have

11    interpreted by-laws that make no effort, unlike the Goldman

12    Sachs by-law, that make a careful effort to define officer

13    elsewhere, right, when they're talking about -- as you just

14    asked Mr. Friedrich, when they're talking about officers of the

15    corporation, Goldman Sachs Group, they're quite specific about

16    what an officer is.

17              THE COURT:  That's my point.

18              MR. MARINO:  Right.  But when they get down here in

19    6.4, they don't define officer.  They use the word.  I would

20    suggest to your Honor that you certainly could construe that to

21    take the meaning that is ascribed to it here, but that's not

22    what we ask the Court to do.

23              THE COURT:  Well, not to interrupt you, he said,

24    interrupting you.  I thought you were arguing that C

25    incorporated the 4.1 categories.

1           MR. MARINO:  No, we are not.  The 4.1 categories are

2    here for the Court's understanding of what Goldman Sachs Group

3    generally meant when they used the word "officer".  When they

4    went out of their way to define it.  They defined it expressly

5    to include vice president.  And I think that is constructive.

6    And I think -- yes, I think it's sloppy draftsmanship.  And

7    your Honor indicated quite correctly under the law that that's

8    not laid at the doorstep of Mr. Aleynikov.  More than that,

9    under the applicable principal of law of contra -- Mr.

10   Tortorella will be able to to say this.

11           MR. TORTORELLA:  Prefendum

12           MR. MARINO:  Contra preferendum.  It is construed

13   adversely to the drafter.  The reality is, everybody knows when

14   we call you vice president, we mean you're an officer.  And

15   when we say we are going to indemnify our officers, we sure

16   mean to include vice presidents.  And the reason I think, your

17   Honor -- I think this is abundantly clear because of the effort

18   they make to add, and you notice that I've double emphasised

19   this provision for you.  I've highlighted and underlined it.

20   The term "officer" shall include, in addition to any officer of

21   such entity, any person serving in a similar capacity or as the

22   manager of such entity, meaning to get indemnification.  Now,

23   Goldman Sachs argues that this is a limited part.  I quite

24   disagree with that.  This is in fact a limiting or enlarging --

25           THE COURT:  Limiting or enlarging.  You're not

1    claiming it applies at all, are you?

2            MR. MARINO:  No.  I don't think that's any part of the

3    discussion here.  They are talking about engaging, and asking

4    your Honor to engage in a functional analysis of what Mr.

5    Aleynikov did.  They're saying he was one in 2000.  They're

6    saying Mr. Aleynikov didn't even have any people that reported

7    to him.  He wasn't in the scope of things.  They didn't say it

8    in just this way.  He was a small fish.  Mid-level employee.

9    Certainly not an officer, as they're now defining it.  Right?

10   But the realty is, Sergei Aleynikov by hint of the fact that he

11   was given the title vice president, was an officer within the

12   meaning of these by-laws.  And that's the plain meaning.  And

13   what the cases that have interpreted and ruled upon similar

14   arguments have said, if you want officer to mean something

15   other than its plain meaning, define it specifically, limit it,

16   otherwise --

17           THE COURT:  Okay.  Well, let me tell you another one

18   of my concerns, which is this.  I know or I think I know what

19   an officer of a corporation is.  I know or I think I know what

20   a vice president of a corporation is.  I always thought in a

21   financial sector that casts a pretty wide net.  I don't know

22   what a vice president of a limited partnership means.  That has

23   no settled meaning I know my mind anyway.

24           MR. MARINO:  There are many, many cases that have

25   interpreted that language.  They're not always limited to the

1    corporation.  That is to say, not all of those cases arise

2    within the context of construing the term "vice president" or

3    officer in those terms.  In the context of something that has

4    the corporate form.  They are repeatedly, everyone understands

5    that a vice president is an officer.

6         When you look at the cases, they don't say everybody

7    knows that in the corporate parlance, a vice president is an

8    officer.  See, they're trying -- what Goldman Sachs is trying

9    to do is to escape its clear obligation to indemnify Mr.

10   Aleynikov in this case to attach some sort of additional

11   requirement on the officer or vice president of a limited

12   partnership.  This is silly.  The reality is, the term

13   "officer" shall include, in addition to any officer or such

14   entity, anyone serving in a similar capacity.  It means there's

15   a list of people, right, that are officers, and then there are

16   the functional officers.  Those who, even though they're not

17   officers, and we know in an investment house the partners are

18   called, for the most part, managing directors, who I assume for

19   the most part, managing director, there are some managing

20   directors who would say "I'm a managing director and I head

21   global equities.  I supervise all these people."

22        THE COURT:  To me, at least, I'm willing to be

23   persuaded otherwise.  The reason for that final clause is

24   obvious, in a similar capacity.  This is the catch all for all

25   kinds of entities.  Some of them even organize under foreign

1    law, who wouldn't have names of officials that correspond to

2    the names of officials, corporate entities, or anything else.

3    It seems to me you've got to have that in there.  If there is a

4    person who's running the show and who's appointing people, and

5    so on --

6              MR. MARINO:  And you want to indemnify them.

7              THE COURT:  And signing on behalf of the corporation,

8    entity, and making policy decision and so on, that that person

9    would come within it.  I don't see what that has to do with

10   this case.

11             MR. MARINO:  What it has to do with this case is I

12   believe there is, by adding that, okay, what they are doing is

13   telling you that that subset of people that your Honor has just

14   described, I believe accurately, is not a substitute for the

15   officer within the plain meaning of that word.  That is a group

16   that's in addition to those who occupy the position of officer.

17   So that Goldman couldn't come in later and say:  John Smith,

18   who's our global head of equities and supervises a thousand

19   people, and earns a hundred million dollars a year, he's just

20   been indicted, and he's coming in looking for advancement.

21   We're not going to give John Smith advancement.  After all,

22   he's not an officer.  How do we know he's not an officer?  This

23   is the question.  He's not a vice president.

24             THE COURT:  Right.

25             MR. MARINO:  Exactly.  But the point is, if everybody

1    who occupied the title, a title, and they're not -- they're not

2    a thousand of them, president, vice president, treasurer,

3    secretary, and chairman of the board, chief executive officer,

4    that's it.  You're in one of those categories.  You're an

5    officer, and everybody knows it, and that's why -- this is why

6    when your Honor -- I take your meaning when you say it doesn't

7    have anything to do with this case.  Yeah, it doesn't have

8    anything to do with this case to the extent that Mr. Aleynikov

9    is not such a person.  He's not a person who says he served in

10   a capacity similar to an officer --

11            THE COURT:  I think you acknowledged in your papers,

12   right, that he's not signing documents on behalf of the

13   coporation.  He's not supervising people.

14            MR. MARINO:  That's correct.  He doesn't argue that he

15   is.  He's not arguing for advancement for indemnification under

16   this catch-all provision.  That obtains for entities that do

17   not have vice presidents.  He works for an entity that does

18   have vice presidents, and he's one of them.  And that he has

19   1,999 colleagues, all of whom are entitled to indemnification

20   and advancement, doesn't prove any point, whatsoever.

21            THE COURT:  By the way, again, the clarification, I

22   think the 2000 figure.

23            MR. MARINO:  It's for everybody.

24            THE COURT:  Is it for everybody?  Just the entity.

25            MR. MARINO:  I think it's not for this entity.  I

Motion

 1    think they say --

 2              THE COURT:  By this entity --

 3              MR. MARINO:  I know they say there are 2000 in

 4    equities, but I can't be sure.  The answer is, they -- we have

 5    no reason to dispute it, or basis to dispute it.  Say they have

 6    quite a few people who have the title "vice president".

 7              THE COURT:  Do you know, how many people are in GS

 8    Company that they called vice president?

 9              MR. MARINO:  I don't have the answer to that

10    question..  I assumed arguendo it's quite a few people.  And

11    it's not of any moment in my view because at the end of the

12    day, think about it this way.  Why would you use a term like

13    "officer" in a way that so clearly suggests that you, the

14    draftsman, assumes everybody knows what you're talking about,

15    if the phrase isn't to be accorded its plain meaning, and

16    that's what the cases have said.  The cases have said, and

17    we've cited them all to your Honor, and I will go through them

18    in more detail.  The case have said a vice president is an

19    officer.  And if the drafters of the by-laws wished for a vice

20    president -- I beg your pardon, wished for an officer to be

21    defined other than according to its plain meaning, they should

22    have defined the term other than according to its plain

23    meaning.  By their very use of the word "officer" in a way that

24    by anyone's likes suggests they think we all know what they're

25    talking about.  I mean, it's not complicated.  The term

1    "officer" shall include, in addition to any officer, such

2    entity, any person serving in a similar capacity, either

3    they're referring back to 4.1, and that's how you're supposed

4    to know what an officer is where they go to the trouble with

5    respect to the Cap C corporation, Goldman C Group, to define

6    officers to include a specific group --

7              THE COURT:  I don't see how it can, it doesn't have a

8    chairman of the board.  How could those apply?

9              MR. MARINO:  Perhaps I haven't been clear with your

10   Honor.  What I'm suggesting is not that this provision pertains

11   to Mr. Aleynikov's position in a direct fashion.  I'm just

12   suggesting that you have one entity, the Goldman Sachs Group,

13   that has chosen to use the word "officer" as though we all know

14   what they're talking about.  Okay?

15             Well, in the common parlance, you can go to any

16   dictionary, and you can go to any Circuit, and you can go to

17   many districts throughout this country, and many states,

18   uniformly you will find many cases say that vice presidents is

19   an officer.  They are not limited to just corporate entities.

20   You will find no cases, not a single one, saying a vice

21   president is not an officer.  So if you just want to go by the

22   fact that they use the term "officer", and then define it with

23   its own word, define it by itself, the term "officer" shall

24   include, in addition to officers, for these purposes, you

25   could -- that seems very clear to me to be an attempt, as your

1    Honor said, to expand the field.  To include those who are in

2    entities before that are not officers, called officers, or

3    people called by officer titles --

4            THE COURT:  I think maybe we've gotten all we can out

5    of that.

6            MR. MARINO:  Okay, that's fine.

7            THE COURT:  Tell me something -- I used to hate this

8    question, so don't read anything into it.  Your best case in

9    which a vice president of something other than a corporate

10   entity is an officer?

11           MR. MARINO:  Best --

12           THE COURT:  Your best case, that is.

13           MR. MARINO:  Best decision --

14           THE COURT:  Decision.

15           MR. MARINO:  Best decision.

16           THE COURT:  I don't mean scenario, I mean case.

17   I was looking at page 19 of your reply brief.  And if my

18   question is driving you crazy, it doesn't have to be the best

19   one.  Give me a detail.

20           MR. MARINO:  In re: Foot Hills Texas, Incorporatored,

21   bankruptcy court in Delaware, 2009.  The employees in this case

22   are vice presidents under the plain meaning of the words.  A

23   vice president is an officer.  Home Store, plaintiff was a

24   former oficer of the company when he was employed first as vice

25   president of the business development, and later as executive

1    vice president of business development ads and sales.  Brock

2    Key vs. Idaho Department of Corrections --

3              THE COURT:  Back up on Foot Hills for a second.

4    That's a corporate entity, no?

5              MR. MARINO:  That's a corporate entity.  It appears to

6    be a corporate entity.

7              THE COURT:  Yeah.  And although I'm with you, they

8    found that a vice president was an officer, that's right.  But

9    didn't they also say that the mere title of vice president was

10   not determinative, and we've got to look at the surrounding

11   duties and circumstances, and so on.

12             MR. MARINO:  You know, your Honor, the answer to that

13   question is no, I think what was going on there was, as -- just

14   as a matter of -- the reason it's cited here is for the

15   proposition that when people are talking about officers and

16   vice presidents, they are talking about the same thing, right?

17   That's --

18             THE COURT:  I understand your general point.

19             MR. MARINO:  Yeah, yeah.  If you think about this, I

20   don't want to quarrel with this the way your Honor's looking at

21   this.  If you think about it this way, if the definition of

22   officer -- that the context of a limited partnership such as

23   Goldman Sachs & Company was meant to have a meaning other than

24   its plain meaning, we -- why not define it?  And why, if you're

25   the person who accepts responsibility -- and let's think about

1    this for one second, because I believe it goes to -- I believe

2    the test is, what ould a reasonable person, not what the

3    drafters intended, what would a reasonable person, reading the

4    by-law, have concluded that they meant?  So I'm a reasonable.

5    Person, I'm about to go --

6              THE COURT:  Let me stop you right there.

7              MR. MARINO:  I, the hypothetical, am a reasonable

8    person.  I'm going to work for a company that's going to have

9    me work on something that they say is so valuable, that in the

10   wrong hands it could be used to manipulate the continuing

11   markets of the whole world.  And that's just Sergei Aleynikov,

12   and look at all the other vice president of Goldman Sachs &

13   Company, who we know without having anything of record, are

14   involved in very risky and very dangerous in this day and age,

15   behaviors.  They are at risk of being sued.  They are at risk

16   of being sanctioned.  They are at risk of being investigated.

17   They are at risk of being indicted.  The reason, the rights

18   provided to any person by 6.4 shall be enforceable against the

19   corporation by such person who shall be presumed to have relied

20   upon it.  In serving or continuing to serve is that it's a

21   really big deal.  Now, we're getting into how many angels can

22   fit on the end of a pin.  When they say vice president, do they

23   mean vice president of a limited partnership?  Does that carry

24   with it by some osmosis process that we mean corporations?  Did

25   we not say that?  That's what we meant.  That's baloney.

1          THE COURT:  Well, he's got -- baloney or not, he's

2     got -- when I get to Mr. Friedrich, I'm going to ask him about

3     an officer is an officer, and what that means and why.  But as

4     I say, I think we've drawn what we can out of this on your

5     side.

6          MR. MARINO:  So what your Honor has said about it, the

7     questions that your Honor has asked about it, you've raised

8     questions about whether, even though Goldman Sachs -- you said

9     you're going to discuss this with Goldman Sachs' lawyer, even

10    though Goldman Sachs obviously uses the phrase in its by-laws

11    as though we all know what it's talking about, when it says

12    officer, even though that happens, let's look at what the rules

13    of statutory construction say.  If your Honor were to conclude

14    that there was some ambiguity here, even if you were to

15    conclude, that officer were an ambiguous term.  In all the

16    courts I have just averted to have indicated that it's not.

17    That ambiguity would be resolved resoundedly in favor of

18    indemnification and advancement.  Mr. Aleynikov did not

19    participate in drafting these by-laws.  Twin City Fire vs.

20    Delaware Racing Association is a 2003 Delaware case.  Upon

21    finding an ambiguity and a policy exclusion, the Court properly

22    applied the well-accepted contra preferendum principle of

23    construction.  Which is that ambiguities in a contract should

24    be construed against the drafter.  So similar effect, the

25    Delaware Chancery Court's in 2012 decision in Shifton vs.

1    Morgan.   Joseph Holdings our Supreme Court has frequently

2    invoked this doctrine of contra preferendum to resolve

3    ambiguities about the rights of investors in the governing

4    instruments of business entities and so forth.

5           THE COURT:   Okay.  I'm familiar with that.   That

6    maximum this isn't a contract.  Assuming, by analogies, these

7    contract principles apply.  There's a lot of things you do when

8    you find an ambiguity in a contract, right?  You look at the

9    drafting.  You look at the negotiation.  You look at the

10   surrounding circumstances.  You don't just say:   This person

11   drafted it, and therefore they lose.

12          MR. MARINO:  Well, that's right.  You don't just say

13   they lose.  But let's get -- I thought your Honor moved quickly

14   past the notion that there might be even the slightest question

15   that principles that normally govern the interpretation of

16   contracts, govern the interpretation of by-laws.  Gentile vs.

17   Single Point Financial Delaware 2001.  It is a fundamental

18   principle that the rules used to interpret statute, contracts,

19   and other written interest --

20          THE COURT:   I didn't mean to blow past that.  All I

21   meant was that this is not a situation where your client and

22   the corporation sat down and hammered out --

23          MR. MARINO:   That's right.  And to -- I believe to my

24   point, your Honor, you take a job as a vice president at

25   Goldman Sachs & Company, and you are presumed -- you're not

1    proven, you relied on it.

2            THE COURT:  I understand.

3            MR. MARINO:  We're not going to have the back and

4    forth that we normally have.  And we're trying to fight about

5    the provision of the contract.  And party A says it means this.

6    And party B says it means that you sign on to be a Goldman

7    Sachs Vice President.  They're not making these terms up

8    randomly, they're calling you by a traditional officer's title

9    because they want you to know it, and because they want the

10   rest of the world to know it, and because you and the rest of

11   the world do know it, and I can assure you, assure you that

12   many of the people who occupy this position at Goldman Sachs,

13   were they not given that level of respect, and were they not

14   paid commensurate with it, would not be at Goldman Sachs very

15   long.

16           The truth of the matter is, it's not a complicated

17   story.  Goldman Sachs knows, I suspect, because Goldman Sachs

18   indemnifies lots of Goldman Sachs & Company vice presidents,

19   and advances money to lots of Goldman Sachs & Company vice

20   presidents.  And assuredly if they prevail, as Mr. Aleynikov

21   did here, those people get indemnified.  Try to think with your

22   Honor on this.  The question in my mind is, how could it ever

23   be the case that I, as a person going to work for a Goldman

24   Sachs type entity that has these by-laws, and these are the

25   ones they published, right.  They don't publish any of this

1      other information that we're hearing about.  Well, we're going

2      to -- we really meant to cover just the really top level people

3      at the corporation, or just the very top level people at some

4      of these other entities.  What we do is have these processes,

5      where we have a corporate resolution.  That's all great --

6                  THE COURT:  Let me ask you about that, Mr. Friedrich

7      is about to argue.  To know who an officer is, it's not invalid

8      to look at the documents that constitute the governing

9      principles of GS Company.  And one of then is this memorandum

10     of agreement that tells you if you're an officer, you were

11     appointed by a certain manner and by a certain party.

12                 MR. MARINO:  Your Honor, did I miss that?  Cause I

13     don't see anything in the partnership agreement that says you

14     can tell you're an officer because you were appointed by this

15     process.  I don't think that's what that agreement says.

16                 I think the point -- the point that I'm trying to make

17     with your Honor is this.  The fact that Goldman Sachs chose to

18     adopt a formal procedure for how it appoints the senior most

19     officers of the corporation, to me is of entirely no moment,

20     and of no help in determining what the by-laws mean when they

21     say, very clear, an officer gets indemnified.  They don't say

22     an officer who is appointed by formal resolution.  They don't

23     say an officer who occupies really a sort of super officer

24     position.  Someone who's elevated above everyone else, who

25     holds the officer title.  Either one accepts the notion that

Motion                                                  24

1    officer means vice president.  Whether you're in a corporation,

2    or a limited partnership, or your local boy club.  You are a

3    VP.  You're an officer.  That's why they use that phrase.  To

4    me, you could definitely decide that you want to sit down and

5    have a long and involved, and very interesting, intellectual

6    exercise about what some hypothetical drafter might have meant

7    in some hypothetical jurisdiction when he or she used the word

8    "officer", but I would suggest that that would be directly

9    contrary to the law that the Court is enjoined to apply, which

10   is what's the plain meaning of the word?  The plain meaning of

11   the word is officer.  Do you know how we know it's the plain

12   meaning?  Because when the drafter drafted the by-laws that

13   they acknowledged governed this proceeding, they used it

14   without any effort to define it at all.

15            THE COURT:  Okay.  Let me -- I'll give you another

16   chance to talk.  You've got the burden here.

17            MR. MARINO:  I have a lot more.  I have a lot more to

18   say.

19            THE COURT:  I don't doubt it.  I want to hear from Mr.

20   Friedrich.  I think a little back and forth might illuminate

21   this.

22            Mr. Friedrich, if you're more comfortable at counsel

23   table, that's fine.

24            MR. FRIEDRICH:  Your Honor, I'd like to hand up some

25   demonstrative slides as well.  These are notebook format.  If I

1    may hand them up to the Court's clerk, I'll take the podium.

2              THE COURT:  Alright.

3              MR. FRIEDRICH:  So we'll start with the proposition

4    that the Court has already anticipated --

5              THE COURT:  For the record, I take it you've given

6    this to Mr. Marino as well?

7              MR. FRIEDRICH:  Yes.  Since the Court has anticipated

8    very many of arguments, I'll be speaking less than I would have

9    otherwise.

10             Let me start, if I could, in tab 2, the parties, your

11   Honor, effectively agree on what the question is before the

12   Court, and that is; namely, whether or not Sergei Aleynikov,

13   solely by virtue of his job title, was an officer of Goldman

14   Sachs & Co.  To be clear, throughout this argument I'm going to

15   talk about Co. which is Goldman Sachs Company, a New York

16   limited partnership, and Goldman Sachs Group, Inc., which is

17   the parent company, a Delaware corporation.  The summary of our

18   argument, your Honor, once the rhetoric is stripped away, there

19   is no basis on which to conclude that Sergei Aleynikov was an

20   officer of Co.  As a factual matter, Aleynikov was not an

21   officer of Co.  Unrebutted affidavits that are before the Court

22   establish that Co. had a formal process for appointing its few

23   officers, all of whom were members of the senior most

24   management of the partnership.  He was never appointed through

25   that process.  We don't have to guess about who the officers of

1   the partnership were because the partnership kept a list of

2   them.

3           THE COURT:  Okay.  Could I just interrupt you for one

4   second.  About one minute ago Mr. Marino said:  No, I averted

5   to the memo of agreement, is it called?

6           MR. FRIEDRICH:  Yes, your Honor.

7           THE COURT:  And your argument that indeed there was a

8   particular process by which you can figure out who's been

9   appointed as an officer.  Try to illuminate me.  What's the

10  nature of the disagreement?

11          MR. FRIEDRICH:  The nature of the disagreement --

12          THE COURT:  Is that you're right and he's wrong, I

13  know.

14          MR. FRIEDRICH:  I was trying to frame it more

15  eloquently.  I'll try again.  It's simply that there's a

16  process, your Honor hit it right on the head.  You looked at

17  the portion of 6.4 that Mr. Marino put up that talks about

18  officer being defined differently by entity.  It is defined

19  differently for non-corporate subsidiaries precisely because of

20  the dynamic your Honor identified.  This is a large

21  organization.  It can have subsidiaries in multiple

22  jurisdictions subject to the different laws, with different

23  parameters.  Notably, the by-laws did not provide a uniform

24  definition of officer as across all different aspects of the

25  organization.  It had to allow, because of the nature of this

1    business, because the nature of the law and jurisdiction, it

2    had to allow flexibility in terms of how officers are

3    determined.  Unsurprisingly, as the matter of both corporate

4    and partnership law, it left to its subsidiaries a classic

5    matter of internal government floors.  And that is deciding who

6    its own officers were.  And that is not only to its

7    non-corporate subsidiaries, but also its corporate subsidiaries

8    in order to determine for themselvess who its officers were.

9    That's a process that the New York partnership Pier Co.

10   followed.  That's a process that they used as Co. did, a

11   process of written resolution.  So we don't have to guess who

12   the people were that were appointed, we know who they were.

13   And we know that Mr. Aleynikov was never among them.  The

14   provision of the partnership agreement, one of the provisions,

15   is the provision of the partnership agreement essentially

16   saying as to officers:  Well, while the general partner has

17   certain authorities --

18          MR. MARINO:  I'm sorry.  Can I have the provision,

19   your Honor?

20          MR. FRIEDRICH:  It's cited in our brief.

21          THE COURT:  If you won't help him out, help me out.

22          MR. FRIEDRICH:  I'll be happy to cite you to the --

23          THE COURT:  Are we talking about the memo of

24   agreement?

25          MR. FRIEDRICH:  Yes, we are.  We are, your Honor.  If

 1    you'll give me just a moment, I'll grab it.

 2           THE COURT:  I've got a cover sheet, Exhibit 2.  o d

 3           MR. FRIEDRICH:  While we're pulling it up, your Honor,

 4    it's cited at page 15 of our brief.

 5           THE COURT:  Uh huh.  It describes --

 6           MR. MARINO:  Can we just have the provision?  This is

 7    the provision on which the case is supposed to turn.

 8           MR. FRIEDRICH:  Right.  So, your Honor, it's page 15

 9    of our brief citing the agreement at page 7.

10           THE COURT:  Alright.  I recall that -- I know the

11    particular parts cited were section -- paragraph 11 or Section

12    11, is that what it is?

13           MR. FRIEDRICH:  It's the -- it's page 7, the paragraph

14    at the very top.  It's any officer of the partnership.

15           THE COURT:  Uh huh.

16           MR. FRIEDRICH:  My point is simply this.

17           THE COURT:  Article 1, Section 11 of the agreement.

18    Okay, go ahead.

19           MR. FRIEDRICH:  Thank you.  So it's simply as to that

20    provision.  My point is, that the partnership agreement

21    describes certain powers and certain authorities held by the

22    general partner.  It then says:  Any officer of the partnership

23    shall have full similar power and authority in accordance with

24    the procedures prescribed by the general partner to appoint one

25    or more of the partnerships employees as a partnerships

1    attorney in fact for the purposes of executing and delivering

2    on behalf of the partnership, such documents as may

3    specifically be described in the power of attorney.  So

4    appointing such employee or employees and as may relate to a

5    specific transaction you specifically described herein.  That's

6    simply one enumerated power that "any officer of Co. had."

7          We know by affidavit of Adam Schlesinger that was

8    submitted to the Court, specifically that was never a power

9    that Aleynikov had.  This simply is one further indication that

10   because Aleynikov never had the authority that any officer of

11   the partnership had, by inference he was not an officer of the

12   partnership.

13         THE COURT:  Did anyone have it?  It says that it will

14   happen in accordance with the procedures described the general

15   partner were any such procedures implemented.

16         MR. FRIEDRICH:  That, your Honor, I will have to get

17   back to you on.  I believe the answer is yes.  But I don't want

18   to guess.

19         THE COURT:  Okay.

20         MR. FRIEDRICH:  Coming back, your Honor, if I could.

21         THE COURT:  Sure.

22         MR. FRIEDRICH:  If I could turn to tab 3, we were just

23   discussing critically the by-laws do not use a uniform

24   definition of officer, but construed the term differently with

25   respect to the type of entity involved.  Turning to the second

1    page of tab 3, Aleynikov's key argument is he is an officer

2    because 4.1 says vice presidents are officers.

3            I just heard the Court ask Mr. Marino:  You're making

4    that argument, aren't you, that 4.1 is what applies here?  And

5    Mr. Marino at one point says yes, if you read -- no, they're

6    not.  If you read their brief, that is precisely the argument

7    they're making.  They are arguing explicitly that 4.1 is the

8    only frame of reference that the by-laws apply for what is an

9    officer.  There are two holes with that argument.  Number one,

10   from the very start of 4.1, and the language that's underline

11   here, within the second page of tab 3, the Board of Directors

12   shall take such action as maybe necessary from time to time to

13   ensure that the corporation has such officers as are necessary.

14           THE COURT:  Yeah, it's phrased in terms of the

15   corporate entity that has a Board of Directors, and so on.  I'm

16   with you.

17           MR. FRIEDRICH:  There's nothing here suggesting it

18   applies to the partnership.

19           Number two, this does not say that anyone who holds

20   the job title of vice president is automatically an officer.

21   That's why, when the Court asked me when I was seated during

22   Mr. Marino's argument, would we be having a dispute if he was a

23   vice president under this provision.  I said carefully if he

24   was appointed under the procedure that was at issue here for

25   the group, no we would not.  It's not just a question of title,

 1    it's a question of appointment.

 2            THE COURT:  Let me ask you, though, turning to page 1,

 3    the same thing I asked Mr. Marino, which is, what am I to make

 4    of the term "officer shall include, in addition to an officer",

 5    blah, blah, blah, blah, blah.  What am I to make of officer

 6    means officer and also some other stuff?

 7            MR. FRIEDRICH:  It means officer within the meaning of

 8    the partnership.  It means officer as a matter of the self

 9    determination of the partnership.  It is up to the partnership

10    to decide for itself again under this flexible structure that

11    the by-laws put in place.  It does not put in any uniform rule,

12    nor should it, given the nature of the business and given the

13    nature of its many multiple subsidiaries and different

14    jurisdiction.  This means officer as determined by the

15    partnership as a matter of New York partnership law.

16            THE COURT:  Okay.  If I'm -- just a hypothetical

17    person applying for the job with GS Co., how do I know that, I

18    mean not that I'm anticipating being sued over a job

19    application but how do I know that? How do I know what this

20    means, an officer is an officer?  And I might be thinking:

21    Well, I guess they're calling me a vice president.  How would I

22    know that I'm not included?

23            MR. FRIEDRICH:  Your Honor, again, if we want -- we

24    can talk about what sort of the plain meaning of words are.

25    And I'm happy to answer that question in terms -- but I don't

1    think that you get to that part of the analysis.  I don't think

2    you get to the part of the analysis that Mr. Marino suggests.

3    Where it's just from the standpoint of what is the reasonable

4    guy on the street think of this team.  As the Court had pointed

5    out, there's a lot that needs to be done first in terms of

6    construing the by-laws, construing them consistently as a

7    matter of by-law interpretation.  There are many steps before

8    you get to the question of what a reasonable person thinks.  If

9    we're talking about common meaning, they think, as a matter of

10   common usage, they cite this Black Law definition of "officer".

11   As the Court pointed out, that's talking about corporate

12   officer the Black's law definition.  We want to talk about

13   common meaning of the word, and what the words mean.  Here's

14   some definitions from the Webster's New Word Dictionary.

15   "Officer means anyone elected or appointed to an office or

16   position of authority, and government business, institution or

17   society, et cetera".  One indication off the bat, there is a

18   formal element to appointment even as a matter of common

19   meaning.  Other dictionaries, American Heritage, defines

20   officer as one who holds an office of authority or trust in an

21   organization such as corporation or government.  Oxford

22   Dictionaries:  A person holding a a positon of authority,

23   especially one with a commission in the armed service the

24   merchantile marine passenger ship.  Cambridge Dictionary:  A

25   person who has a position of authority in an organization and

1    one who holds an office of authority or trust such as a

2    corporation or government.  What you'll see, your Honor, as

3    well, and I think it bears on that question.  Much discussion

4    was made about cases supposedly holding that as a matter of law

5    the title vice president means officer.

6         What we have done, your Honor, I want to discuss that

7    authority as a general proposition, and then I want to discuss

8    it in a little bit more detail.  This is at page 1 -- tab 7,

9    page 1 of our notebook.

10        THE COURT:  Okay.

11        MR. FRIEDRICH:  The first thing that I want to say

12   about the discussion about legal authority, it's not like

13   there's one case on point.  It's not like there's one case

14   saying:  Interpreting vice president, as a matter of law,

15   Delaware by-laws.  Okay, so to the extent that it's any

16   authority at all, your Honor, it's frankly persuasive

17   authority.  And you can question how valuable that is.  The

18   context of which the courts have opined on this is the context

19   of bankruptcy, in the context of tax, in the context of

20   securities fraud.  Even across all those contexts, Mr. Marino

21   provides you one set of cases.  And, again, as he started to

22   cite the Court to the Foot Hills case.  That case holds

23   exclusively that the mere title of a person does not end the

24   inquiry.  What we've done for the Court is we have a notebook

25   for the Court that we highlighted to the Court of the cases.

1    Mr. Marino has cited the Court to this proposition, and we've

2    also  prepared for the Court the highlighted  cases we have

3    found which bear upon this position.  We think that the weight

4    of authority, for lack of a better term, it's a duck.  It's a

5    substantive test about what the person did.  No court that we

6    have found simply holds as a matter of law, if you have the

7    title of vice president, that ends the inquiry as to whether or

8    not you're an officer.  They ask questions like:  Does the

9    person have a policy-making capacity?  Do they have executive

10   level duties?  Were they elected or appointed to serve --

11           THE COURT:  Let me ask you this and just interrupt

12   you.  I don't want to cut you off.  But I get what you're

13   saying about it being a duck test, but doesn't your --

14           MR. FRIEDRICH:  Doesn't the phrase --

15           THE COURT:  Doesn't your by-laws say, in addition to a

16   person who is an officer --

17           MR. FRIEDRICH:  That's correct --

18           THE COURT:  Apply a duck test to see if somebody else

19   is an officer.

20           MR. FRIEDRICH:  That's correct.  And let me tell you

21   what I think is one potential reason for that.  I'll answer

22   this.  Suppose we can, as we said in terms of the global reach

23   of this large company, they have a subsidiary that is located

24   in Sweden.  I don't know what Sweden law says.  Let's say, as a

25   matter of local jurisdiction, you can only have one or two

1    officers.  So, there may be other people who are officers who

2    don't count as officers under local law.  And this construction

3    is a way of reaching people who may otherwise need to be

4    covered.  I don't think that the fact that there is -- that

5    that language is there is meant to somehow foreclose

6    consideration of a person's duties among the definition of

7    officer.  Because at the end of the day, that's what an officer

8    is.  That is among the most important decisions that any

9    partnership makes, is who its leadership is.  It's the people

10   vested with policy-making authority.  It's the people vested

11   with leading the organization.  It's the people who are vested

12   with the authority to make business risk.  And let's, as we

13   think about that, your Honor, let's not forget about what the

14   Delaware Chancery Court has articulated in terms of the policy

15   behind 145, which Mr. Marino started to allude to at the end.

16   It is about making sure that good people serve.  And if you

17   read the particulars of Judge Strine's opinion in Fasciana,

18   what he writes it is about making qualified officers and

19   directors serve, particularly from the standpoint of their

20   willingness to accept, realize, make judgments about, and

21   execute upon business risk  because that is what companies are

22   all about.  That's what the economics are all about.  That is

23   the sole of the 145 indemnification and advancement scheme.

24   That principal, your Honor, has no application here,

25   whatsoever.  Sergei Aleynikov was never authorized to take

1    business risk on behalf of Goldman Sachs.  He never did so.  He

2    supervised no one.  He managed no one.  He had no authority

3    whatsoever to transact business outside of Goldman Sachs.  That

4    alone should have given a reasonable person that indication he

5    was not an officership --

6              THE COURT:  I understand that he wasn't trading or

7    doing any of those Goldman Sachsy things.  But he -- for want

8    of a better term, sorry.  But he was doing activities that

9    could have potentially enormous ramifications.

10             MR. FRIEDRICH:  He was described as someone who held a

11   mid-level position as a computer programer.  In terms of could

12   he have done things that could have enormous ramifications, I

13   think that has to be relative in comparison to everyone else.

14   And the Court has affidavits from the HR personnel at Goldman

15   Sachs.  We know as a relative matter, vice president is

16   somewhere below managing director, somewhere above post

17   analyst, an associate is a mid-level title.  Certainly below

18   partner, and in a relative sense.  Again, I know the -- and I

19   think the importance of sort of the many thousands of vice

20   presidents who are out there again is an industry parlance.

21   And you have this from Greg Palm's affidavit, as a matter of

22   industry parlance, that's a functional title.  It's used to

23   denote relative seniority within the industry.  It is not

24   something that is used to convey officer status.  Certainly

25   Goldman Sachs as never considered and does not consider the

1     people within Co. or hold that title to be officers, and

2     doesn't treat them as such for any purpose.

3            THE COURT:  Let me ask you this.  And maybe you don't

4     have these facts at your fingertips, but in case you do.  Have

5     vice presidents or to what extent have vice presidents been

6     indemnified or advanced legal cause in the past, either of Co.

7     or the non-corporate subsidiary?

8            MR. FRIEDRICH:  I can tell your Honor, my

9     understanding is that as to functional vice presidents, in the

10    situation of Aleynikov, those vice presidents have not been

11    paid advancement as a matter of the mandatory indemnification

12    provisions of the by-laws.  As a matter of discretion notably

13    within the by-laws, and we point this out in our brief, there

14    is a provision for permissive advancement of employees.  That

15    is a provision from time to time used.  The answer to what I

16    hear to be the Court's question, have these fees been paid as a

17    matter of mandatory advancement under the by-laws, my

18    understanding is no.

19           THE COURT:  I'll be frank about what I mean.  Is if

20    that is a practice of the company, might say more about the

21    meaning of these terms than knowing a post hoc argument in

22    response to somebody you're pretty mad at.

23           MR. FRIEDRICH:  Yes, yes, yes, true.  Absolutely.  And

24    I think, as Mr. Marino correctly points out in his pleadings,

25    it's a matter of what the by-laws were at the time.  It's not

1    the case that they can be changed later to exclude someone.  We

2    couldn't, you know, later change them today to exclude Mr.

3    Aleynidov.  He either is or is not within them at the time that

4    they were drafted.

5            Your Honor, I'd like to -- simply before I forget, I

6    would like to, if I could, hand up the binders that I'm talking

7    about

8            MR. MARINO:  We call those unauthorized sur-reply

9    briefs.

10           THE COURT:  Are the binders just cases?

11           MR. FRIEDRICH:  They're just cases.

12           THE COURT:  Cases we got, we won't need them.  I

13   appreciate you organizing them for the Court.

14           MR. FRIEDRICH:  I would like to read out the case

15   names, if I may.

16           THE COURT:  Sure.

17           MR. FRIEDRICH:  Thank you your Honor.

18           THE COURT:  Let me ask you this, Mr. Marino, would you

19   have any objection to him ripping out the table of contents?

20           MR. MARINO:  Are they cases in their briefs?

21           MR. FRIEDRICH:  No, they're not, your Honor.

22           MR. MARINO:  They're cases we're hearing for the first

23   time today?

24           MR. FRIEDRICH:  To be clear, the arguments that

25   they're advancing about vice president means officer as a

1    matter of law was put forth for the first time in their reply

2    brief.  These are not cases that we have had time to review.

3          MR. MARINO:  We get a chance to reply as the party

4    bearing the burden, and we haven't seen these cases, and we

5    haven't seen these briefs that he'd like to hand up.

6          THE COURT:  Here's what I'd like you to do.  Give

7    me -- when you get back to your office, give me a two-page

8    letter citing these cases explaining very briefly how you think

9    they're relevant.  Mr. Marino, you respond to that telling me

10   why they're not.

11         MR. FRIEDRICH:  Thank you, your Honor.

12         THE COURT:  Let me just ask you, I sense you're

13   winding down on the merits of the likelihood of success.  Could

14   you briefly address the other factors, irreparable harm?

15         MR. FRIEDRICH:  In terms of the irreparable harm,

16   balance of equities and so forth, some of this, frankly, your

17   Honor, becomes somewhat circular around the definition of the

18   term "officer".  Officer, and I admit that.

19         THE COURT:  Sure.  Sure.

20         MR. FRIEDRICH:  If you take it in terms of what is in

21   the public's interest or the balance of the equities here, what

22   we know, because Mr. Aleynikov Frankly concedes that he's

23   broke.  What we know is that any money advanced Goldman is not

24   likely to see again.  It is not the case that when Mr. Marino

25   suggests when he cites the financial performance of Goldman

1    Sachs, Inc. as a whole and simply because Goldman Sachs has

2    assets and it's convenient for him to have them, that that

3    somehow is the balance of the equities, that's not the balance

4    of the equities.  Again, here, if you come back to the very

5    policy, and the very purported public interest behind 145C as

6    articulated by Chancellor Strong in Vaccina is about getting

7    good people to serve from the standpoint of good business risk

8    and making good business decisions.  Mr. Aleynikov, as well as

9    the many thousands of functional officers like him, are not

10   people that fall into that category.  They are not of the

11   director and officer level, therefore the public policy

12   implications of this do not apply.  It is not in the interest

13   of shareholders or the public, your Honor, for Mr. Aleynikov to

14   be paid fees by his corporate victim.  It is not the case --

15             THE COURT:  Assuming guilt.

16             MR. FRIEDRICH:  I'm sorry?

17             THE COURT:  Assuming guilt.

18             MR. FRIEDRICH:  Assuming guilt.  But I'll say this,

19   your Honor, I do think -- I do think, again, they cite to the

20   Ready case where again Justice Shrine makes that very

21   compelling argument saying:  What if, what if what the company

22   imagines is unimaginable is in fact the case, and this person

23   is in fact an innocent man.  To us, your Honor, in this context

24   we're in a very different place.  Because you have a Second

25   Circuit opinion that went into great detail about exactly what

1    Mr. Aleynikov did, and exactly what the conduct was that was

2    found by the jury.  What the Second Circuit said is the conduct

3    found by the jury is conduct that Aleynikov should have known

4    was in breach of his confidential obligation to Goldman and was

5    dishonest in ways that would subject him to sanction.

6            THE COURT:  Everyone is entitled to an opinion, and

7    probably the Second Circuit more than most.

8            MR. FRIEDRICH:  That's easy to say from a Third

9    Circuit --

10           THE COURT:  True.  True.  Certainly it's not res

11   judicata that this is true.  Certainly they're not -- the New

12   York State criminal proceeding is not going to consist of

13   someone reading the findings of the Second Circuit and then

14   sending it to the jury.

15           MR. FRIEDRICH:  That's correct, your Honor.  That's

16   correct.  And I think in terms of the legal meaning, the

17   outcome of that proceeding, I think it has applications in some

18   areas but not others.

19           For example, in terms of success on the merits, I'm

20   not going to stand here and argue that that's not success on

21   the merits as that term is defined by Delaware case law.  Okay.

22   That's one thing where it counts.  In terms of balance of the

23   public interest, and where we stand now in terms of evaluating

24   the balance of the equities, and what the public policy

25   interests are, I think it's entirely relevant and appropriate

1    for the Court to consider the findings and the commentary of

2    the Second Circuit in that context.  Let's not also forget,

3    there's an entire factual record that lays out this conduct.

4    That's not meaningless.  It can still have application

5    including in the state court process.  For example, as your

6    Honor knows, a witness is not available, but there's at the

7    point that in the rules of evidence that the opponent had the

8    ability to cross examine, that can be directly admissible.

9    It's not nothing, it's something.  It's just a question of how

10   it's applied.  I'm suggesting that that is appropriate to apply

11   here in the context of the balance of the equities.

12            THE COURT:  Not that it's appropriate to consider --

13            MR. FRIEDRICH:  Yes.  Yes.

14            THE COURT:  How about just winding down here.  How

15   about the notion that, look, this is not just -- you've got

16   some money and he wants it.  He is suffering more than an

17   economic injury here.  That is this is not ordinary fungible

18   cash, this is money earmarked for his criminal defense, and he

19   will be denied counsel, or at least counsel of his choice, and

20   counsel who's experienced in the case if I don't find his way?

21            MR. FRIEDRICH:  Right, well, one is, obviously there

22   are questions about sort of the straight forward application of

23   the by-laws or not.  I don't frankly view it as my client's

24   role to say what his defense is or not.  Obviously that's a

25   question between he and his attorneys.  All that we can define

1    from the factual record is that Mr. Marino has represented

2    Sergei Aleynikov since 2010.  There was no claim for

3    advancement made during that two-year period.  Again, even now

4    they've entered an appearance.  They haven't waited to enter an

5    appearance in the state court case, they've entered an

6    appearance in the state court case.  Whatever their decisions

7    are of the economic deal that they made with Mr. Aleynikov is

8    their.  I don't think -- I think that's a far cry from a

9    showing that he's somehow going to be deprived of counsel.  He

10   can get a court-appointed counsel, if he wants to.  I don't

11   think that that's an issue there in terms of the decision

12   that's now before the Court.

13           THE COURT:  Alright.  I think I may have discussed

14   certain of the issues and perhaps exhausted you.  If you don't

15   have anything further --

16           MR. FRIEDRICH:  I do not --

17           THE COURT:  Then have a seat and I'll let Mr. Marino

18   rebut.

19           MR. MARINO:  What troubles me most, your Honor, is the

20   extent to which a party such as Goldman Sachs to litigation

21   such as this, can so obscure the truth that the Court would be

22   lead, misled, to believe that a partnership agreement that is

23   one hundred percent silent on the issue of definition of a

24   officer, could somehow contain that definition.  And what your

25   Honor was misled by, I must respectfully submit, was the

1     affidavits that were submitted by Mr. Palm, quite a senior

2     executive at Goldman Sachs Group, Incorporated, and others to

3     the effect that somehow this memorandum of agreement, this

4     partnership agreement, which I will respectfully refer to as a

5     red herring in this proceeding, somehow it defined what an

6     officer was.  And so he gets up and is reading to you from his

7     brief, and I say:  Where is it?  Where is it in the agreement?

8     I mean, first of all, it's not in the agreement.  The same sort

9     of acceptance of the generally understood meaning of the term

10    "officer" that obtains in the by-laws of the Goldman Sachs

11    Group, Inc., obtains in the partnership agreement.  There isn't

12    any attempt to do anything else.

13            THE COURT:  I'm with you that the partnership, the

14    memorandum of agreement doesn't anywhere say, you know, an

15    officer is defined as, you know, a vice president is defined

16    as.  And I don't think that's what he was saying.  I think he

17    was saying it identified certain earmarks or qualities that

18    tend to go with one's status as an officer.  And he doesn't see

19    those here.  Is that a slam dunk argument?  No.  It's a

20    relevant argument, it seems to me.

21            MR. MARINO:  If you look at the provision that he

22    averted to, it says, first of all, it tells you the general

23    partner at the bottom of page 6, last line of the page, shall

24    have full power and authority of all of the partners of the

25    partnership at any time, and from time to time to appoint one

1    or more of the partnership's employees as the partnership's

2    attorney in fact for the purpose of executing and delivering on

3    behalf of the partnerships such classes or categories of

4    documents that maybe described in the power of attorney so

5    appointing employee or employees.  Well, that tells us nothing

6    relevant to our issue today.  The next sentence, "any officer

7    of the partnership", again, no attempt to define the word,

8    which we are now given to believe means different things to

9    different people at different times and meant something

10   different to Goldman Sachs Group than it means in common

11   parlance.

12          THE COURT:  The nature of the argument he's making,

13   any officer of the partnership shall where a neck tie to work

14   everyday, and he's saying:  Well, I saw this guy everyday and

15   he never had a neck tie.  That's the nature of the argument

16   he's making.  He's saying an officer of the partnership.

17          MR. MARINO:  What's the authority?  What's the

18   authority?  How do we know?  The general partner shall have

19   full power and authority on behalf of all the partners at any

20   time to appoint one or more employees as the partnership's

21   attorney in fact for the purposes of executing and delivering

22   on behalf of the partnership documents or categories of

23   documents.

24          THE COURT:  Well, flip it around.  Suppose you had

25   evidence that Mr. Aleynikov did appoint someone, appoint an

1    employee as the partnership's attorney in fact, you would

2    certainly cite that to me as evidence anything to suggest that

3    he was an officer.  He's just flipping it around.

4           MR. MARINO:  I might cite it to you if they had raised

5    a genuine issue of material fact.  I might say:  Well, there's

6    a fact issue.  If Sergei Aleynikov were trying to establish --

7    were trying to make an argument they would foist upon him a

8    functional argument.  That's not my argument.

9           THE COURT:  Okay, I understand.  I agree with you,

10   that if -- if we accept your strong position, which is that if

11   you call somebody vice president, they're an officer.  That's

12   it.  And then no evidence is relevant.  The mere fact being

13   dubbed vice president --

14          MR. MARINO:  But it's not -- it has a little --

15          THE COURT:  We're going a little deeper than that.

16          MR. MARINO:  Well, the problem with that, your Honor,

17   it has a little bit of a quality of being sort of a little bit

18   pregnant, right, because either you determine as a matter of

19   law that when the drafter of the by-laws said officer they

20   meant something that people would understand, right?  It can't

21   be their position that when they said that, they were trying to

22   obfuscate.  It can't be their position that when they said

23   that, they were trying to leave themselves flexibility to

24   determine post hoc, who they would deem worthy.  And, by the

25   way, that's what this proceeding is about.  Mr. Friedrich

1    cannot wait to tell your Honor about what a bad guy Sergei

2    Aleynikov is.  In the eyes of the law, Sergei Aleynikov was one

3    hundred percent exonerated of every single offense that he was

4    charged with.  And, by the way, one of those offenses, one of

5    those offenses the violation of the Computer Fraud Abuse Act.

6    The Computer Fraud Abuse Act makes it a crime, to make a copy

7    without authorization or to exceed authorized access.

8              THE COURT:  Yes, I know.

9              MR. MARINO:  And, Judge Coate says he had access to

10   the whole system.  And the way they did their work was they

11   made a copy of the system, that part of the system they were

12   working on, and that's from their direct testimony.  Mr. Freda

13   was in the courtroom every single day with Goldman Sachs

14   colleagues.  And he knows what transpired at the criminal

15   trial. So my point is --

16             THE COURT:  Let me slow you down one second.  I get

17   it.  Who could disagree with that.  He's clothed with the

18   presumption of innocence.  At the beginning of the criminal

19   trial he's clothed with that.  It doesn't go away unless and

20   until he's proved guilty beyond a reasonable doubt.  I get

21   that.  Everybody gets that.  But is it irrelevant for purposes

22   of a civil case that certain evidence has been introduced,

23   certain witnesses have testified?

24             MR. MARINO:  Yes.  Yes,

25             THE COURT:  It is irrelevant?

```
 1              MR. MARINO:  Yes.

 2              THE COURT:  Why?

 3              MR. MARINO:  It's irrelevant because Sergei Aleynikov

 4   was accused of doing something wrong as a matter of criminal

 5   law.  He didn't incur two and a half million dollars of legal

 6   expenses, which he didn't have the slightest hope of paying for

 7   because he did does something in the words of the Second

 8   Circuit majority opinion that was dishonest, or that he knew

 9   would violate a confidentiality provision.  I opened to the

10   jury that Mr. Aleynikov had violated his confidentiality

11   provision.  In fact, that doesn't mean anything to this

12   proceeding.  What we're looking, indemnification on a --

13              THE COURT:  I understand.  I understand.  Let me just

14   stick with it for a second because that is even when a person

15   is clothed in the presumption of innocence, we use acts or

16   evidence of acts in various connections other than to establish

17   guilt.  Bail and detention, for example.

18              MR. MARINO:  That's right.

19              THE COURT:  And so how can you categorically say we

20   can not look at this?

21              MR. MARINO:  Because he's not cloaked with the

22   presumption of innocence, Judge, he's exonerated.  He went to

23   hell for a year, in large measure, because of the conduct of

24   Goldman Sachs in misrepresenting exactly what he took, and what

25   it could do and did do in Goldman's systems.  He went to jail
```

1    for a year for a crime he didn't commit.  During that entire

2    time, Sergei Aleynikov, unlike his former colleagues that run

3    Goldman Sachs, is a person of principal.  He says:  You know

4    what, I'm not going to seek indemnification advancement now

5    because what will happen if I'm convicted and I can't pay it

6    back?  What will happen?

7              THE COURT:  Nothing, probably.  Right?

8              MR. MARINO:  It depends on what means nothing and what

9    means something to you.  If you're a person of principal, not

10   the criminal that we hear described in this courtroom, if

11   you're a person of principal, you think if I'm unable to pay it

12   back, I'm unable to pay it back, then I've got something that

13   the law says I'm not entitled to.  Okay.  Sergei Aleynikov was

14   acquitted, and he'll be a quitterer again, I promise.  You can

15   quote me.  What the Second Circuit said:  We're not going to

16   address any of these arguments because, as a matter of law, the

17   indictment of this man was legally invalid.  So do I think that

18   the fact that Mr. Aleynikov was convicted by a jury that was

19   instructed improperly with respect to a law that doesn't exist,

20   do I think that bears on whether now Mr. Aleynikov should have

21   to be deprived of counsel, and the argument that he has counsel

22   because those fools at Marino, Tortorella & Boyle have already

23   entered an appearance?  That would be like saying, you know,

24   this guy can get the public defender, he's not going to be

25   drprived of counsel.  Goldman Sachs doesn't get the benefit of

1    that.  Either they own the indemnification advancement or they

2    don't.

3              THE COURT:  I think we're on the merits with a big M,

4    we're on the irreparable harm and injunctive factors.

5              MR. MARINO:  I understand.  The question for your

6    Honor today is has Sergei Aleynikov, in the first instance, has

7    he demonstrated the threat of irreparable harm --

8              THE COURT:  Let me ask sort of an obnoxious question,

9    and probably not for the first time.

10             MR. MARINO:  Just for the first time when no one can

11   really call you on it.

12             THE COURT:  Can I find -- can I find, can I find that

13   having to be represented by a CJA attorney, or a public

14   defender, is irreparable harm?  What repercussions would that

15   have?

16             MR. MARINO:  I think you could find that in the

17   context of a civil suit to enforce a mandatory right of

18   indemnification and advancement --

19             THE COURT:  On a Monday in October?

20             MR. MARINO:  On any day after they hired him and made

21   him a VP, and subjected him to their by-laws.  Yeah, you could

22   say, and these cases are cited in the briefs that we actually

23   filed.  It's very clear that courts have found it is

24   irreparable harm to be deprived of counsel of your choice.  And

25   so I guess to the extent that Mr. Aleynikov, perhaps he can

 1    borrow money.  Perhaps he could.  Perhaps.  Who knows if he

 2    qualifies at this point.  But my view on this --

 3              THE COURT:  I understand you're experienced counsel

 4    involved in the case and all that stuff.

 5              MR. MARINO:  I think it would be pretty dramatic to

 6    say that it doesn't harm --

 7              THE COURT:  I understand.  It was more of an idle

 8    question.

 9              MR. MARINO:  And I understand the question.  I think

10    in this context, the idea that somebody like Aleynikov would

11    not be irreparably harmed by being deprived of us as his

12    lawyers, at this point two years into the process and with

13    everything that's transpired, the idea that that would even be

14    an efficient way to go about it, t have another come in, it

15    doesn't have a lot of heft to it.

16              THE COURT:  Okay.  And one other sort of nagging

17    question, and nobody should read anything into this, but

18    suppose we get to the point, or suppose hypothetically we got

19    to the point of injunctive relief, how about the bond

20    requirement of Rule 65C?

21              MR. MARINO:  He doesn't have the capacity to file a

22    bond.

23              THE COURT:  I know he doesn't have the capacity to

24    file a bond.

25              MR. MARINO:  He can't do it.

1        THE COURT:  Right.  So where does that leave us?

2        MR. MARINO:  I don't --

3        THE COURT:  The rule says I shall order a bond in an

4    amount sufficient to secure the other side in the event we're

5    wrong.

6        MR. MARINO:  That's not what the by-laws speak to,

7    they don't speak to security.  They speak is his undertaking.

8        THE COURT:  And I agree, if you were to ultimately win

9    this case, then that wouldn't be a consideration.

10       MR. MARINO:  If I have to post a bond to force them to

11   give me -- the answer is, advancement is typically decided as a

12   final matter on a summary basis for that precise reason.  And

13   every case, and we've cited many of then in our briefs, every

14   case that addresses, says the reason for that is, think about

15   it.  If you don't decide it summarily, you either have a trial

16   that goes on and now you're fighting to get advancement, and

17   therefore, by definition, being denied it; or you're posting a

18   bond to secure your injunctive relief and therefore being

19   denied.  So I think that the answer is, these things are

20   decided summarily for precisely that reason.

21       You know, it's fine for Goldman Sachs to get up and

22   look at these by-laws, and pretend they say something that they

23   just don't say, or pretend that any rational person in

24   Aleynikov's position, or anyone elses position, coming on to

25   join the Goldman family, would believe that they didn't entitle

1    him to relief.

2            I guess I have this question, and we've gone over this
3    4.1.  I deep hearing all my arguments.  My point on 4.1 is
4    pretty simple.  If you want to know what Goldman Sachs meant
5    when they said officer, well certainly when they said it with
6    respect to the Goldman Sachs Group, it included vice president.
7    I can't think of any reason why they would change it.  Why
8    would it be different?  And if you were going to change it, why
9    would you use the same word?  If you look at the word here that
10   I'm referring to, the word is officers.  Other officers.  It's
11   repeatedly throughout 4.1.  They speak of it in terms of
12   including vice president.  So why isn't it including a vice
13   president now.  And if they didn't want it, wouldn't they have
14   had to say, you know, elsewhere in these by-laws, when we have
15   a title -- like you're looking around to see what an officer
16   means probably.  Well, guess what?  When I got their by-laws,
17   that's what I did.  I looked around for definition of officer.
18   And I'm reading this.  And I say well certainly with respect to
19   a corporation, they're very specific there, it would include
20   vice presidents.  And yet we get to 6.4, you would think if
21   they're going to use it to mean something different, wasn't it
22   incumbent upon them to tell us that?  That's why this is a
23   summary case, your Honor.  That's why all this discussion --
24   let's have discovery, and ask Greg Palm his opinion about who
25   ought to be an officer.

1            Let's talk about what the significance in the

2     partnership agreement of the fact that any officer shall have

3     the power to appoint attorneys in fact.  We're going to have a

4     case in which while I'm defending an innocent guy for the

5     second time, an exonerated guy.  I'm going to be fighting this

6     case out, and taking depositions, and trying to prove that when

7     Goldman Sachs in its by-laws, which obviously can afford and

8     has purchased the very best counsel in the world to draft its

9     corporate documents, they didn't define a critical term.  They

10    don't disagree that the term "officer" is the term on which

11    this case turns, but they don't define it.

12            THE COURT:  Okay, okay.  I think you've ended on a

13    high note.  And unless you've got something really pressing, I

14    think we're done here.

15            MR. MARINO:  I guess this is what I have that's really

16    pressing.  I don't know what it could possibly mean for the

17    draftsman of these by-laws to say that the rights provided by

18    any person, to any person by this by-law shall be enforceable

19    against the corporation by such person, who shall be presumed

20    to have relied upon it.

21            Let me leave your Honor with this question.  What the

22    heck did Sergei Aleynikov presume he was relying on?  The use

23    of the word "officer", it has a meaning, not only in American

24    Heritage and everywhere else.  Not only to do with just

25    corporations, but everywhere that they use the word, vice

 1    president is included.  They know it.  And Mr. Friedrich, he

 2    gave a great answer to your question about:  How do you

 3    indemnify these others permissively?  Fabrice Torre was a vice

 4    president of the Goldman Sachs company.  His money is being

 5    advanced, no doubt about it.  Neil Morrison was a vice

 6    president of the Goldman Sachs company, he's being advanced.

 7    I'm going to tell you the test, the legal realism, I'm going to

 8    give you the legal realism.  Are you ready for the legal

 9    realism?

10              THE COURT:  I don't know.

11              MR. MARINO:  If you mess with us, you steal from us,

12    you offend us, and God forbid you embarrass us, you get your

13    conviction on the very day you argue the appeal, we aren't

14    giving you a nickel.  That's our test.  It doesn't mean you,

15    Officer.  It doesn't mean you.  And that isn't right.  And

16    that's not how it plays.  And honestly, if there were words

17    that I could find to express my level of frustration at reading

18    this document and seeing the way the word "officer" appears,

19    without any definition, but then hearing the many

20    extraordinarily detailed definition that they're able to

21    conjure after the fact in the teeth of a provision that says

22    you're presumed to have relied, I'd express it.

23              THE COURT:  Okay.  I will take this matter under

24    advisement.  It's very complicated and very interesting, I

25    assure everyone that I will not hypothesize on motives on

1    behalf of anyone and/or decide the case on that basis.  But I

2    do have the question of interpretation, and I'll be writing on

3    this.  And I know better than to promise you a date.  I'll do

4    it as quickly as I reasonably can.

5              MR. MARINO:  Thank you very much, your Honor.

6              MR. FRIEDRICH:  Thank you, Judge.

7              THE COURT:  Thank you, counsel,

8              THE CLERK:  All rise.

9              (Matter concluded)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25