## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SERGEY ALEYNIKOV,

    Plaintiff,

  v.

THE GOLDMAN SACHS GROUP,
INC.,

    Defendant

-----------------------------------------------

THE GOLDMAN SACHS GROUP,
INC. and GOLDMAN, SACHS & CO.

    Counterclaim Plaintiffs

  v.

SERGEY ALEYNIKOV,

    Counterclaim Defendant.

No. 12-cv-5994-KM-MAH

**ANSWER AND
COUNTERCLAIMS**

## ANSWER

Defendant The Goldman Sachs Group, Inc. ("GS Group"), by and through

its undersigned attorneys, as and for its Answer to the Verified Complaint filed by

Plaintiff Sergey Aleynikov ("Aleynikov"), states and alleges as follows.  To the

extent not specifically admitted below, each factual assertion by Aleynikov is

denied

3635911.1

1.      GS Group denies the allegations of paragraph 1, except admits that it purports to describe Aleynikov's claims and requested relief.

2.      GS Group denies the allegations of paragraph 2, except admits and avers on information and belief that the FBI arrested Aleynikov on July 3, 2009, and that a grand jury sitting in the U.S. District Court for the Southern District of New York indicted him for violations of federal law.

3.      GS Group admits the allegations of paragraph 3 on information and belief, except refers to the ruling and Judgment cited therein for their contents.

4.      GS Group admits the allegations of paragraph 4 on information and belief, except refers to the Judgment of Acquittal and opinion cited therein for their contents.

5.      GS Group denies the allegations of paragraph 5, except admits on information and belief that Aleynikov was arrested and otherwise lacks sufficient information to form a belief as to the remaining allegations thereof.

6.      GS Group denies the allegations of paragraph 6, except admits and avers that Aleynikov has made a demand for indemnification and advancement to which he is not entitled.

7.      GS Group denies the allegations of paragraph 7, except lacks sufficient information to form a belief as to the allegations concerning Aleynikov's "resources."

3635911.1

8.      The allegations of paragraph 8 are legal conclusions requiring no response.  To the extent that any response is required, GS Group denies the allegations thereof.

9.      The allegations of paragraph 9 are legal conclusions requiring no response.  To the extent that any response is required, GS Group denies the allegations thereof.

10.     GS Group denies the allegations of paragraph 10, except admits and avers that Aleynikov held the functional title "vice president" in the Equities Division of Goldman, Sachs & Co. ("GSCo."), and lacks sufficient information to form a belief as to the truth the remaining allegations.

11.     GS Group denies the allegations of paragraph 11, except, to the extent that "Goldman Sachs" refers to GS Group, GS Group admits the allegations in the first two sentences of paragraph 11, and refers to the firm's website for a complete and accurate description of its business and locations.

12.     GS Group admits that this Court has diversity jurisdiction over this action, but denies that Aleynikov is entitled to any damages.

13.     GS Group lacks sufficient information to form a belief as to the remaining allegations in paragraph 13, except admits that venue is proper in this District and admits on information and belief that Aleynikov was arrested on the

3635911.1

Federal Charges[1] in New Jersey.

14.     GS Group denies that the allegations of paragraph 14 present a fair and complete description of the firm, except admits and avers that GS Group and GSCo. provide financial services and that GSCo. engages in economic activity on various commodity and equity markets in which the high frequency trading style can be used , and refers to the firm's website for a complete and accurate description of its business and locations.

15.     GS Group denies the allegations of paragraph 15, except to the extent that "Goldman Sachs" refers to GS Group, admits and avers that Aleynikov began working at GSCo. on May 7, 2007, that Aleynikov's official last day of employment at GSCo. was on June 30, 2009, that Aleynikov held the functional title of "vice president" in the Equities Division, and that Aleynikov was a member of the team of computer programmers that was responsible for developing and improving certain source code.

16.     GS Group denies the allegations of paragraph 16, except admits and avers that an employee or agent of GSCo. reported Aleynikov's theft of source code to the FBI on or about July 1, 2009.

17.     GS Group denies the allegations of paragraph 17, except admits on

---

[1] As used in this Answer, "Federal Charges" and "State Charges" refer to criminal charges arising from Aleynikov's theft of source code from GSCo.

3635911.1

information and belief that Aleynikov was arrested and charged in a Criminal Complaint and refers thereto for its contents.

18.    GS Group admits and avers on information and belief that Aleynikov was indicted and refers to the Indictment for its contents.

19.    GS Group lacks sufficient information to form a belief as to the allegations of paragraph 19.

20.    GS Group admits the allegations of paragraph 20 on information and belief and refers to the motion and opinion cited therein for their contents.

21.    GS Group admits the allegations of paragraph 21 on information and belief.

22.    GS Group admits the allegations of paragraph 22 on information and belief.

23.    GS Group admits the allegations of paragraph 23 on information and belief.

24.    GS Group admits the allegations of paragraph 24 on information and belief and refers to the opinion for its contents.

25.    GS Group denies the allegations of paragraph 25, except refers to the Judgment of Acquittal for its contents.

26.    GS Group lacks sufficient information to form a belief as to the allegations of paragraph 26.

3635911.1

27.     GS Group denies the allegations of paragraph 27, except admits and avers on information and belief that Aleynikov was arrested, and lacks sufficient information to form a belief as to the details of the arrest described therein.

28.     GS Group admits and avers on information and belief that a Felony Arrest Warrant was issued and refers thereto for its contents.

29.     GS Group lacks sufficient information to form a belief as to the allegations of paragraph 29.

30.     GS Group lacks sufficient information to form a belief as to the allegations of paragraph 30, except avers that MTB continues to represent Aleynikov, including in this litigation.

31.     The first sentence of paragraph 31 consists of legal conclusions requiring no response.  To the extent a response is required, GS Group denies the allegations thereof, except respectfully refers to the by-laws for their contents.

32.     GS Group denies the allegations of paragraph 32, except admits and avers that Mr. Friedrich received a letter dated August 24, 2012, and refers thereto for its contents and to the Verified Complaint for the amount demanded.

33.     GS Group denies the allegations of paragraph 33, except admits and avers that Aleynikov purported to provide an Undertaking in the form attached as Exhibit E to his Verified Complaint and refers thereto for its contents.

34.     GS Group denies the allegations of paragraph 34.

3635911.1

35.     GS Group denies the allegations of paragraph 35, except lacks sufficient information to form a belief as to the allegations in the first two sentences thereof.

36.     GS Group lacks sufficient information to form a belief as to the allegations of paragraph 36.

37.     GS Group lacks sufficient information to form a belief as to the allegations of paragraph 37.

38.     GS Group repeats and re-asserts its responses to the allegations of paragraphs 1 through 37 of the Complaint as if fully set forth herein.

39.     The allegations of paragraph 39 are legal conclusions requiring no response.  To the extent that any response is required, GS Group refers to the statute for its provisions.

40.     The allegations of paragraph 40 are legal conclusions requiring no response.  To the extent that any response is required, GS Group denies the allegations thereof, except refers to the by-laws for their contents.

41.     GS Group denies the allegations of paragraph 41.

42.     GS Group denies the allegations of paragraph 42.

43.     GS Group denies the allegations of paragraph 43.

44.     GS Group denies the allegations of paragraph 44.

45.     GS Group repeats and re-asserts its responses to the allegations of

3635911.1

paragraphs 1 through 44 of the Complaint as if fully set forth herein.

46.     The allegations of paragraph 46 are legal conclusions requiring no response.  To the extent that any response is required, GS Group denies the allegations thereof, and refers to the statute for its provisions.

47.     GS Group denies the allegations of paragraph 47, except refers to the statute and by-laws for their provisions.

48.     GS Group denies the allegations of paragraph 48.

49.     GS Group denies the allegations of paragraph 49.

50.     GS Group admits that Aleynikov purported to provide an Undertaking in the form attached as Exhibit E to the Verified Complaint, and refers thereto for its contents.

51.     GS Group denies the allegations of paragraph 51.

52.     GS Group repeats and re-asserts its responses to the allegations of paragraphs 1 through 51 of the Complaint as if fully set forth herein.

53.     GS Group denies the allegations of paragraph 53.

54.     GS Group denies the allegations of paragraph 54.

55.     GS Group denies the allegations of paragraph 55, except admits and avers that Aleynikov sent it Exhibits D and E to his Verified Complaint, and refers thereto for their contents.

56.     GS Group denies the allegations of paragraph 56.

3635911.1

57.     GS Group denies the allegations of paragraph 57.

58.     GS Group denies the allegations of paragraph 58.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof that it would not otherwise bear,

Defendant GS Group asserts the following additional defenses:

### FIRST DEFENSE

The Verified Complaint fails to state a claim on which relief can be granted.

### SECOND DEFENSE

Aleynikov's claims are barred, in whole or in part, by the doctrine of laches.

### THIRD DEFENSE

Aleynikov's claims are barred, in whole or in part, by the doctrine of
waiver.

### FOURTH DEFENSE

Aleynikov's claims are barred, in whole or in part, by the doctrine of
acquiescence.

### FIFTH DEFENSE

Aleynikov's claims are barred, in whole or in part, by the doctrine of
estoppel.

### SIXTH DEFENSE

Aleynikov's claims are barred, in whole or in part, by the doctrine of

3635911.1

unclean hands.

## SEVENTH DEFENSE

Aleynikov's claims are barred, in whole or in part, by the doctrine of unconscionability.

3635911.1

## COUNTERCLAIM

Counterclaim Plaintiffs GS Group and Goldman, Sachs & Co. ("GSCo."), by and through their undersigned attorneys, allege, on knowledge as to themselves and on information and belief as to all other matters, as follows:

1.      Counterclaim Defendant Aleynikov is a former employee of GSCo., an affiliate of GS Group, the publicly-held parent of the Goldman Sachs organization (the "firm" or "Goldman Sachs").  Aleynikov resigned from GSCo. to take a position with a competitor and, on his way out the door, stole proprietary source code and technology that GSCo. had spent countless man-hours and millions of dollars to develop.  As detailed below, Aleynikov surreptitiously accessed that source code on GSCo.'s computer system, unlawfully uploaded it to a file server outside the United States, and then unsuccessfully attempted to erase the evidence of his misconduct.

2.      On July 3, 2009, Aleynikov was arrested by the FBI and acknowledged, in a signed statement, that he had copied and encrypted files from the firm's server, uploaded those files to another server, and then deleted the files showing what he had done.

3.      As a direct, proximate, and foreseeable result of Aleynikov's actions, GSCo. has suffered substantial harm and incurred millions of dollars of expense. Accordingly, GS Group, to which GSCo. has assigned its own claims, seeks the

3635911.1

damages that it and GSCo. have suffered as a result of Aleynikov's wrongful conduct, and to offset any monetary award granted to Aleynikov.

4.      In addition, Aleynikov, through his counsel, has stated that he will sue GSCo. for "malicious prosecution" in an action to be filed before the end of 2012. Accordingly, GSCo. joins as a counterclaim plaintiff, and GS Group and GSCo. seek a declaration from this Court that they have no liability arising from or relating to Aleynikov's theft, its actions in reporting that theft to governmental authorities, or the decision of such authorities to arrest and prosecute Aleynikov for his misconduct.

## THE PARTIES

5.      Counterclaim Plaintiff GS Group is a corporation organized under the laws of Delaware, with its principal offices located at 200 West Street, New York, New York 10282.  GS Group is the parent corporation of the Goldman Sachs organization, which includes GSCo.

6.      Counterclaim Plaintiff GSCo. is a limited partnership organized under the laws of New York, with its principal offices located at 200 West Street, New York, New York 10282.

7.      Counterclaim Defendant Sergey Aleynikov, on information and belief, is a resident of the State of New Jersey.  Aleynikov was previously employed by GSCo. as a programmer.

3635911.1

<u>JURISDICTION AND VENUE</u>

8.      This Court has personal jurisdiction over Aleynikov because

Aleynikov filed his Verified Complaint in this Court, and because, on information

and belief, Aleynikov is a resident of the State of New Jersey.

9.      This Court has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. § 1367.

10.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because,

on information and belief, Aleynikov resides in this judicial district.

<u>FACTUAL BACKGROUND</u>

11.      GS Group is a global investment banking, securities, and investment

management firm.

12.      GS Group, and its affiliate GSCo., have invested heavily in the

development of proprietary source code and technology.  Among other things,

Goldman Sachs has invested millions of dollars and tens of thousands of man-

hours developing the proprietary source code and technology used in the market

making business, in which the high frequency trading style can be used, and other

related information and technology at issue in this case (the "Stolen

Technology"[1]).

13.      This type of trading involves, among other components, the use of a

---

[1] This included technology acquired during the acquisition of Hull Trading Company, which
Goldman Sachs purchased in 1999 for $500 million.

3635911.1

complex and sophisticated computer program to enable the collection and analysis of market information and trading decision-making at a sufficiently rapid rate.

14.     The nature of this trading business is such that small developments as to the speed and accuracy with which the system gathers and processes real-time market information can provide a significant competitive advantage.

15.     The Stolen Technology gives the firm a market advantage in terms of the speed and quality of its analysis and consequent decision-making in the trading business area that employs such trading strategies.

16.     The Stolen Technology is a trade secret and its dissemination to Goldman Sachs's competition would cause Goldman Sachs substantial irreparable harm.

17.     To protect the value produced by its investment in the Stolen Technology, the firm carefully safeguards information about it.  Each GSCo. employee must agree to an Employee Agreement Regarding Non-Disclosure of Information Relating to Goldman Sachs and Protection of Confidential and Proprietary Information ("confidentiality agreement") as a condition of employment.  The confidentiality agreement covers all "Confidential and Proprietary Information and Materials," which it defines as all "non-public information and materials, including but not limited to information and materials describing or relating to the business and financial affairs, personnel matters,

- 14 -

operating procedures, organizational responsibilities, marketing matters, and

policies or procedures of Goldman Sachs." It provides that all such materials

"shall be used only as authorized and only for the purposes intended by Goldman

Sachs." It further provides:

> You will hold all Confidential and Proprietary
> Information and Materials in strict confidence and,
> except for the above authorized uses, will not, nor will
> you permit any agent to give, disclose, copy, reproduce,
> sell, assign, license, market or transfer Confidential and
> Proprietary Information and Materials to any person,
> firm or corporation, including any partner or employee
> of Goldman Sachs who does not have a need to know or
> see Confidential and Proprietary Information and
> Materials.

18.    The confidentiality agreement also provides that:

> The obligations created by this Agreement shall survive
> the termination of your employment. You acknowledge
> that any violation, breach or other failure on your part to
> comply with this Agreement could materially and
> irreparably injure Goldman Sachs and its business in a
> manner inadequately compensable in damages, and that
> Goldman Sachs may seek and obtain injunctive relief
> against the breach or threatened breach of this
> Agreement in addition to any other legal remedies that
> may be available.

19.    In addition to the restrictions it imposes on disclosure of proprietary

information to entities outside of the firm, that agreement also forbids disclosure of

confidential or proprietary information to "any partner or employee of Goldman

Sachs who does not have a need to know or see" that information.

- 15 -

20.     Aleynikov agreed to such a confidentiality undertaking as a condition of his employment at GSCo.

21.     Beyond the contractual limitations on dissemination of its confidential information, the firm has, in fact, restricted access to the Stolen Technology to those employees whose duties relate to its design, construction, or maintenance. The firm has also implemented a variety of technical safeguards intended to identify or block attempts to transport such code outside its firewall.

22.     From May 2007 until June 5, 2009, Aleynikov was employed by GSCo. as a programmer.  Aleynikov was one of many thousands of employees with the functional title of "vice president," or its equivalent overseas, and was one of approximately two thousand such employees in Goldman Sachs' Securities Division.  Aleynikov's work involved computer programming to support one of the firm's business areas that used the computer source code and technology that he stole from the firm. He had no managerial or supervisory responsibilities.

23.     On or about May 1, 2009, Aleynikov gave notice to GSCo. of his intent to leave the firm, effective June 5, 2009.  He told other GSCo. employees that he intended to join an unidentified start-up firm that would compete with Goldman Sachs.

24.     At the time, this unidentified start-up firm did not have its own high-frequency trading platform, but hoped to create one.

25.     Aleynikov told other GSCo. employees that his compensation at his new employer would be triple his compensation at GSCo.

26.     Activity logs indicate that on June 1 and June 5, 2009, Aleynikov accessed the Stolen Technology, compressed and encrypted the files, and then uploaded approximately 30 megabytes of compressed and encrypted files to a website outside the United States and unaffiliated with GSCo. or the firm. Aleynikov's actions were not authorized by the firm; to the contrary, they were in violation of his obligations to safeguard the firm's proprietary information and technology.

27.     To enable himself to transmit the Stolen Technology outside the firm, Aleynikov created a program that allowed him to combine thousands of files of source code into two large computer files, which he then uploaded onto an outside server, downloaded to his home computer, and copied (in part) to other devices.

28.     He also purposefully circumvented the firm's technical safeguards so as to elude immediate detection (which would have resulted had he, for example, transmitted the files through email).

29.     He then attempted – with only limited success – to erase the traces of his conduct from GSCo.'s computer systems, including by deleting the recorded command (bash) history relating to his activities.

30.     In total, Aleynikov transferred 3,639 unique files which contained

3635911.1

algorithmic code, information on infrastructure components, and information on market connectivity.  He also uploaded information on third party vendors and evaluations of hardware and operating systems.

31.    On July 2, 2009, Aleynikov attended a meeting at the offices of the start-up firm.  He carried with him a flash drive and a laptop computer that each contained code he had uploaded from GSCo.'s computers.

32.    Aleynikov was arrested in New Jersey on July 3, 2009.  Aleynikov admitted to the FBI agents who arrested him that he uploaded files from Goldman Sachs to a code repository website he had selected because it was not blocked by the firm's security protocols.  Aleynikov further admitted that he ultimately copied the files he had uploaded to his home computer, laptop, and thumb drive, and that he had erased his bash history because he was concerned about violating the firm's security policies.

33.    On December 21, 2012, Aleynikov stated through his counsel that he intends to file a meritless "malicious prosecution" claim against the firm. for its alleged role in reporting his theft to the authorities and their subsequent decisions to arrest and prosecute him.  Accordingly, there is a present, ripe controversy that is justiciable in this Court.

## FIRST CAUSE OF ACTION

(Breach of Contract)

3635911.1

34.    GS Group repeats and realleges paragraphs 1 through 33 above as though fully set forth herein.

35.    The confidentiality agreement signed by Aleynikov constitutes a valid and binding contract between him and GSCo. that was supported by valid consideration.

36.    GSCo. has performed all of its obligations under that contract.

37.    Aleynikov breached that contract by misappropriating and disclosing the firm's proprietary information.

38.    Goldman Sachs has suffered damages, in an amount to be quantified at trial, as a direct, proximate, and foreseeable result of Aleynikov's breach of the confidentiality agreement.

## SECOND CAUSE OF ACTION

### (Misappropriation of Trade Secrets)

39.    GS Group repeats and realleges paragraphs 1 through 38 above as though fully set forth herein.

40.    The Stolen Technology comprises numerous trade secrets of the firm.

41.    Aleynikov misappropriated the firm's trade secrets in breach of agreements, confidences, and/or duties.

42.    Goldman Sachs has suffered damages, in an amount to be quantified at trial, as a direct, proximate, and foreseeable result of Aleynikov's

3635911.1

misappropriation of the firm's trade secrets.

## THIRD CAUSE OF ACTION

(Conversion)

43.     GS Group repeats and realleges paragraphs 1 through 42 above as though fully set forth herein.

44.     Aleynikov acted without authorization in preparing to copy and in copying the Stolen Technology on a GSCo. computer to a computer outside the United States.

45.     The Stolen Technology are the property of GSCo. and GS Group.

46.     Aleynikov exercised dominion, control, and the right of ownership over the files and data, in derogation and defiance of the superior possessory right of GS Group.

47.     Goldman Sachs has suffered damages, in an amount to be quantified at trial, as a direct, proximate, and foreseeable result of Aleynikov's conversion of its proprietary technology.

## FOURTH CAUSE OF ACTION

(For Declaratory Judgment pursuant to 28 U.S.C. §2201(a))

48.     GSCo. and GS Group repeat and reallege paragraphs 1 through 47 above as though fully set forth herein.

49.     Aleynikov's statement that he intends to sue the firm for "malicious

3635911.1

prosecution" makes clear that there is a present, ripe controversy between the parties.

50.     Aleynikov's threatened malicious prosecution claim would utterly lack merit.

51.     That threatened claim arises out of the same transaction or occurrence as, and will present common questions of law and fact with, Aleynikov's claims and the counterclaims and defenses stated in this action by GS Group.

52.     GS Group and GSCo. have no adequate remedy at law.

53.     GS Group and GSCo. seek a judgment declaring that they have no liability to Aleynikov arising out of or related to his theft of intellectual property from GSCo., the firm's reporting that theft to governmental officials, or their subsequent decisions to arrest and prosecute him.

## <u>RELIEF REQUESTED</u>

Based on the foregoing, GS Group and GSCo. respectfully request that the Court:

a.     Award GS Group damages as proven at trial, pre-judgment interest, and such costs and attorneys' fees as may be allowed by law;

b.     Offset any monetary award granted to Aleynikov;

c.     Declare that GS Group and GSCo. have no liability to Aleynikov arising out of or related to his theft from GSCo., its reporting that

3635911.1

theft to governmental officials, or their subsequent decisions to arrest

and prosecute him; and

c.      Grant GS Group and GSCo. such other relief as justice may require.


Dated:  December 21, 2012                    Respectfully submitted,

                                             /s/A. Ross Pearlson
                                             A. Ross Pearlson
                                             WOLFF & SAMSON PC
                                             One Boland Drive
                                             West Orange, NJ  07052
                                             (973) 325-1500

                                             Matthew W. Friedrich (admitted *pro hac
                                             vice*)
                                             Jonathan M. Shaw (admitted *pro hac
                                             vice*)
                                             BOIES, SCHILLER & FLEXNER LLP
                                             5301 Wisconsin Avenue N.W.
                                             Washington, D.C.  20015
                                             (202) 237-2727

                                             *Counsel for The Goldman Sachs Group,
                                             Inc. and Goldman, Sachs & Co.*

3635911.1