May 1, 2013

**VIA ECF**

Honorable Michael A. Hammer, U.S.M.J.
United States District Court
U.S. Post Office & Courthouse Building
Federal Square, Courtroom 8
Newark, NJ 07101

    Re:   *Aleynikov v. The Goldman Sachs Group, Inc.*
            Case No. 12 Civ. 5994 (KM/MAH)

Dear Judge Hammer:

    In accordance with the procedures set forth in your Honor's Orders dated December 21, 2012 [ECF No. 52], and April 24, 2013 [ECF No. 114], the parties write jointly to respectfully request the Court's assistance in resolving their dispute regarding Sergey Aleynikov's Notice of Deposition of Goldman Sachs[1] Pursuant to Federal Rule of Civil Procedure 30(b)(6).[2] Aleynikov served his Rule 30(b)(6) Notice on April 24, 2013. GS Group stated its intention to object to the deposition notice on April 28, 2013. The parties conducted a telephonic meet-and-confer on April 29, 2013, but were unable to resolve their dispute. This letter identifies the parties' respective positions regarding the propriety of the proposed Rule 30(b)(6) deposition.

**Aleynikov's Position**

    Aleynikov requires a 30(b)(6) deposition of Goldman Sachs because the defense witnesses deposed to date were unable to provide the company's definitive position on two issues critical to the Court's determination of the parties' dispute. Specifically, Aleynikov seeks the testimony of a Goldman Sachs representative capable of articulating the firm's position with respect to the following facts: (1) the definition of an "officer . . . of a Subsidiary of the Corporation," as that term is used in Section 6.4 of the Amended and Restated By-Laws of The Goldman Sachs Group, Inc.; and (2) the practice of Goldman Sachs regarding payment of legal fees and expenses of officers, directors and non-clerical employees of Subsidiaries who are made or threatened to be made a party to any action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of their position within Goldman Sachs.

    Based on the positions expressed during the parties' meet and confer, GS Group's objection to the proposed deposition is two-fold. First, GS Group asserts that Aleynikov's ability to take an additional deposition is foreclosed by your Honor's December 21st Order, which only

---

[1] The term Goldman Sachs refers collectively to The Goldman Sachs Group, Inc. ("GS Group") and Goldman, Sachs & Co. ("GSCo").

[2] Aleynikov's Rule 30(b)(6) Notice is attached hereto as Exhibit A.

Honorable Michael A. Hammer, U.S.M.J.
May 1, 2013 — Page 2

expressly authorized Aleynikov to take the depositions of Gregory K. Palm, Matthew E. Tropp and Adam Schlesinger. Second, GS Group contends that the witnesses deposed to date have already provided sufficient testimony on the proposed 30(b)(6) topics. Each of GS Group's objections is founded on an erroneous premise. A review of the parties' colloquy with your Honor leading to the December 21st Order demonstrates that Palm and Tropp were selected as witnesses because the Affidavits they submitted in support GS Group's motion for summary judgment suggested that they were knowledgeable on these critical topics. The deposition testimony of Palm and Tropp demonstrates that the witnesses could not articulate the company's position on these topics. Thus, a 30(b)(6) deposition of Goldman Sachs is necessary to accomplish the aims of the expedited discovery ordered by Judge McNulty.

As an initial matter, the topics posed in Aleynikov's 30(b)(6) notice go to the heart of the factual question that caused Judge McNulty to order expedited discovery. Judge McNulty held in his Order denying the parties' cross motions for Summary Judgment that "[t]his case turns primarily on one question: whether Mr. Aleynikov was an 'officer' of GSCo within the meaning of Section 6.4 of the GS Group By-laws." (Order date December 14, 2012 [ECF No. 44], at 6.) Judge McNulty went on to state:

> GS Group concedes that it has, in particular cases, chosen to indemnify persons who fell outside of its claimed definition of "officer." Indeed, GS Group states, the By-laws "were drafted so as to allow permissive (rather than mandatory) indemnification of a broader class of persons, including employees in general." . . . At this early stage, that concession could be viewed as favorable evidence for GS Group, but it could also be viewed as "spin"— an attempt to explain away past indemnity decisions that are inconsistent with GS Group's interpretation of the By-laws here. Again, I make no assumptions. I believe, however, that any finder of fact would want to test whether those decisions were purely discretionary, or whether they tend to suggest that Defendant has historically interpreted Section 6.4 more broadly. These facts, too, are entirely in Defendant's control, and there has been no discovery.

(Id. at 15-16.)

To support its motion for summary judgment, GS Group offered the Affidavits of its General Counsel, Gregory K. Palm, and the Associate General Counsel of Goldman, Sachs & Co. (GSCo), Matthew E. Tropp. In his Affidavit, Mr. Tropp stated that he was "responsible for helping to oversee the process by which officers are appointed within certain U.S. subsidiaries of GS Group." (Affidavit of Matthew E. Tropp [ECF No. 19], ¶ 5.) He went on to swear that he had "personal knowledge of the corporate structure of GS Group, and the process by which certain U.S. subsidiaries of GS Group, including GSCo., appoint officers" (Id.) Rather than "accepting the generalities in Mr. Tropp's affidavit," however, Judge McNulty suggested that Aleynikov should be permitted to test the facts underlying the affidavit. (Id. at 15.)

When the parties appeared before your Honor telephonically on December 21, 2012, to discuss the timing and scope of expedited discovery, we expressly discussed that a separate 30(b)(6) deposition would probably not be necessary if Messrs. Tropp and Palm could provide

the firm's definitive positions, as suggested by their Affidavits. See 12/21/12 Tr. at 27:10-14 (the Court described Matthew Tropp as "a partial direct fact witness, partial 30(b)(6)," although Aleynikov had not expressly identified him as such.); id. at 28:3-8 (Kevin Marino stated: "frankly, if Mr. Tropp is in a position to serve as a 30(b)(6), then that would be all I'd need, and I could do his personal knowledge and 30(b)(6) of him at one time.") Regrettably, the witnesses did not prove equal to the promise expressed in their respective affidavits.



Thus, Mr. Tropp and Mr. Palm themselves indicated that there were others within the organization who could best provide the company's definitive position on the topics at issue. To serve Judge McNulty's goal in ordering expedited discovery, we respectfully submit that your Honor should therefore order Goldman Sachs to produce a 30(b)(6) witness on these topics.

### GS Group's Position

Mr. Aleynikov has already taken depositions from three knowledgeable Goldman Sachs witnesses – including the firm's General Counsel – and elicited interrogatory responses, with respect to the "essential issue" identified by Judge McNulty for expedited discovery: "Was

Honorable Michael A. Hammer, U.S.M.J.
May 1, 2013 — Page 4

Aleynikov an 'officer' of GSCo, and therefore eligible for indemnification and advancement of legal fees?" *See* Dec. 14, 2012 Opinion (Doc. No. 44) at 2. Those witnesses, in the course of three full-day depositions, answered the hundreds of questions that Judge McNulty's Order permitted Mr. Aleynikov to ask, consuming over nine hundred pages of deposition transcripts. The firm likewise provided its categorical responses in the form of interrogatory answers. Mr. Aleynikov never complained at the time that the witnesses were uncooperative or lacked knowledge about the subject matters on which they were questioned, or that the responses were insufficient.

Now, apparently dissatisfied with the substance of their testimony, Mr. Aleynikov seeks duplicative deposition testimony in the form of a Rule 30(b)(6) deposition on the exact same topics that have already been covered at length in three prior depositions.[3] The Court should swiftly reject his request to take a fourth deposition during the expedited discovery period for three reasons.

First, the two topics on which Plaintiff seeks an additional deposition – Goldman Sachs' definition of an "officer," and its practices regarding the payment of legal fees – were thoroughly covered at length in prior depositions, in particular by Gregory Palm, the General Counsel of GS Group and a member of its Management Committee. When Mr. Palm was asked pointedly whom the firm considered an "officer" and why, his testimony on these topics included the following ample explanations outlining the firm's formal resolution approach to appointing officers and making clear why Mr. Aleynikov's generic title of "Vice President" shared with thousands of others did not qualify him as an officer of Goldman Sachs:

- "Q. Is there a formal process that distinguishes, clearly distinguishes officers of the Goldman Sachs – I beg your pardon, of Goldman Sachs & Co., from non-officers of Goldman Sachs & Co.?

    A. Is there a process? There's the resolutions we passed to designate our officers. That's the only process I'm aware of."

    *See* Palm Tr. at 214–15 (quoted excerpts attached hereto as Ex. B).[4]

---

[3] The topics identified in Plaintiff's 30(b)(6) deposition notice are "(1) the definition of an 'officer . . . of a Subsidiary of the Corporation,' as that term is used in Section 6.4 of the Amended and Restated By-Laws of The Goldman Sachs Group, Inc.; and (2) the practice of Goldman Sachs regarding payment of the legal fees and expenses of officers, directors and non-clerical employees of Subsidiaries who are made or threatened to be made a party to any action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of their position within Goldman Sachs." *See* Ex. A hereto at 2 (ellipsis in original) (emphasis removed).

[4] The deposition testimony cited herein, and the excerpts attached hereto, have all been designated as "confidential" by Defendant pursuant to the protective order in this action. The

- "Q. In the corporate world, you recognize that the title vice president is typically thought of as an officer's title, correct?

  A. I don't know how you define the corporate world. In the world of investment banking, it would not at all be thought of as an officer's title."

  *See id.* at 157–58.

- "Q. We don't need to quarrel about the usage of this particular paragraph or the diction or what have you, but, to me, when I read a sentence that says, in very broad and absolute terms, individuals holding the functional vice president title were never considered or intended to be officers for any purpose, that begs the question, in my mind, by whom?

  A. Okay. I think I just answered the by whom.

  Q. You said that this – so can I then understand this paragraph to be referring to your view that these individuals were not –

  A. No. I think it's the view of the firm, the view of the people who have been associated with this process. That would be the view.

  Q. Okay. That would be the view of Goldman Sachs Group?

  A. Yes. . . ."

  *See id.* at 287–88.

Mr. Schlesinger's testimony that vice presidents such as Mr. Aleynikov are not officers was consistent with Mr. Palm's:

- "Q. Would you have any way of knowing who was an officer and who wasn't?

  A. I would say that 30 percent of the company is vice presidents. It's hard for me to imagine 30 percent of the company are officers of the firm."

  *See* Schlesinger Tr. at 223 (quoted excerpts attached hereto as Ex. C).

- "Q. . . . So does the fact that no other employees of Goldman Sachs reported to Mr. Aleynikov mean that he was not an officer, in your mind?

---

parties therefore have not filed this letter via ECF, and Defendant requests that the Court treat this letter as confidential.

Honorable Michael A. Hammer, U.S.M.J.
May 1, 2013 — Page 6

. . .

> A. In my mind, as I've stated, vice presidents in the financial industry are not officers of their companies – . . . . Vice presidents are not officers at GS & Co. – . . . . I've never considered myself an officer of Goldman Sachs –
>
> Q. Great.
>
> A. – as a vice president nor as a managing director. I base this on 20 years in the financial industry at three different institutions as well as almost 15 years at Goldman Sachs."

*See id.* at 236–38.

- "Q. Do you have any idea how anyone would know whether he or she was or was not an officer of Goldman Sachs, any Goldman Sachs entity? Can you be helpful to us at all on that?

  A. Based on my general knowledge being in Wall Street for 20 years and Goldman Sachs for 15, vice presidents hired at GS & Co. to be midlevel programmers are not officers of the firm."

*See id.* at 246.

Likewise, Mr. Tropp's testimony showed that the question of whether someone is a GSCo officer turns on whether he or she was appointed through the formal resolution process that Mr. Tropp administers:

> "Q. Can you read [a specified portion of Mr. Palm's affidavit] into the record, please?
>
> "A. 'GS Group and GS Co. appoint their officers by means of formal resolution processes. Both entities have a discrete number of officers who occupy the most senior managerial positions of each company.'
>
> Q. Do you agree with that statement?
>
> A. I agree that, with respect to GS & Co., it appoints its officers by the resolution process we have discussed. I believe GS Group appoints its officers in the way the by-laws suggest the board appoint its officers. And I believe they both have a discrete number of officers."

*See* Tropp. Tr. at 211 (quoted excerpts attached hereto as Ex. D).

Honorable Michael A. Hammer, U.S.M.J.
May 1, 2013 — Page 7

- "Q. What you basically know, Mr. Tropp, is that there is a formal process for appointing some officers of Goldman Sachs & Co., correct?

  A. I know there's a process for appointing all officers of Goldman, Sachs & Co."

  *See id.* at 214–15.

- "Q. So, here I have a set of by-laws that, in one provision, use the word 'officer' to describe vice president. Elsewhere in those same by-laws, I have the word 'officer' defined, in part, by using the word 'officer.' Can you understand why someone, without formal legal training, might think that a vice president was an officer?

  . . .

  A. I can't speculate what somebody might read into this. I think the way it reads is not that somebody who's a vice president is an officer, but somebody who's appointed through a process, which is the board process for the corporation, and is appointed by the board as an officer, is an officer of the corporation. And so I think, when one reads through that, one reads it through to say an officer of the entity appointed by the process that that entity uses to appoint officers."

  *See id.* at 230–31.

During the meet-and-confer discussions related to the dispute now before the Court, Mr. Aleynikov's attorneys contended that they need more testimony on Goldman Sachs' "customary" or "normal" practices regarding the payment of legal fees, and pointed Defendant's counsel to three pages in Mr. Palm's deposition transcript – 12, 13 and 26 – ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[5] Contrary to Plaintiff's contention, Mr. Palm's testimony made clear ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮:

---

[5] The responses cited by Plaintiff during the meet-and-confer on the instant dispute do not support Plaintiff's position. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.,* Palm Tr. at 27 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.").

- "█████████████████████████
█████████████████████████"

See Palm Tr. at 87.

- "█████████████████████████
█████████████████████████"

See id. at 88–89.

- "█████████████████████████
█████████████████████████
█████████████████████████"

See id. at 349–50.

    This testimony, moreover, supplements the corporate position already provided in the form of interrogatory responses. For example, Defendant's response to Aleynikov's initial Interrogatory No. 6 (attached hereto as Ex. E) stated █████████████████████████████████████████████████████████████████████████████████████████████████████" See Ex. E hereto at 16–17. Defendant also provided specific responses to each of the other nine interrogatories propounded by Mr. Aleynikov. See id. Following the Court's February 25 Order (see Doc. No. 85), Defendant's response to Aleynikov's amended Interrogatory No. 6 further clarified that ███████



See Ex. F hereto at Attachment B.

Having already received these detailed written discovery responses, and having already asked the witnesses of his choice – including the firm's General Counsel – all conceivably relevant questions and procured their answers, Mr. Aleynikov cannot justify his belated request to depose a duplicative "corporate representative." Mr. Aleynikov clearly had a full and fair opportunity to cover the proposed 30(b)(6) topics in his questioning of the three prior Goldman Sachs deponents. Indeed, those depositions took place several weeks after Goldman Sachs provided Mr. Aleynikov with responses to each of his ten interrogatories, every one of which dealt with either the definition of "officers" or Goldman Sachs' practices in paying legal fees. The fact that this prior deposition testimony and written discovery responses disprove Mr. Aleynikov's legal theories does not entitle him to more depositions.

Second, as part of the meet-and-confer process that preceded this letter, Goldman Sachs offered to stipulate that Goldman Sachs will treat the testimony of its prior deponents on those topics as testimony of corporate representatives. Mr. Aleynikov rejected that offer. He might not like the prior testimony on these topics because it undermines his claims, but that does not entitle him to yet another bite at the apple. A decision from the District of Delaware is on point here. In *Novartis Pharmaceuticals Corp. v. Abbott Laboratories*, 203 F.R.D. 159 (D. Del. 2001), the party seeking a 30(b)(6) deposition had already "obtained over eighty pages of testimony" on the relevant topic, and the court ultimately disallowed the 30(b)(6) deposition on the ground that "another deposition of [the witness] would be cumulative to the testimony already procured." *Id.* at 162–63. The Court held that a party's "offer to be bound" by the prior deposition testimony of one of its witnesses on a particular issue "satisfies [its] obligation under Rule 30(b)(6) to produce a witness regarding" that issue. *Id.* at 162–63. The court also refused to compel the witness to be deposed again in a non-30(b)(6) capacity after finding that the seeking party "had an ample opportunity to examine" the witness, who "did not refuse to answer any relevant questions." *Id.* at 166 (noting that "the appropriate time … to pursue this avenue of discovery was at [the

Honorable Michael A. Hammer, U.S.M.J.
May 1, 2013 — Page 10

witness's] deposition").[6] Indeed, the firm chose these individuals as affiants because of their knowledge about the relevant topics, and so would ultimately simply designate the same individuals on the same topics and produce the same testimony.

Third, the proposed 30(b)(6) deposition is in all events beyond the scope of the Court's December 21, 2012 order (Doc. No. 52), which granted leave to Mr. Aleynikov as part of expedited discovery to "take the depositions of Gregory K. Palm, Matthew E. Tropp, and Adam Schlesinger," and no one else. Mr. Aleynikov never sought reconsideration of the Court's ruling on which depositions he could take during the expedited discovery period, and never appealed that ruling to Judge McNulty. His request for an additional deposition is untimely and "'may be denied for that reason alone.'" *Vanderhoof-Forschner v. Vanderhoof*, No. 11-CV-1309, 2012 WL 2839337, at *5 n.4 (D.N.J. July 9, 2012) (Hammer, J.) (quoting *Oriakhi v. Bureau of Prisons*, No. 07-CV264, 2009 WL 1874199, at *3 (D.N.J. June 29, 2009)). Further testimony is excessive for that reason alone, and will prolong the "expedited" phase and thereby delay the plenary discovery to which Goldman Sachs is entitled.[7]

For the reasons set forth above, Goldman Sachs respectfully requests that the Court sustain its objections to Mr. Aleynikov's 30(b)(6) deposition notice and enter an order denying Mr. Aleynikov's request to take such a deposition during the expedited discovery period.

\* \* \*

Thank you for your attention to this matter.

---

[6] *See also, e.g., Johnson v. Geico Cas. Co.*, 269 F.R.D. 406, 415–16 (D. Del. 2010) (holding that a 30(b)(6) notice on a particular issue was "duplicative and unduly burdensome" given that the noticed party had "produced a substantial number of documents concerning" the issue and that the party seeking the deposition had "posed questions of this nature to a previous 30(b)(6) deponent"); *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 234–36 (E.D. Pa. 2008) (denying what would have been "the third deposition" of a corporate party out of concern that "serial depositions of a single corporation may be [] costly and burdensome" and "provides the opposing party with an unfair strategic advantage, offering it multiple bites at the apple"); *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97CIV4978, 2002 WL 1041356, at *3 (S.D.N.Y. May 23, 2002) ("A 30(b)(6) deposition may not be justified where, assuming the witness is properly prepared, the entity establishes that the witness's testimony as a 30(b)(6) witness would be identical to his testimony as an individual and the 30(b)(6) is limited, or substantially limited, to topics covered in the deposition taken in the witness's individual capacity. In such a situation, there appears to be no obstacle to the entity's complying with its obligations under Rule 30(b)(6) by adopting the witness's testimony in his individual capacity.").

[7] In the event that the Court concludes that Mr. Aleynikov is entitled to any additional information during the expedited discovery period (which he is not), it should be done through a narrowly targeted interrogatory, not an additional deposition.

Honorable Michael A. Hammer, U.S.M.J.
May 1, 2013 — Page 11

                    Respectfully yours,

                    Kevin H. Marino
                    John D. Tortorella

                    A. Ross Pearlson
                    Christopher E. Duffy