UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SERGEY ALEYNIKOV,<br><br>Plaintiff,<br><br>v.<br><br>THE GOLDMAN SACHS GROUP, INC.,<br><br>Defendant. | Civ. No. 12-5994 (KM)<br><br>**OPINION AND ORDER** |

This matter comes before the Court on a letter application, dated October 28, 2013, of Defendant, The Goldman Sachs Group, Inc. ("GS Group") and Goldman, Sachs & Co. ("GSCo") (together, "Goldman"), through their counsel, Wolff & Samson PC (A. Ross Pearlson, Esq., appearing), for a temporary stay. (Docket No. 182). Plaintiff, Sergey Aleynikov ("Aleynikov"), through his counsel, Marino Tortorella & Boyle, P.C. (Kevin H. Marino, Esq., appearing) has submitted a letter in opposition to Goldman's application. (Docket No. 184). Both sides have today filed additional letters in relation to the application (Docket Nos. 186, 188). I have considered these four submissions and render decision as follows.

On October 16, 2013, I filed an opinion and order granting the application of Aleynikov for provisional advancement of legal fees and expenses in a state criminal proceeding. It appears that Goldman, without first seeking a stay from this Court as required by Fed. R. App. P. 8, has filed a motion for stay pending appeal in the Court of Appeals. Goldman has virtually simultaneously sent this Court a letter requesting a "temporary stay." Goldman seeks to preserve the status quo—the status quo being that Goldman has made no payment as yet pursuant to my order—while the Court of Appeals considers Goldman's motion for a stay pending appeal.

Before proceeding, I advise the parties that any future request for relief from this Court should be in the form of a motion, not a letter-writing

campaign. Further, Goldman would have done well to observe the procedures of Fed. R. App. P. 8(a) and file its motion here in the first instance.

Goldman has skipped the preliminary steps. It has already filed its motion for a stay in the Court of Appeals. Apparently after consultation with the clerk of that Court, it filed its letter application for a "temporary stay" in this Court. Its appellate motion states, at p. 5 n.2: "To ensure compliance with FRAP 8, Goldman Sachs has written that district court seeking a stay pending this Court's review of the instant Motion." Whatever this "temporary stay" motion is, it is not compliance with the prior-motion requirement of Rule 8(a).

I leave it to the Court of Appeals, however, to decide whether the prerequisites for a stay have been met—for example, whether filing a motion in this Court would have been "impracticable." Fed. R. App. P. 8(a)(2)(A). In the practical spirit of the Federal Rules, however, I will state for the benefit of the Court of Appeals—without the benefit of briefing or a meaningful adversarial presentation—that this case does not appear to me to be a good candidate for a stay pending appeal.

Goldman cites case law from this District, cited below, in which a short stay has been granted solely for the purpose of affording a party a meaningful opportunity to seek a stay from the Court of Appeals. In all cases, however, that party, as required, moved in the district court for a stay pending appeal. The court considered a temporary stay only after thoroughly analyzing the injunctive factors governing a stay pending appeal. I therefore discuss those injunctive factors because they are logically prior to, and relevant to, the issue of a "temporary stay."

### Injunction Analysis

A stay pending appeal is governed by the familiar four-factor test for injunctive relief: briefly, (1) likelihood of success on the merits, (2) irreparable harm, (3) the balance of harms, and (4) the public interest. *E.g., Conestoga Wood Specialties Corp. v. Sec'y of the HHS*, 2013 U.S. App. LEXIS 2706 (3d Cir. Feb. 7, 2013).

*The Merits.* I assume familiarity with my opinion of October 16, 2013, which was entered after due deliberation and discovery directed to the issue. It turned on issues of Delaware law, which are reasonably well-settled. It also turned, however, on wording in Goldman's By-Laws which has not been

authoritatively construed by a court. For an LLC, the By-Laws defined an "officer" as, among other things, "an officer," presenting the Court with an interpretive issue. I analyzed the parol evidence, but even in Goldman's account, that evidence dealt primarily with discretionary acts, and therefore was at best neutral as to the meaning of the By-Law at issue.

I found that the remedy of advancement, strongly supported by statutory policy, was not so much a matter of federal procedure, as it was embedded in the substantive law. I applied the doctrine of *contra proferentem*, which has some quirks in Delaware. One of these is that, as to corporate bylaws, and as to the issue of advancement in particular, the court must—generally on a paper record—resolve doubtful cases in favor of the employee. That said, there is room for disagreement. But any difficulties were largely created by Goldman's carelessness in the manner in which it drafted its By-Laws, as well as its liberal conferral of the title of vice president, which it now claims to be an empty title. A vice president is generally considered an "officer," the word in the By-Laws that I was called on to construe. At least, under Delaware law, I believe that Aleynikov was entitled to assume that when entering into the employment relationship.

The other aspect of likelihood of success—the appealability of the order—I leave primarily to the Court of Appeals, which must determine its own jurisdiction. *See generally* 28 U.S.C. § 1291 (appeal of final decisions); 28 U.S.C. § 12902 (appeal of injunctions). Certainly the order is not final, in the sense of disposing of all claims as to all parties. It is also not final because Aleynikov, if he does not prevail in the underlying state criminal case, is required to pay back any funds advanced. (The obligation is not secured, but that is by design, under the terms of Goldman's By-Laws.) Under one scenario, that repayment obligation might arise while this action is pending, and it might even be the case that indemnification funds (stemming from an earlier federal case, an issue that remains to be determined) would be available. We simply do not know. The order is one for payment of money, but Goldman may argue that it is nevertheless injunctive in nature. Again, the Court of Appeals is best situated to make that determination.

*Irreparable Harm.* Goldman argues that, even during the pendency of its motion for a stay in the Court of Appeals, it is exposed to irreparable harm because it is required to advance fees and expenses to a party who will not be able to repay them. Ordinarily, insolvency is not regarded as irreparable harm for these purposes. Goldman cites Court of Appeals cases from the 1990's

suggesting an exception to that principle. *See Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994); *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 205-06 (3d Cir. 1990). I have previously held, however, and still believe, that those authorities are doubtful in light of the subsequent case of *Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) (concern for party's solvency not a basis for injunctive relief). *See Black Mtn. Equities v. Pacific Gold Corp.*, 2012 U.S. Dist. LEXIS 169295, at *34 (D.N.J. Nov. 27, 2012). At any rate, *Grupo Mexicano* dictates that they be read narrowly in light of their facts.

Here, Aleynikov's risk of insolvency was created by the legal representation in the criminal case itself—the very thing the advancement obligation is intended to address. The risk of insolvency could have been addressed by Goldman in its By-Laws, but the By-Laws, drafted by Goldman, require only an unsecured "undertaking" to pay back advanced funds. Compare *Hoxworth*, where the defendant was secreting or dissipating assets.

*Balance of Harms.* The harm to Goldman is addressed above. The harm to Aleynikov is the inability to pay counsel in an ongoing criminal prosecution. Goldman points to statements by counsel that they do not propose to abandon their representation of Aleynikov. In Goldman's view, there is no risk of serious harm because the representation may continue on an unpaid basis. The fact remains that counsel are billing for their services, as they have a right to do, that Aleynikov is out the money, and that counsel cannot be required to represent him for free. The harm on the other side is that Goldman would be out the money. I do not find that the financial balance of harms tips either way.

The need for advancement of fees, however, is weighty. Indeed, this may be the rare case where even a stay, fully secured by a bond, is impermissible. No one doubts that Goldman is financially able to pay any conceivable judgment in this case. But the advancement remedy is distinct from that of indemnification. Advancement, by its substantive nature, applies *now*, to permit the defense to be funded *now*, when the need is acute. Indemnification, by contrast, is a claim for damages based on a representation already concluded. To stay advancement is to destroy its utility. If advancement were stayable upon the posting of a bond, it would be nearly meaningless; a party, rather than seeking a hollow victory on advancement, might as well await the outcome and sue for indemnification.

*Public policy.* As discussed in my opinion of October 16, 2013, Delaware law embodies a strong public policy in favor of indemnification, and in favor of advancement, even in a doubtful case.

### *Injunction Analysis Applied to Temporary Stay.*

As stated above, the "temporary stay" cases cited by Goldman all incorporated an analysis of the injunctive factors governing a full stay pending appeal. The district court denied that relief in whole or in part, after a full analysis of those factors. Cognizant of the losing party's right to then seek a stay in the Court of Appeals, the court then granted a stay (in the range of 10-14 days) to permit the party to file such an appellate motion. It was in that procedural posture—having already litigated the propriety of a stay pending appeal in the district court—that the party obtained the more limited relief of a "temporary stay" to permit a similar filing in the Court of Appeals. *See AstraZeneca LP v. Breath Ltd.,* Civ. No. 08-1512, 2013 WL 1385223 (D.N.J. April 3, 2013); *Wells Fargo Bank, N.A. v. CCC Atlantic, LLC,* Civ. No. 12-521, 2013 WL 595625 (D.N.J. Feb. 15, 2013); *Eli Lilly and Co. v. Actavis Elizabeth LLC,* Civ. No. 07-3770, Docket No. 674 (D.N.J. Aug. 18, 2010).

That said, the injunctive factors apply differently to the far less drastic relief of a temporary stay. The demands of orderly appellate procedure have more weight when the relief requested is limited. I note that two of the three cited cases involved the launch of a generic drug, a massive undertaking that the courts declined to enjoin pending appeal. (The third, *Wells Fargo,* involved the appointment of a receiver in a commercial foreclosure.) Nevertheless, each court granted a temporary stay to permit the filing of a stay motion in the Court of Appeals. *See AstraZeneca* ("limited" stay of unspecified length to permit a "meaningful opportunity to seek the same relief from the Federal Circuit"); *Wells Fargo* (temporary stay for 10 days "to allow Defendant an opportunity to file a stay application with the Court of Appeals"); *Eli Lilly* (stay of 14 days "for the purpose of permitting Lilly to seek injunctive relief with the Federal Circuit"). By analogy to a TRO, such a temporary stay, for some period of days, may be entered to enhance orderly appellate review.

Goldman, of course has jumped the gun. It does not need a temporary stay to permit it to file a motion in the Court of Appeals; it has already filed such a motion. Evidently it is experiencing some lag time attributable to filing delays and the entry of a briefing schedule (expedited consideration has

seemingly been requested). I nevertheless believe that orderly procedures of review would be served by the entry of a very brief temporary stay.

**THEREFORE,** in consideration of the foregoing,

**IT IS** this 29th day of October, 2013,

**ORDERED**, that Goldman's request for a temporary stay of this Court's Order of October 16, 2013, is **GRANTED** for a period of 7 calendar days only, to the extent that payment need not be made by Goldman in that period. The parties shall, however, continue to participate in and cooperate with such procedures as the Magistrate Judge has instituted for implementing that Order. Any further stay should be sought from the Court of Appeals, where Goldman's motion for a stay should soon be pending.

_____
**KEVIN MCNULTY**
**United States District Judge**