# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SERGEY ALEYNIKOV,<br><br>Plaintiff,<br><br>v.<br><br>THE GOLDMAN SACHS GROUP, INC.,<br><br>Defendant. | Civ. No. 12-5994 (KM)<br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

Before the Court is a Motion to Dismiss Counterclaims filed by Plaintiff-Counterclaim Defendant Sergey Aleynikov. Docket No. 62 ("MTD Counterclaim") The Counterclaims in question were brought by the Defendant, Goldman Sachs Group, Inc. ("GS Group"), as well as Goldman, Sachs & Co. ("GSCo").[1]

On December 21, 2012, GS Group, joined by GSCo, filed four Counterclaims against Aleynikov based on Aleynikov's alleged theft of Goldman's valuable computer code. Docket No. 51 ("Counterclaims"). GS Group individually brings three state law claims as assignee of GSCo, seeking damages for breach of contract (Count 1), misappropriation of trade secrets (Count 2), and conversion (Count 3). GSCo joins GS Group as Counterclaim Plaintiff in seekinga declaratory judgment (Count 4) that Goldman would have no liability to Aleynikov for malicious prosecution based on its role in reporting the theft and its cooperation with the subsequent arrest and prosecution of Aleynikov. The facts underlying the Counterclaims are substantially the same as those underlying the criminal charges for which Aleynikov's complaint seeks advancement and indemnification of legal fees and expenses.

---

[1] Where appropriate, I will refer to these two entities collectively as "Goldman" or as the Counterclaimants.

1

Aleynikov has moved to dismiss these Counterclaims for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). He argues that: (1) Counts 1, 2, and 3, all state-law tort claims, are barred by the relevant New York statute of limitations; (2) each of those three Counts fails to state a claim; (3) GS Group cannot bring those three claims as assignee of GSCo; (4) declaratory relief (Count 4) is not available to prospectively establish nonliability for the tort of malicious prosecution; (5) GSCo is not properly joined as a party for purposes of the Counterclaims; and (6) this Court should not exercise supplemental jurisdiction over state-law Counts.

For the reasons set forth below, Aleynikov's Motion to Dismiss Goldman's Counterclaims is denied.

## I. BACKGROUND

### A. Factual Background

Sergey Aleynikov is a citizen and resident of New Jersey. He was employed by GSCo from May 7, 2007 through June 30, 2009. He worked as part of a team of computer programmers responsible for developing source code relating to GSCo's high frequency trading system. This proprietary code, alleged to be a trade secret, enhances the quality of the firm's analysis and decision-making in the trading business. Counterclaims at ¶¶ 13, 15–16.

GSCo is a "broker-dealer" limited liability partnership organized under the laws of New York State. It is a non-corporate subsidiary of GS Group, the Goldman Sachs parent company, which is incorporated in the State of Delaware. The sole general partner of GSCo is The Goldman, Sachs & Co. L.L.C., a Delaware limited liability company. The sole limited partner of GSCo is GS Group. Both GSCo and GS Group are therefore citizens of states other than New Jersey.[2]

---

[2] In the Counterclaim, Goldman alleges that this Court has jurisdiction over the subject matter of these Counterclaims pursuant to 12 U.S.C. Section 1367, which governs supplemental jurisdiction. Counterclaims at 13, ¶ 9. Aleynikov contends that this Court should not exercise supplemental jurisdiction over the counterclaims because the state law claims are not so related to his claim for indemnification and advancement as to "form part of the same controversy." *See* 28 U.S.C. § 1367. Goldman, however, alleges diversity jurisdiction in its Opposition Brief. Opposition Brief at 39 ("[T]he allegations in the counterclaim establish both that the parties are completely diverse and that the amount in controversy requirement has been more than met."). Grounds for diversity jurisdiction pursuant to 28 U.S.C. Section 1332

In April 2009, Aleynikov accepted an employment offer from Teza Technologies, a start-up company based in Chicago. Before leaving GSCo in June 2009, Aleynikov allegedly copied and transmitted to his home computer and other devices, via a server in Germany, hundreds of thousands of lines of confidential source code. About a month later, Aleynikov flew to Teva's offices carrying a laptop and flash drive that allegedly contained the stolen source code. Immediately upon his return, he was arrested by the FBI at Newark Liberty International Airport and charged federally in the Southern District of New York (the "Federal Case").

After an eight day jury trial in the United States District Court for the Southern District of New York, Mr. Aleynikov was convicted of (1) theft of trade secrets in violation of the Electronic Espionage Act ("EEA") (18 U.S.C. § 1832(a)(2) and (4)), and (2) transportation of stolen property in interstate commerce in violation of the National Stolen Property Act ("NSPA") (18 U.S.C. § 2314). Docket No. 1 ("Compl.") at ¶¶ 20-21; see also *United States v. Aleynikov*, 737 F. Supp. 2d 173 (S.D.N.Y. 2010). On March 18, 2011, that federal court sentenced Aleynikov to 97 months' imprisonment. Compl. at ¶ 22. On direct appeal, the United States Court of Appeals for the Second Circuit reversed the district court judgment, reasoning that, although Aleynikov had breached his confidentiality obligations to Goldman, his conduct did not fall within the scope of the charged federal offenses.[3] On remand, a judgment of acquittal on both counts was entered on June 5, 2012. Compl., Ex. B.

---

may be extracted from the face of the Counterclaims. There is complete diversity of citizenship between the parties: GS Group is a Delaware corporation with its principal place of business in New York, GSCo is a New York limited partnership with its principal place of business in New York, and Aleynikov is a resident of New Jersey. *Id.* at 12, ¶¶ 5-7. Moreover, Goldman claims an amount of damages well in excess of $75,000. *Id.* at ¶ 3 (alleging that Aleynikov's actions have caused Goldman to suffer "substantial harm" and incur "millions of dollars of expense"). The state-law Counterclaims, therefore, would properly invoke this Court's jurisdiction under 28 U.S.C. § 1332.

In any event, as the Counterclaims are sufficiently related to Aleynikov's claim to form part of the same case for purposes of supplemental jurisdiction. Aleynikov also requests that this Court decline supplemental jurisdiction over the counterclaims under the "exceptional circumstances" prong of Section 1367. *See* 28 U.S.C. § 167(c)(4). I would find no such circumstances here, even if diversity did not make the point moot.

[3] The Court of Appeals held that (a) intangible property such as source code does not constitute stolen "goods," "wares" or "merchandise" under the NSPA, and (b) the government had failed to establish that GSCo's high frequency trading system was

On August 2, 2012, Aleynikov was rearrested in New Jersey. He was indicted by a Manhattan Grand Jury for two offenses under New York State law based on the same alleged theft of computer code that had been charged federally. (People v. Aleynikov, Indictment No. 4447/12) (the "State Case"). The State Case is currently pending. Compl. at 5, 8.

## B. Procedural Background

On September 25, 2012, Aleynikov filed this action, which seeks the following relief:

> (1) indemnification for legal costs and fees arising from his successful defense of the Federal Case;
>
> (2) advancement of legal costs and fees for his defense of the State Case, which was filed after the dismissal of the Federal Case and arose from the same factual allegations; and
>
> (3) advancement of attorneys' fees and expenses incurred in this civil action seeking indemnification and advancement ("fees on fees").

Immediately upon filing his complaint here, Aleynikov sought a preliminary injunction and moved for summary judgment. *See* Motion for Summary Judgment by Sergey Aleynikov, Sep. 25, 2012, Docket No. 2, and Order to Show Cause for a Preliminary Injunction, Sep. 25, 2012, Docket No. 4. GS Group moved to dismiss Aleynikov's Complaint, opposed his motions, and cross-moved for summary judgment. *See* Def.'s Mem. in Resp. to Order to Show Cause and Opp. to Pl.'s Mot. Summ. J. and in Support of Def.'s Mot. to Dismiss or for Summ. J., Oct. 12, 2012, Docket No. 22. On December 14, 2012, I denied Aleynikov's petition for a preliminary injunction and denied both parties' dispositive motions. *See* Opinion of Dec. 14, 2012, Docket No. 44, at 27–28.

Shortly thereafter, on December 21, 2012, GS Group answered Aleynikov's Complaint. That answer also contained four Counterclaims, asserted by both GS Group and GSCo,[4] based on Aleynikov's alleged theft of

---

intended for interstate commerce, as required by the EEA. *See United States v. Aleynikov*, 676 F. 3d 71 (2d Cir. 2012).

[4] As noted above at page 1, GS Group brings Counts 1–3 as assignee of GSCo, while GSCo joins GS Group in raising Count 4, the claim for declaratory relief. Counterclaims at 18–21.

4

Goldman's computer code. MTD Counterclaim. Months of discovery and discovery disputes ensued.

On July 24, 2013, Aleynikov filed a renewed Motion for Summary Judgment. *See* Motion for Summary Judgment by Sergey Aleynikov, July 24, 2013, Docket No. 130. Goldman opposed the motion and cross-moved for summary judgment. *See* Cross-Motion for Summary Judgment by the GS Group, August 7, 2013, Docket No. 143. On October 16, 2013, I granted Aleynikov's motion in part as to advancement of legal fees and expenses, but otherwise denied his motion. Goldman's cross-motion for summary judgment was denied. Opinion of Oct. 16, 2013, Docket Nos. 170 (sealed opinion), 174 (unsealed and redacted opinion), and 171 (order).

## II. Discussion

### A. The Motion to Dismiss Standard

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

5

"Under Fed. R. Civ. P. 8(c), the statute of limitations constitutes an affirmative defense to an action. Under the law of this and other circuits, however, the limitations defense may be raised on a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)). If the time bar is not apparent from the face of the complaint, "then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.*

### B. The Counterclaims

GS Group and GSCo bring four Counterclaims against Aleynikov. These comprise (1) breach of contract; (2) misappropriation of trade secrets; (3) conversion; and (4) declaratory judgment pursuant to 28 U.S.C. § 2201(a). For the reasons elaborated below, I find that the Counterclaims contain allegations sufficient to withstand this motion to dismiss.

#### 1. *Counts 1, 2, and 3: State-Law Breach of Contract, Misappropriation of Trade Secrets, and Conversion*

The three damages claims for breach of contract, misappropriation of trade secrets, and conversion, sound in state law and are sustainable basd on this Court's diversity jurisdiction. 28 U.S.C. § 1332; *see* n.2, *supra*. I must therefore apply the choice-of-law rules of New Jersey, the forum state, to determine which state's substantive law should apply. *See Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). New Jersey's "most significant relationship" test first requires the court to determine whether there is an actual conflict between potentially applicable laws. *P.V. v. Camp Jaycee*, 197 N.J. 132, 144, 962 A.2d 453, 460 (2008). The parties agree that there is an actual, relevant conflict between the law of New Jersey and that of New York. New York is the situs of the events giving rise to the claims for breach of contract, misappropriation, and conversion. The parties therefore agree that New Jersey's "most significant relationship" dictates that these Counterclaims are governed by New York law. MTD Counterclaim at 11; Docket No. 67 ("Goldman Opposition"). I think so, too. Aleynikov entered into this employment arrangement in New York, and worked in New York for GSCo when the alleged theft of the code material

occurred. GSCo, a limited liability partnership, is headquartered in New York and is organized under the laws of New York. Counterclaim at ¶6. Virtually all of the relevant events, whether disputed or agreed, occurred in New York. I will apply New York law to these claims. *See Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co.*, 134 N.J. 96, 102, 629 A.2d 885, 888 (1993) (explaining the relevant factors under the "most significant relationship" analysis).

> a. Whether the breach of contract, misappropriation of trade secrets, and conversion claims (Counts 1, 2, and 3) are barred by New York's statute of limitations

Aleynikov first argues that Counts 1, 2, and 3 of the Counterclaims are time-barred under the relevant New York statute of limitations. I will deny this portion of his motion to dismiss, because no such time bar is established by the allegations of the Counterclaims.

The statute of limitations constitutes an affirmative defense under Fed. R. Civ. P. 8(c). "Under the law of this and other circuits ... a limitations defense may be raised on a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Bethel*, 570 F.2d at 1174 (quoting *Hanna*, 514 F.2d at 1094). If the time bar is not apparent on the face of the complaint (here, the Counterclaims), "then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.*

Aleynikov alleges that Counts 1, 2, and 3 are barred by New York's three-year statute of limitations for actions in tort. *See* N.Y. C.P.L.R. § 214(4) (McKinney).

The conversion claim, says Aleynikov, accrued as of the dates of the alleged conversions, June 1 and June 5, 2009. Counterclaim at 17. At any rate, it should not have accrued any later than his arrest on July 3, 2009. The date of filing of the Counterclaim, December 21, 2012, therefore fell some five or six months after the three-year limitations period had expired.

As for the misappropriation claim, Aleynikov alleges that it must have accrued when he allegedly disclosed the proprietary information. Goldman does not allege a specific disclosure date, but Aleynikov reasonably contends that it cannot have occurred any later than his arrest on July 3, 2009. MTD Counterclaim at 13. The count of misappropriation, too, is therefore barred by

the three-year tort statute of limitations.

As for the breach-of-contract claim, Aleynikov's application of the tort statute of limitations requires some explaining. Aleynikov concedes that contract claims are generally governed by a six-year statute of limitations. If that six-year statute applied, this contract claim would be timely. *See* N.Y. C.P.L.R. 213(2). He argues, however, that the three-year tort limitation period should nevertheless apply, because Goldman's breach of contract claim is "in essence one for misappropriation for proprietary information." MTD Counterclaim at 13.

To all of these contentions, Goldman has several answers.

First, Goldman contends that the six-year contract limitations period self-evidently applies to Counterclaim Count 1, which is for breach of contract. Aleynikov's argument for dismissal succeeds only if Count 1, despite its title and its allegations, *cannot*, as a matter of law, be treated as a contract claim, and *must*, as a matter of law, be treated *exclusively* as a tort claim. I agree that, on a Rule 12(b)(6) motion to dismiss, the Court cannot go behind the pleadings in that manner. I cannot say that this breach of contract claim must be treated solely as a tort claim.

Second, Goldman argues that the same six-year contract limitations period applies to Counterclaim Counts 2 and 3, for misappropriation and conversion. Although styled as tort claims, Goldman says, they originated in the parties' contractual relationship. To some degree, this is a mirror image of Aleynikov's argument regarding the contract claim. The Second Circuit has held that "New York law permits certain actions for damages to property or pecuniary interest to be brought under either a tort or contract theory" and will apply the longer of the two limitations periods so long as the asserted liability "ha[s] its genesis in the contractual relationship of the parties." *Malmsteen v. Berdon, LLP*, 369 F. App'x 248, 250 (2d Cir. 2010) (quoting *Baratta v. Kozlowski*, 94 A.D.2d 454, 464 (1983)); *see also Walling v. Holman*, 858 F.2d 79, 83 (2d Cir. 1988) (applying six-year statute of limitations to a conversion claim because liability had its genesis in a contractual relationship in the form of a lease).

Here, Goldman has alleged that Aleynikov breached a confidentiality contract that was a condition of his employment with GSCo. Such a claim is subject to a six-year statute of limitations. N.Y. C.P.L.R. 213(2); *see Malmsteen*,

8

369 F. App'x at 250 ("A breach of contract claim, in contrast, always has a statute of limitations of six years."); *Lennon v. Seaman*, 63 F. Supp. 2d 428, 446 (S.D.N.Y. 1999) (holding that "[t]he applicable statute of limitations is six years" for a claim relating to a breach of a confidentiality agreement). There may be valid arguments that Counts 2 and 3, tort claims, should be subject to a three-year statute of limitations even though they may arise from a contractual relationship. At this stage, however, I cannot dismiss Count 2 or Count 3 unless Aleynikov has *excluded* the possibility that it could be treated as a contract claim. *See also* Section B.1.b.i., below. That cannot be established from the face of the Counterclaim. See *Bethel*, 570 F.2d at 1174 (quoting *Hanna*, 514 F.2d at 1094). I therefore deny the motion to dismiss the misappropriation and conversion counts on this ground.[5]

---

[5] Although it is not necessary to my decision, I note another, alternative theory under which the counterclaims might not be time-barred. Goldman could assert them as an offset to Aleynikov's claims. Viewed from this perspective, the selection of the appropriate limitations period is almost irrelevant. Section 203 of the N.Y. C.P.L.R. carves out an exception to the statute of limitations for offsetting claims and defenses that arise from the same transactions and occurrences as a claim asserted in a complaint. "It is axiomatic that claims and defenses that arise out of the same transaction as a claim asserted in the complaint are not barred by the Statute of Limitations, even though an independent action by defendant might have been time-barred at the time the action was commenced." *Bloomfield v. Bloomfield*, 97 N.Y.2d 188, 193, 764 N.E.2d 950, 952 (2001) (citing N.Y. C.P.L.R. 203(d)).

Section 203(d) of the C.P.L.R. provides:

> A defense or counterclaim is interposed when a pleading containing it is served. A defense or counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed, except that if the defense or counterclaim arose from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends, it is not barred to the extent of the demand in the complaint notwithstanding that it was barred at the time the claims asserted in the complaint were interposed.

This exception is broader than a mere relation back to the date of the complaint. Such counterclaims, *even if* they would have been time-barred when the complaint was filed, may be interposed to offset the claims in the complaint. *Sawyer v. Wight*, 196 F. Supp. 2d 220, 229 (E.D.N.Y. 2002); *see also 118 E. 60th Owners, Inc. v. Bonner Properties, Inc.*, 677 F.2d 200, 203 (2d Cir. 1982) (describing the C.P.L.R. 203(d) limitations exception as a codification of the doctrine of equitable recoupment and

It is far from apparent from the face of the Counterclaim that Counts 1, 2, and 3 are time-barred. I will therefore deny Aleynikov's motion under Fed. R. Civ. P. 12(b)(6) to dismiss them under the applicable New York statute of limitations.

### b. Whether Counterclaim Counts 1, 2, and 3 state claims upon which relief may be granted

Aleynikov moves more generally to dismiss Counterclaim Counts 1, 2, and 3 (breach of contract, misappropriation of trade secrets, and conversion) for failure to state a claim upon which relief can be granted. There is some facile appeal to Goldman's argument that these allegations meet the *Twombly* "plausibility" test because Aleynikov is under indictment for the very same conduct. Opposition Brief at 1. More to the point, however, the Counts themselves adequately and plausibly allege facts from which the essential elements of these causes of action could be established. Aleynikov of course disputes those allegations, but no more is required of Goldman at the pleading stage. The motion to dismiss will therefore be denied.

#### i. Breach of contract

Count 1 of the Counterclaim alleges that Aleynikov breached a valid and binding confidentiality agreement with GSCo. Aleynikov allegedly did so by "misappropriating and disclosing the firm's proprietary information." Counterclaim at 19. As a result, Goldman alleges, it suffered damages "in an amount to be quantified at trial." *Id.*

Under New York law, a breach of contract claim "requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other

---

explaining its applicability).

The evident policy of this exception is to avoid penalizing a party that is content to keep the peace unless it is sued. To the extent Goldman's Counterclaims arise from the same "transactions, occurrences, or series of transactions or occurrences" alleged in the Complaint, they are timely, at least to the extent that they offset the damages claimed in the Complaint. Given my denial of the motion to dismiss on other grounds, I need not rule definitively on the applicability of this alternative theory.

party; and (4) damages." *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) (quoting *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525 (2d Cir. 1994). Aleynikov contends that Goldman has failed to allege three of these elements: the existence of a valid contract, a material breach, and damages flowing from the breach. MTD Counterclaim at 16. In analyzing these contentions, I apply the *Twombly/Iqbal* standard of sufficiency, noting that a party need not plead all facts in detail in order to move past the pleading stage. *See, e.g., Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, CIV 06-5814 JBS, 2007 WL 1756027, at *7 (D.N.J. June 18, 2007) (explaining that, in the absence of a heightened pleading requirement, a plaintiff need not plead all relevant facts in detail) (citations omitted).

Aleynikov argues that he never signed the Employee Agreement Regarding Non-Disclosure of Information Relating to Goldman Sachs and Protection of Confidential and Proprietary Information (the "Confidentiality Agreement"). MTD Counterclaim at 17–18. That is, he contemporaneously acknowledged that he had read and would adhere to that Confidentiality Agreement (or perhaps another one, a factual issue), but did not actually sign it. *Id.* at 17. The Counterclaim alleges that each GSCo employee must enter into the Confidentiality Agreement as a condition of employment. Counterclaim at ¶ 17. The Confidentiality Agreement is alleged to cover all "Confidential and Proprietary Information and Materials," defined as all "non-public information and materials, including but not limited to information and materials describing or relating to the business and financial affairs, personnel matters, operating procedures, organizational responsibilities, marketing matters, and policies or procedures of Goldman Sachs." *Id.* That Agreement prohibits an agent from giving, disclosing, copying, reproducing, selling, assigning, licensing, marketing, or transferring confidential and proprietary information. *Id.* The Agreement provides that it is to survive termination of employment. *Id.* at ¶ 18. Goldman alleges that Aleynikov bound himself to this Confidentiality Agreement as a condition of his employment. *Id.* at ¶ 20. It further alleges that that any proprietary and confidential information was to be "used only as authorized and only for the purposes intended by Goldman Sachs." *Id.* at 17. Those allegations are adequate. Any factual disputes surrounding contract formation are not properly addressed at the pleadings stage.

Aleynikov further contends that the Counterclaim fails to allege that he ever in fact breached the nondisclosure policy by disclosing the source code to a third party. The Counterclaim alleges that Aleynikov remained in his position at GSCo for more than two years and continuously had access to the

proprietary information. He would not have been given such access but for the Confidentiality Agreement. The Counterclaim alleges that he breached the contract by misappropriating and disclosing the firm's proprietary information. *Id.* at ¶ 37. Specifically, he allegedly copied proprietary, confidential information, disclosed the source code by transmitting it to a third party server outside the United States, made at least two personal copies of the source code, and took the source code to a meeting at another firm, all allegedly in contravention of the Confidentiality Agreement. Counterclaims at 15–18. These allegations of disclosure are sufficient.

Finally, Aleynikov contends that the Counterclaim does not sufficiently allege damages. I find that damages are alleged generally, but sufficiently. *See* Counterclaim at ¶¶ 1,3, 38, 42, 47. *See generally* Lincoln Nat. Life Ins. Co. v. Schwarz, CIV.A. 09-03361 FLW, 2010 WL 3283550, at *15 (D.N.J. Aug. 18, 2010) (holding that plaintiff sufficiently alleged damages for purposes of surviving a motion to dismiss where plaintiff did not quantify damages, but instead alleged "substantial damages as a result of Defendants' wrongful conduct, including, among other things, costs and expenses associated with the issuance" of insurance policies).

Aleynikov's motion to dismiss is denied as to the breach of contract count.

### ii. Misappropriation of trade secrets

Count 2 of the Counterclaim alleges that Aleynikov misappropriated the firm's trade secrets, which Goldman calls the "stolen technology," in breach of "agreements, confidence, and/or duties." Counterclaims at 19. Goldman alleges damages "in an amount to be quantified at trial" as a result of the misappropriation. *Id.* at 19–20.

Under New York law, to succeed on a claim for the misappropriation of trade secrets, "a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999).

Aleynikov again argues that Goldman has failed to allege that he ever used or disclosed the source code to any person, firm, or corporation in contravention of the confidentiality agreement. I have discussed this contention in relation to breach of contract, above. (Here, Goldman adds that it is inferable

that Aleynikov copied proprietary information and immediately used it as a bargaining chip to secure employment with a competitor firm. Goldman Opposition at 27.) In addition, there is New York authority to the effect that a misappropriation claim does not require an allegation of disclosure to a third party. *See Servotec USA, LLC v. Ruag Ammontec USA, Inc. f/k/a Precision Ammunition, LLC*, 1:11-CV-0049 MAD/RFT, 2011 WL 4736355, at *6 (N.D.N.Y. Oct. 6, 2011) ("Plaintiff has sufficiently alleged that defendant obtained confidential information and used that information for its pecuniary gain. Defendant incorrectly asserts that absent an allegation that the defendant ever disclosed plaintiff's confidential or proprietary information to any third party, plaintiff can't succeed on its claim."); *Lapp Insulators LLC v. Gemignani*, 09-CV-0694A SR, 2011 WL 1198648, at *10 (W.D.N.Y. Mar. 9, 2011), *report and recommendation adopted*, 09-CV-694A, 2011 WL 1213090 (W.D.N.Y. Mar. 29, 2011) ("Defendant's assertion that absent an allegation that the defendant ever disclosed plaintiff's confidential or proprietary information to any third party, plaintiff can't succeed on its claim is not the proper standard on a motion to dismiss.").

At this initial pleading stage, Goldman has sufficiently alleged that GSCo possessed a trade secret that Aleynikov either disclosed or misappropriated for his own advantage or pecuniary gain, in contravention of the confidentiality agreement. Factual disputes are for later. Aleynikov's motion to dismiss is denied as to Counterclaim Count 2, misappropriation of trade secrets.

### iii. Conversion

Count 3 of the Counterclaim alleges that Aleynikov committed the tort of conversion by acting without authorization "in preparing to copy and in copying the Stolen Technology on a GSCo computer to a computer outside the United States." Counterclaim at 20. Goldman further alleges that "Aleynikov exercised dominion, control, and the right of ownership over the files and data, in derogation and defiance of the superior possessory right of GS Group," resulting in damage to Goldman. *Id.*

Under New York law, conversion is "any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 53–54 (2d Cir. 1993) (internal citations omitted). New York's common law of conversion has recently been expanded to include electronic data. *See Thyroff*

*v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 864 N.E.2d 1272 (2007).

Aleynikov argues in effect that he only copied the data; he did not deprive GSCo of it. Goldman responds that, by expanding this cause of action to include electronic data, "New York has necessarily relaxed the common-law requirement that the owner of the converted property be deprived of the use of the property." Goldman Opposition at 29.

In a post-*Thyroff* decision, *Lapp Insulators LLC v. Gemignani, supra*, the District Court for the Western District of New affirmed the magistrate judge's finding that the plaintiff had stated a cause of action for conversion based on the defendant's having accessed and copied confidential and proprietary information. *See Lapp Insulators LLC*, 2011 WL 1198648, at *12–13. More recently, a New York district court analyzed an alleged theft or copying of credit card information that did not deprive the owners of the information. Denying a motion to dismiss, that court reasoned that nevertheless, "Plaintiffs' possession of their customers' credit card information was adversely affected and its value attenuated by" the defendant's misconduct. *Clark St. Wine & Spirits v. Emporos Sys. Corp.*, 754 F. Supp. 2d 474, 484 (E.D.N.Y. 2010). Defendant's theft of the information "seriously diluted its value and became a disincentive rather than a reason for customers and the business to use the system." *Id.*

In neither case did the court require that the victim be deprived of the information in order for the conversion claim to survive. It was enough that the alleged misconduct adversely affected the value of the proprietary information to its owner. Here, Goldman alleges that Aleynikov acted without authorization in copying the stolen technology, that he exercised "dominion, control, and the right of ownership over the files and data, in derogation and defiance of the superior possessory rights of GS Group," and that Goldman has suffered damages as a result of the conversion. That is enough; the motion to dismiss is denied as to the conversion claim.

### c. Whether GS Group may bring claims as GSCo's Assignee

The Counterclaim alleges that "GS Group, to which GSCo has assigned its own claims, seeks the damages that it and GSCo have suffered as a result of Aleynikov's wrongful conduct, and to offset any monetary award granted to Aleynikov." Counterclaim at 11–12. Aleynikov contends that there is no proper assignment from GSCo to GS Group, and that in any event such an

assignment would violate New Jersey's prohibition against the assignment of tort claims. I will deny the motion to dismiss on this ground, for the following reasons.

First, the Counterclaim alleges that GSCo has assigned its claims to GS Group. The Court accepts that allegation as true for purposes of this motion.

Second, Aleynikov's argument fails because any New Jersey prohibition on assignment of these claims is inapplicable. The issue of the validity of the Assignment is governed by New York law.

I have already found that New York law governs the substantive tort claims, because virtually all of the relevant events allegedly occurred in New York. *See* pp. 6–7, *supra*. Under established choice of law principles, the assignment of the claim should be governed by the law that governs the claim. "A chose in action is intangible property which owes its existence to the law of a particular forum. It is fitting that the law from which the chose in action itself springs also governs the assignability of the chose in action. . . . In this case, then, the assignability of the tort claims must be governed by the law of the state which would govern the substantive malpractice and professional negligence claims." *Conopco v. McCreadie*, 826 F. Supp. 855, 865 (D.N.J. 1993). That law is New York law. In any event, assignor and assignee are both based in New York and have no particular connection to New Jersey.

The validity of the assignment, like each underlying claim, is governed by New York law. Aleynikov acknowledges that these claims are assignable under the law of New York. Docket No. 72 ("Reply Brief") at 2.

On this ground as well, the motion to dismiss is denied.

2. *Count 4: Declaratory Judgment*

a. <u>Whether Goldman's declaratory judgment claim is proper</u>

GS Group and GSCo collectively bring a claim for declaratory relief under 28 U.S.C. § 2201(a). Goldman alleges that on December 21, 2012, Aleynikov stated, through his counsel, that he intends to file a malicious prosecution claim against the firm for its role in reporting the theft to the authorities and for the subsequent decision to arrest and prosecute him. Counterclaims at ¶ 33. Goldman therefore alleges that there is a present, ripe controversy that is justiciable in this Court. *Id.* Goldman seeks a declaration that it has no liability

to Aleynikov with regard to such a malicious prosecution claim; more specifically, Goldman asks this Court to declare that GSCo and GS Group have "no liability to Aleynikov arising out of or related to his theft of intellectual property from GSCo, the firm's reporting that theft to governmental officials, or their subsequent decisions to arrest and prosecute him." Counterclaim at 21.

Goldman freely acknowledges that it reported the theft, cooperated with the federal authorities in connection with the Federal Case, and intends to continue to cooperate with the New York State authorities in connection with the State case. Opposition Brief at 29. Goldman wishes to remove the threat of a malicious prosecution claim "so that it may be sure that it is free to cooperate with the New York state authorities." *Id.* at 30.

The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment and shall be reviewable as such.

28 U.S.C. § 2201.

To state a claim for malicious prosecution, a plaintiff must show: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal citations omitted); *see Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1035 (3d Cir. 1988) (describing the same elements for the claim of malicious prosecution under New Jersey law).

Aleynikov argues that to declare Goldman's non-liability for malicious prosecution would be an improper use of the declaratory judgment statute. Goldman counters that raising this claim for declaratory relief is proper and efficient. Litigation of Goldman's defenses and counterclaims, Goldman contends, will require the parties to explore the same matters required to resolve the malicious prosecution claim, because the facts surrounding the alleged misconduct "plainly establish that Goldman Sachs had and has ample

16

probable cause" to communicate and cooperate with federal and state authorities. Opposition Brief at 30–31.

I tend to agree with Aleynikov that tort liability is not ideally suited to the declaratory judgment remedy, and that litigation of a malicious prosecution claim might be best left until such time as Aleynikov may assert it. I see no clear limitation on the scope of the Declaratory Judgment Act, however, that would permit me to dismiss Count 4 at this stage. As Aleynikov notes, the jurisdiction conferred by the Declaratory Judgment Act is indeed discretionary. *See State Auto Ins. Companies v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000). There may well be instances when declaratory judgment is useful in negligence litigation. *See, e.g.*, 10B Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 3d § 2765. I lack a sufficient basis for the exercise of discretion at this time.

At any rate, the presence, or not, of Count 4 may have little effect on the scope of discovery or other proceedings. As the facts develop, the advisability, or not, of declaratory relief may become better defined. I will not dismiss the Section 2201 claim at this stage.

### 3. Whether GSCo may properly be joined as a Counterclaimant

Finally, Aleynikov argues that any Counterclaim asserted on behalf of GSCo must be dismissed because GSCo is not a proper party to the action. MTD Counterclaims at 25. This argument appears to be relevant only to Counterclaim Count 4, the claim for declaratory relief. It appears that GS Group alone brings Counts 1–3, as assignee of GSCo, but that GSCo joins GS Group in bringing Count 4. Counterclaims at 18–21; *see also* Opposition Brief at 38 ("Given that [GSCo] is asserting exactly the same declaratory judgment claim as GS Group, GSCo plainly qualifies" under Rule 20(a).).

The complaint was brought against GS Group as sole defendant. Aleynikov maintains (a) that joinder of GSCo as a Counterclaim Plaintiff is improper, and (b) that GS Group never sought or obtained leave to join GSCo. I find that GSCo may be joined as Counterclaim Plaintiff for purposes of asserting this claim for declaratory relief. Joinder under Rule 20(a) does not require leave of court, but in any event I would grant leave if it were required.

Rule 20(a), Fed. R. Civ. P., provides:

Persons may join in one action as plaintiffs if:

(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a). GSCo fits easily within this rule, as it asserts precisely the same claim for declaratory relief as GS Group. Joinder is therefore proper.

I also find that it was not necessary for GS Group to have obtained leave of the Court to join GSCo for purposes of the counterclaim. Rule 13(h), Fed. R. Civ. P., provides that "(p)ersons other than those made parties to the original action may be made parties to a counterclaim . . . in accordance with the provisions of Rules 19 and 20." Rule 13(h) was revised in 1966 to make it clear that "if a counterclaim or crossclaim has been properly asserted, then any person whose joinder in the original action would have been possible under Rule 20 . . . may be added as a party to the counterclaim or crossclaim." Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 3d § 1434. I agree with other district courts that have relied on Professor James W. Moore's persuasive explanation "that the 1966 revision of the rule, which dropped the provision that 'the court shall order (additional parties) to be brought in,' eliminates the need to obtain leave of court where the new parties are being brought in on a counterclaim which is raised in the original answer." *Vt. Castings, Inc. v. Evans Products Co., Grossman's Division,* 510 F. Supp. 940, 946 (D. Vt. 1981) (citing 3 Moore's Federal Practice, ¶ 13.39 (Matthew Bender 2d Ed.); *see also Northfield Ins. Co. v. Bender Shipbuilding & Repair Co., Inc.,* 122 F.R.D. 30, 32-33 (S.D. Ala. 1988) ("Upon consideration, this Court is persuaded by the rationale set forth by Prof. Moore and by the *Vermont Castings* decision and is of the opinion that leave of court is not required by the Fed. R. of Civ. P. to join a previous non-party as a counterclaim defendant.").

GS Group therefore was not required to obtain leave of court in order to join GSCo. Nevertheless, for avoidance of doubt, I state that I would grant such leave if it were requested.

Accordingly, I find that GSCo may be joined as a Counterclaim Plaintiff for purposes of this Counterclaim.

## CONCLUSION

For the reasons stated above, Aleynikov's Motion to Dismiss the Counterclaims is **DENIED**.

An appropriate order follows.

_____
**KEVIN MCNULTY**
**United States District Judge**

Dated: October 29, 2013