## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SERGEY ALEYNIKOV,<br><br>       **Plaintiff,**<br><br>    **v.**<br><br>THE GOLDMAN SACHS GROUP, INC.,<br><br>       **Defendant.** | Civ. No. 12-5994 (KM-MAH) |
| THE GOLDMAN SACHS GROUP, INC.,<br>and GOLDMAN, SACHS & CO.,<br><br>       **Counterclaim Plaintiffs,**<br><br>  **v.**<br><br>SERGEY ALEYNIKOV,<br><br>       **Counterclaim Defendant.** | **OPINION** |

### KEVIN MCNULTY, U.S.D.J.:

## I.    INTRODUCTION

This matter comes before the court on the motion (ECF no. 307) of Goldman, Sachs & Co. ("GSCo") and The Goldman Sachs Group, Inc. ("GS Group") (together, "Goldman") to strike or dismiss the Counterclaim in Reply (ECF no. 286)[1] of Sergey Aleynikov. For the reasons set forth below, the motion

---

[1]    Citations to pleadings and other documents will be abbreviated as follows:

"CIR" — Aleynikov's Answer to Counterclaims and Counterclaims in Reply (ECF No. 286)

"GS CC" — Goldman's Answer and Counterclaims (ECF No. 51)

"GS Br." – Goldman's Brief in Support of its Motion to Dismiss and/or Strike Aleynikov's Reply Counterclaims (ECF No. 307-1)

to strike is DENIED. The motion to dismiss the CIR is GRANTED as to Counts 2, 3, and 4; DENIED as to Counts 1 and 6; ADMINISTRATIVELY TERMINATED WITHOUT PREJUDICE as to Count 5; and GRANTED in part and DENIED in part as to Count 7.

## A.   Procedural Background

This action, and related ones, have been the subject of too many opinions to require any extended factual summary. I briefly state the procedural history relevant to this motion.

On September 25, 2012, Aleynikov filed a complaint seeking advancement and indemnification of attorney's fees from GS Group. (ECF No. 1) The attorneys' fees were incurred in federal and state criminal cases brought against Aleynikov based on his alleged misappropriation of source code from Goldman, his former employer. I denied Aleynikov's application for a preliminary injunction, and later denied early cross-motions for summary judgment, finding that there were issues of fact requiring exploration in discovery. (ECF nos. 44, 45) My opinion ordered expedited discovery on Aleynikov's claims. On December 21, 2012, Magistrate Judge Hammer set out a schedule of expedited fact discovery. (ECF no. 52)

Also on December 21, 2012, GS Group filed its Answer. (ECF no. 51) That answer included a counterclaim.  (GSCC, ECF no. 51 at 11) GS Group brought three counterclaims for breach of contract, misappropriation of trade secrets, and conversion. The fourth counterclaim, brought on behalf of both GS Group and GSCo, sought a declaratory judgment that they were not liable to Aleynikov for malicious prosecution.

---

"Aleynikov Br." — Aleynikov's Brief in Opposition to Goldman's Motion to Dismiss and/or Strike Aleynikov's Reply Counterclaims (ECF No. 308)

"GS Reply Br." — Goldman's Brief in Reply in Further Support of its Motion to Dismiss and/or Strike Aleynikov's Reply Counterclaims (ECF No. 309)

Aleynikov did not initially respond to the Counterclaim by filing an answer (which would have included any compulsory counterclaims in reply). Rather, on January 11, 2013, Aleynikov filed a motion to dismiss the Counterclaim. (ECF no. 62)

On January 30, 2013, Magistrate Judge Hammer confirmed that expedited discovery had been ordered only as to advancement of fees, a form of emergent or immediate relief. Discovery, he ruled, would not be expanded to encompass Goldman's Counterclaim. (ECF no. 74) In effect, proceedings on Goldman's Counterclaim were stayed.

After discovery I granted partial summary judgment awarding interim advancement of fees. (ECF no. 174) On October 24, 2013, that ruling was appealed by Goldman. (ECF no. 176)

On October 29, 2013, in an Opinion (ECF no. 192) and Order (ECF no. 193), I denied Aleynikov's motion (ECF no. 62) to dismiss the Counterclaim of GSCo and GS Group. Aleynikov's time to answer the Counterclaim began to run at that time.

On November 26, 2013, however, Aleynikov moved to stay the Counterclaim and merits-related affirmative defenses. He did so in order to preserve his Fifth Amendment rights in the then-pending New York State criminal prosecution. (ECF no. 211) Goldman opposed that motion, but cross-moved in the alternative to stay this entire civil case. (ECF no. 214) That stay motion was assigned to Magistrate Judge Hammer.

Throughout this period, the appeal of summary judgment on advancement of fees remained pending. On January 24, 2014, the U.S. Court of Appeals for the Third Circuit stayed my summary judgment decision. (ECF no. 232) Magistrate Judge Hammer, seeing the handwriting on the wall, responded as follows: On March 20, 2014, finding that the Third Circuit's eventual ruling might fundamentally alter the posture of the case, Judge Hammer administratively terminated the motion to stay the Counterclaim

3

without prejudice, pending the outcome of the appeal. (ECF no. 234) He also adjourned a scheduled conference without date. (ECF no. 233) The sense of these rulings was not that litigation of the Counterclaim would go forward, but rather the opposite—*i.e.*, that further proceedings would have to await the outcome of the appeal.

On September 3, 2014, the Third Circuit reversed my grant of partial summary judgment. (ECF nos. 241, 243; *Aleynikov v. Goldman Sachs Group, Inc.*, 765 F.3d 350 (3d Cir. 2014)). On remand, Aleynikov moved for summary judgment on issues that he believed had been left open by the Third Circuit. (ECF no. 263) On January 16, 2015, I denied that motion. (ECF no. 266)

On February 5, 2015, Magistrate Judge Hammer set the case back on track. His order set forth a briefing schedule for any renewed motion to stay the counterclaims and affirmative defenses pending the outcome of the criminal case in New York. That order provided that discovery on the counterclaims would be stayed in the interim, until that motion was decided. (ECF no. 272) On February 25, 2015, Aleynikov filed his motion to stay. (ECF no. 277)

On August 26, 2015, however, Aleynikov's counsel informed the court that Aleynikov had been acquitted in the New York state criminal case. That letter stated that Aleynikov would withdraw his motion to stay and file an answer and counterclaim in reply to Goldman's counterclaim. (ECF no. 285) The same day, Aleynikov did file his Answer and Counterclaim in Reply. (ECF no. 286) In accordance with a procedural order of Judge Hammer (ECF no. 299), Goldman's current motion to strike or dismiss Aleynikov's Counterclaim in Reply was filed as a package, fully briefed by both sides, on January 22, 2016. (ECF nos. 307, 308, 309)

**B.      The Counterclaim in Reply (CIR)**

The allegations of Aleynikov's CIR may be summarized briefly as follows.

Aleynikov worked for Goldman as a programmer until June 2009. On July 1, 2009, Goldman contacted the FBI and persuaded them to arrest Aleynikov by falsely telling them that he had stolen Goldman's entire HFT infrastructure, worth a billion dollars. FBI Special Agent McSwain and his supervisor, Casey, took the lead, and they did arrest Aleynikov. At Goldman's urging, they swore out a federal criminal complaint in the Southern District of New York for violation of the NSPA and the EEA. (CIR ¶¶ 58-70)

On July 14, 2009, Goldman CFO David Viniar admitted that Goldman still had use of the code, and that any loss to the firm was not material. Goldman nevertheless continued to press the federal prosecution, taking an active role at every stage. (CIR ¶¶ 74-80)

Aleynikov was convicted by a federal jury. District Judge Cote rejected his pretrial and post-trial motions to dismiss the charges. Judge Cote twice held that the relevant federal statutes, the National Stolen Property Act, the Economic Espionage Act, and the Computer Fraud and Abuse Act, covered the alleged conduct. *See United States v. Aleynikov*, 737 F. Supp. 2d 173 (S.D.N.Y. 2010); *United States v. Aleynikov*, 785 F. Supp. 2d 46, 55 (S.D.N.Y. 2011). The Second Circuit disagreed, and reversed Aleynikov's conviction, holding that his actions did not fall within the scope of the federal statutes he had been accused of violating. *See United States v. Aleynikov,* 676 F.3d 71 (2d Cir. 2012). Aleynikov, who had been imprisoned for 51 weeks, was ordered to be released. On remand, Judge Cote entered a judgment of acquittal on June 5, 2012.

The property seized from Aleynikov as evidence, including his passport, was not returned to him. Rather, it was transferred to the New York County District Attorney's Office (NYDA) pursuant to an *ex parte* emergency application by McSwain. (CIR ¶¶ 30, 38, 81-89)

Goldman successfully importuned McSwain to instigate a second prosecution of Aleynikov. This second prosecution, based on the same facts, was brought by the NYDA in New York State court. Goldman and McSwain allegedly knew at the time that Aleynikov's conduct did not violate state law, either. Aleynikov was charged and again arrested, and remained in custody for a week in August 2012. In the state prosecution, Justice Zweibel suppressed physical evidence seized from Aleynikov. (CIR ¶¶ 29, 78, 90, 92)

The State case went to trial on three charges. Goldman remained involved at every step. Goldman's representatives testified, allegedly falsely, that Aleynikov had intentionally misappropriated highly valuable source code. A jury convicted Aleynikov on one count, hung on one, and acquitted him on a third. On July 6, 2015, Justice Conviser filed a 72-page decision in which he granted Aleynikov's post-trial motion to dismiss the conviction, finding that the acts proven against Aleynikov did not violate State law. The State's appeal of Judge Conviser's decision is pending. The upshot is that Aleynikov is not currently convicted of any of the charges, state or federal. (CIR ¶¶ 43-44, 74, 98)

Count 1 of the CIR asserts a claim of malicious prosecution in relation to the federal criminal case. (CIR ¶¶ 101–06) Count 2 asserts a claim of abuse of process in connection with the federal case. (CIR ¶¶ 107–11) Counts 5 and 6 assert claims of malicious prosecution and abuse of process in relation to the State criminal case. (CIR ¶¶ 123–33)

Count 3 alleges tortious interference with contract and Count 4 alleges interference with prospective economic advantage. (CIR ¶¶ 112–22) Count 7 asserts a claim of defamation. (CIR ¶¶ 134–38)

6

## II.   MOTION TO STRIKE

Goldman first moves to strike Aleynikov's CIR, saying that its filing comes far too late, and without leave of court. Aleynikov first alluded to a forthcoming claim for malicious prosecution on December 21, 2012, yet did not answer and assert the CIR until some 21 months later, on August 26, 2015. That, says Goldman, exceeds the bounds of "good cause" and/or "excusable neglect" under Fed. R. Civ. P. 6 and the corresponding Local Rule.[2] As Goldman sees the case, Aleynikov never fulfilled the Rule 6(1)(B) prerequisite of "mak[ing] a formal motion for extension of time," after which the district court would have been called upon to "make a finding of excusable neglect, using the *Pioneer* factors." *Drippe v. Tobelinski*, 604 F.3d 778 (3d Cir. 2010) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395, 113 S. Ct. 1489 (1993)). I analyze the matter differently, however. I conclude (a) that Count 5 of the CIR, alleging malicious prosecution in relation to the state criminal case, has not yet ripened and therefore cannot have been untimely asserted; and (b) that the counterclaims were, for practical purposes, stayed by the Magistrate Judge during the relevant period, suspending Aleynikov's time to respond to them.

As noted above, Goldman's motion to dismiss comes before the Court in a peculiar procedural posture.  It was on October 29, 2013, that I denied Aleynikov's motion to dismiss Goldman's counterclaim. Aleynikov's deadline to file an Answer to the Counterclaim (and any counterclaim in reply,

---

[2]      Federal Rule 6 provides:

(b) Extending Time.

(1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time:

(A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or

(B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Fed. R. Civ. P. 6(b).

presumably) would have started running from that date. The time limit would have been 21 days, *see* Fed. R. Civ. P. 12(a), with an automatic extension of 14 days available from the clerk, *see* Loc. Civ. R. 6.1. On November 26, 2013, however, Aleynikov moved on Fifth Amendment grounds to stay the Counterclaim and merits-related affirmative defenses while the New York criminal case was pending. Goldman opposed that motion, but cross-moved in the alternative to stay the entire case. Judge Hammer administratively terminated the stay motions without prejudice pending the outcome of the Third Circuit appeal. (ECF no. 234)

Part of the confusion here appears to arise from the fact that Goldman's Counterclaim was stayed (or stayable) for more than one reason. At the outset, proceedings on the emergent remedy of advancement of fees were given priority. Magistrate Judge Hammer's subsequent orders shared a common premise: that litigation of the Counterclaim would not go forward while the appeal remained pending. That being the case, Judge Hammer administratively terminated Aleynikov's motion to stay the counterclaims based on his Fifth Amendment rights in the pending, parallel criminal case in New York. He restored that motion to the calendar only after the conclusion of the Third Circuit appeal.

When the matter was remanded from the Court of Appeals, on February 5, 2015, Magistrate Judge Hammer set forth a briefing schedule for any renewed motion to stay the matter based on the pendency of the criminal case in New York. (ECF no. 272) That order provided that, in the interim, "Discovery shall be stayed pending adjudication of any such motion to stay." *Id.* Aleynikov filed his motion to stay on Fifth Amendment grounds. (ECF no. 277)[3] That motion, however, was again overtaken by events when Aleynikov was acquitted

---

[3]     In general, such a stay of discovery would be appropriate where the civil and criminal matters were closely intertwined and the party seeking the stay was actually, currently standing trial in the criminal case. *See generally Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 527 (D.N.J. 1998).

in New York. On August 26, 2015, Aleynikov's counsel withdrew the stay motion and filed the Answer and CIR at issue here.

For all intents and purposes, litigation of Goldman's counterclaims was stayed in the relevant period, albeit on shifting grounds. I therefore find that the CIR was timely filed, and I will not strike it. Now it is true that Aleynikov did not rigorously ensure that a stay specifically directed to his time to answer/counterclaim was in place at all times. Rather, everyone spoke in terms of staying "discovery" on Goldman's Counterclaim, because that was the issue at hand. My review of the record, however, satisfies me that litigation of Goldman's Counterclaim was more generally suspended. As a practical matter, the counterclaims were not answered or otherwise responded to, and did not move forward.[4]

Permitting the pleading of the CIR causes no particular prejudice to Goldman. There has been no extensive litigation of Goldman's counterclaim, and permitting the CIR would entail no duplication of effort. Fair warning, particularly as to malicious prosecution, is not really an issue. Goldman's counterclaim seeks, *inter alia,* a declaratory judgment that Goldman is *not* liable for malicious prosecution; Count 1 of the CIR mirrors the counterclaim by asserting that Goldman *is* liable for malicious prosecution regarding the federal prosecution.

---

[4]     I view this as an issue of the scope of Judge Hammer's stay. Viewed through the prism of Rule 6, however, this was not a case where the opposing party was sandbagged by a motion made after the expiration of a deadline. In that situation, Rule 6 requires a formal motion and a judicial finding of excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B); *Dippe, supra.* This situation fits more comfortably under Rule 6(b)(1)(A), which provides that where, as here, "the court acts, or if a request is made, before the original time or its extension expires," an extension is permissible with or without a formal motion or finding of excusable neglect. Fed. R. Civ. P. 6(b)(1)(A). A "request [was] made" for a stay while the deadline was running. In substance, a stay pending the appeal was granted, and everyone proceeded in a manner consistent with the understanding that the counterclaim was stayed. Even today, for example, Goldman has not, *e.g.,* moved for a default because Aleynikov's answer (which contained the CIR) was late.

With respect to Count 5, which asserts malicious prosecution in relation to the New York State criminal case, Goldman seems to agree that the cause of action has not yet ripened (as I have ruled elsewhere). *See* Opinions and Orders in *Aleynikov v. McSwain,* Civ. No. 15-1170, ECF nos. 38–39, as amended, 52–53). This particular claim, then, cannot have been untimely asserted. As to the remainder of the CIR, which asserts claims for abuse of process, tortious interference, and defamation, Goldman had fair notice of Aleynikov's factual and legal theories, as detailed below.

Finding that a stay of Goldman's counterclaims was for practical purposes in effect, and that Goldman has not been prejudiced, I will excuse the delay in filing the CIR and address the claims on the merits, as is the Court's strong preference. *See generally* Fed. R. Civ. P. 1. The motion to strike is denied.

## III.   STATUTE OF LIMITATIONS

Goldman next argues that (with the exception of the unripe malicious prosecution claim based on the state prosecution) Aleynikov's CIRs are time-barred. Aleynikov responds that his CIRs are timely because they relate back to Goldman's counterclaims and, even if untimely, can be asserted under the doctrine of equitable recoupment.

Under Fed. R. Civ. P. 8(c), the statute of limitations is an affirmative defense. The limitations defense may nevertheless be raised on a motion under Rule 12(b)(6), but only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975) (internal quotations omitted)); *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Bethel*, 570 F.2d at 1174.

10

For the reasons set forth below, CIR Counts 2 and 3 have not been brought within the applicable statute of limitations and are therefore dismissed with prejudice. Count 6, however, has been brought within the statute of limitations. So too has Count 7, to the extent it is based on defamatory statements Goldman allegedly made during the state prosecution. The resolution of Goldman's statute of limitations challenge to Count 4 is impracticable based on that Count's rather undetailed allegations; and indeed the motion to dismiss Count 4 on *Twombly/Iqbal* grounds for failure to state a claim is granted. *See* Part IV.C., *infra*.

### A.   Relation Back

The statute of limitations calculation depends initially on the date that the CIR is deemed "filed" in this Court. Aleynikov argues that the CIR relates back to December 21, 2012, the date on which Goldman filed its counterclaims.[5] The CIR, in Aleynikov's reckoning, asserts compulsory counterclaims under Rule 13(a)—that is, counterclaims in reply that arise out of the same "transaction or occurrence" as Goldman's counterclaims. *See* Fed. R. Civ. P. 13(a). Like an amended pleading under Fed. R. Civ. P. 15(c), he says, the CIR must relate back to the date of filing of the counterclaim to which it responds. *Cf.* Fed. R. Civ. P. 15(c)(1)(B).

In principle, I agree that the relation-back doctrine can apply to compulsory counterclaims. *See, e.g.,* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1419 (3d ed) ("[T]he majority view appears to be that the institution of a plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim."); *Burlington Indust. v. Milliken & Co.,* 690 F.2d 380, 389 (4th Cir. 1982); *Girodano v. Claudio,* 714 F. Supp. 2d 508, 522-23 (E.D. Pa. 2010). I accept as well that the "same transaction or occurrence" test is common to both Rule 13(a) and Rule 15(c), and that any

---

[5]     Relation back is a question of federal law. *Nelson v. County of Allegheny,* 60 F.3d 1010, 1014 n.5 (3d Cir. 1995). In any event, New Jersey law is similar. N.J. Ct. R. 4:9-3.

claim that satisfies one is likely to satisfy the other. *See USX Corp. v. Barnhart*, 395 F.3d 161, 167 (3d Cir. 2004) (application of Rule 15(c) "involves a search for a common core of operative facts in the two pleadings"); *Transamerica Occidental Life. Ins. Co., v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389-90 (3d Cir. 2002) (application of Rule 13(a) requires a court to determine whether "a logical relationship between the claims exist where separate trials on each of the claims would involve a substantial duplication of effort and time by the parties and the courts.")[6]

Nevertheless, Goldman argues that the abuse of process, tortious interference, and defamation counterclaims asserted in the CIR are so distinct from Goldman's own counterclaims that it cannot be said to have had "fair notice of the general fact situation and legal theory" upon which the CIR rests. *Barnhart*, 395 F.3d at 167. Aleynikov retorts that there is "common nucleus of operative facts" at the heart of both the CIR and Goldman's counterclaims. That nucleus consists of "the alleged theft of Goldman's source code and [Goldman's] campaign to have Aleynikov prosecuted and prevented from working for a competitor." The discovery needed to prosecute and defend the CIR, adds Aleynikov, is virtually identical to that needed to prosecute and defend Goldman's counterclaims. (Aleynikov Br. 8)

For the reasons set forth below, I agree that each of the claims asserted in the CIR relates back to Goldman's counterclaims, and that they therefore are timely if they would have been timely on December 21, 2012.

---

[6]     Goldman argues in passing that that the Fed. R. Civ. P. 7(a) does not permit a counterclaim in reply. I do not agree. *See Pennington v. Wells Fargo Bank*, 947 F.Supp.2d 529, 533 (E.D. Pa. 2013) ("Rule 13 'in conjunction with [Rule 7(a)] . . . authorizes a counterclaim in a reply to a counterclaim of the other party. It is concomitantly clear that [Rule 7(a)] does not prohibit the pleading of a counterclaim in reply'") (citation omitted); Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1188 (3d ed) ("If the plaintiff has a claim arising from the same transaction as the one involved in the defendant's counterclaim—a claim that would constitute a compulsory counterclaim under Rule 13(a)—the plaintiff must assert it in the reply or risk being barred from bringing a later action on it.") This was a standalone action concerning attorney's fees. It was Goldman that raised the ante by injecting substantive causes of action.

1.    **Malicious Prosecution – Federal & State (Counts 1 & 5)**

Goldman admits it had notice of the malicious prosecution claim based on Aleynikov's federal prosecution. (GS Reply Br. 5) Indeed, Goldman's counterclaims included a declaratory judgment claim anticipating that very malicious prosecution claim and seeking an adjudication of non-liability. Accordingly, there can be no doubt that CIR Count 1 relates back.

CIR Count 5, the malicious prosecution claim based on the state proceeding, has not yet accrued. *See* pp. 9–10, *supra;* p. 29, *infra.* Relation back is therefore not an issue.

2.    **Abuse of Process – Federal & State (Counts 2 & 6)**

Aleynikov's abuse of process CIR based on the federal prosecution is based on virtually the same conduct as malicious prosecution: Goldman's alleged employment of federal criminal proceedings to "(i) confine[] Aleynikov to prevent any risk of competition to Goldman Sachs; (ii) make[] an example out of Aleynikov to deter any future conduct that Goldman Sachs deemed harmful to its commercial interests; and (iii) restrain[] Aleynikov from lawfully assisting a start-up company, Teza, that planned to participate in the [high frequency trading] space." (CIR ¶ 110) As noted above, Goldman cannot claim to be surprised that Aleynikov alleges that Goldman, motivated by actual malice, initiated and continued the federal criminal proceeding with the "improper motive to further its own commercial interests rather than the interests of justice." (CIR ¶ 105). Goldman itself asserted a preemptive counterclaim for a declaratory judgment that it had *not* done this, albeit under the rubric of malicious prosecution. I find that, as of December 21, 2012, Goldman had fair notice of the abuse of process claim based on the federal prosecution.

The same logic holds with respect to the abuse of process counterclaim based on the state prosecution. (CIR ¶¶ 132, 127) It is true that Goldman's counterclaim primarily focuses on the events surrounding the federal prosecution. (GS CC ¶¶32-33) But Aleynikov alleges that Goldman engaged in

substantially the same conduct (*i.e.*, relaying false information to law enforcement officers and playing an unusually prominent role) in the state prosecution as well. (CIR ¶¶ 90-95) And the conduct, transactions, and occurrences underlying the alleged theft (*i.e.*, Aleynikov's copying of computer code in June 2009) are common to both the federal and state abuse of process claims.

In short, the abuse of process counterclaim based on the state prosecution is an "offshoot[] of the same basic controversy between the parties" that is embodied in Goldman's counterclaim. *Transamerican Occidental*, 292 F.3d at 389 ("For a claim to qualify as a compulsory counterclaim [here, CIR], there need not be a precise identity of issues and facts between claim and counter claim . . . [T]he objective of Rule 13(a) is promote judicial economy, so the term 'transaction or occurrence' is construed generously to further this purpose.").

Because Goldman had fair notice of the state abuse of process CIR, which is closely related to Goldman's own malicious process counterclaim, it relates back to the date of Goldman's counterclaims.

### 3.   Tortious interference (Counts 3 & 4)

Aleynikov alleges that "Goldman Sachs directed its efforts towards convincing Teza to breach its Employment Agreement with Aleynikov" and "interfered with Aleynikov's prospective business relations . . . by provoking and instituting his malicious prosecutions for crimes he did not commit." (CIR ¶¶ 116, 121) This tortious interference claim, of course, is Aleynikov's spin on the same factual situation that, in Goldman's telling, entitled it to "pursu[e] its right to report Aleynikov's conduct" to law enforcement, protect its "legitimate economic self-interests," and recover damages for breach of contract, conversion and misappropriation of trade secrets. (GS Br. 3, GS Reply Br. 30) Goldman's counterclaim alleges that Aleynikov "resigned from GSCo. *to take a position with a competitor* and, on his way out of the door, stole proprietary source code . . . ." (GS CC ¶ 1) (emphasis added)) Aleynikov's

alleged theft of the Goldman's computer code, his relationship to Teza, and the actions Goldman took upon discovering Aleynikov's alleged misconduct are factual issues common to Goldman's counterclaims and Aleynikov's tortious interference CIR. I find that Goldman had fair notice of their factual and legal basis. Relation back is appropriate.

### 4. Defamation (Count 7)

Aleynikov argues that, to bring about his prosecution, Goldman falsely informed law enforcement officers and prosecutors that he had stolen Goldman's billion-dollar HFT infrastructure, and that Goldman knowingly maintained this lie and others throughout the federal and state prosecutions. These false statements, he says, "were defamatory per se because they falsely conveyed that Aleynikov had committed a crime and disparaged him in the way of his office, profession, and trade." (CIR ¶¶ 12, 95, 135, 136)

This count presents a closer call than the others. As a legal theory, defamation is not so naturally allied to malicious prosecution as is, e.g., abuse of process. Nevertheless, I think that Goldman had sufficient notice of Aleynikov's defamation claim. At this pleading stage, it appears that defamation under these circumstances is an alternative legal theory imposed on the same set of facts.

Throughout, Aleynikov has maintained that his dispute with Goldman essentially arises from alleged falsehoods. He has consistently accused Goldman of making false statements to investigators about the importance of Goldman's computer code, his motivations in uploading it, and so on. These falsehoods, viewed as the vehicle for the alleged malicious prosecution, may plausibly be considered to be amplifications of the allegations in Goldman's own counterclaim. Cf. Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004) (allegations that "amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading" meet the analogous relation-back test of Rule 15(c)). At any rate, the two are closely intertwined. To look at it another way, I estimate that any attempt to split off

the defamation claims and bring them in a standalone action would have met a frosty judicial reception.

I therefore find that Aleynikov's defamation claim, too, benefits from relation back.

### B.   Statute of Limitations: Particular Counts

Having found that the counts of the CIR relate back to December 21, 2012, I analyze the applicability of the statute of limitations to each.

### 1.   Malicious Prosecution – Federal & State (Counts 1 & 5)

CIR Count 1 alleges malicious prosecution in relation to the federal criminal case. Under New York law, malicious prosecution is subject to a one-year statute of limitations.[7] Aleynikov's cause of action accrued when the federal criminal proceeding terminated in his favor. *Williams v. CVS Pharmacy, Inc.*, 6 N.Y.S.3d 78 (2d Dep't 2015). That date of accrual is thus June 5, 2012. As to this claim only, Goldman concedes relation back to December 21, 2012. Because only seven months elapsed between accrual and the conceded relevant filing date, Aleynikov's federal malicious prosecution is timely. Goldman's motion to dismiss CIR Count 1 on statute of limitations grounds is denied.

Count 5, the malicious prosecution claim based on the state proceeding, has not yet accrued. *See* pp. 9–10, *supra;* p. 29, *infra.* As to that count, the statute of limitations has not yet begun to run.

---

[7]    Although New Jersey provides for a six-year statute of limitations for malicious prosecution claims, the parties agree that New York law governs (GS Br. 13, Aleynikov Br. 9), and I agree with them. *See, e.g., Pitcock v. Kasowitz, Benson, Torres, & Freidman, L.L.P.*, 426 N.J. Super 582, 589 (App. Div. 2012) (holding that New Jersey had "no substantial interest" in applying New Jersey law to malicious prosecution claim based on New York prosecution); Restatement (Second) of Conflicts of Laws § 155 ("The rights and liabilities of the parties for malicious prosecution or abuse of process are determined by the local law of the state where the proceeding complained of occurred.").

### 2.   Abuse of Process – Federal & State (Counts 2 & 6)

CIR Counts 2 and 6 allege abuse of process in relation to the federal and state criminal prosecutions. Under New York law, abuse of process claims are subject to a one-year statute of limitations.[8]

The parties disagree as to the date that Aleynikov's abuse of process claims accrued. Goldman argues that abuse of process claims accrued when the criminal processes were set in motion; Aleynikov says the claims accrued when the proceedings terminated in his favor.

In general, "favorable termination is not an element of the abuse of process." *Pinter v. City of N.Y.*, 976 F. Supp. 2d 539, 570 (S.D.N.Y. 2013). And the cases are clear that "the accrual of a cause of action for abuse of process need not await the termination of an action in claimant's favor." *Cunningham v. New York*, 53 N.Y.2d 851, 853 (1981). Although stray cases seem to lump abuse of process with malicious prosecution, the better and more persuasive view is that accrual of an abuse of process claim need not await favorable termination.[9]

---

[8]      There is conflict between New York and New Jersey law, which provides for a six-year statute of limitations. *Earl v. Winne*, 14 N.J. 119, 131-32 (1953) (applying six-year statute of limitations for abuse of process claim.) However, the parties do not dispute—and I agree—that New York has a more substantial relationship to this action, and that New York law therefore applies. (GS Br. 13, Aleynikov Br. 9). *See also* n.8, *supra*.

[9]      As one case, surveying the case law, put it: "it is far from clear that, under New York law, the one-year statute of limitations governing a cause of action for abuse of process begins to run termination of the underlying proceeding, as opposed to initiation of that proceeding." *Douglas v. N.Y. State Adirondack Park Agency*, No. 10-cv-0299, 2012 WL 5364644, at *7 (N.D.N.Y. Oct. 30, 2012).

I think that Aleynikov overstates the case, however, when he cites *Muro-Light v. Farley*, 944 N.Y.S.2d 571 (2d Dep't 2012) and *10 Ellicot Sq. Ct. Corp., v. Violet Realty, Inc.*, 916 N.Y.S.2d 705 (4th Dep't 2011), for the proposition that "New York courts have held that it is long settled that abuse of process claims, like claims for malicious prosecution, accrue when there is a determination favorable to plaintiff." (Aleynikov Br. 9-10) (internal quotations and citations omitted)) *Muro-Light* and *10 Ellicot* fail to persuade, because they themselves rest on citations to inapposite malicious prosecution case law. *See 10 Ellicot*, at 708 (citing *Lombardo v. Cnty. of Nassau*, 791

I follow the rule articulated by a number of New York federal courts: An abuse of process claim accrues "at such time as the criminal process is set in motion, unless the plaintiff is unaware, through no fault of his own, of facts supporting the claim, in which case the cause of action accrues upon discovery." *Pinter*, 976 F. Supp. 2d at 570; *see also Tchatat v. City of N.Y.*, No. 14-cv-02385, 2015 WL 5091197, at *14 (S.D.N.Y. Aug. 28, 2015); *Duamutef v. Morris*, 956 F. Supp. 1112, 1118 (S.D.N.Y. 1997). This approach, in my view, best preserves the traditional distinction between malicious prosecution and abuse of process. *See generally Keller v. Butler*, 246 N.Y. 249, 158 N.E. 510 (1927) ("[T]he difference [between malicious prosecution and abuse of process is] that in the one the initial litigation must be terminated, while in the other it is the abuse of an incidental process which has cause the unjustifiable damage and the initial proceedings need not be terminated to give a cause of action"). And the "discovery" proviso fairly accommodates the atypical case where a defendant does not find out until later that the criminal process was perverted to serve an illegitimate collateral objective.[10]

---

N.Y.S. 2d 292 (Sup. Ct. 2004) (analogizing malicious prosecution case law in an action by drunk driver seeking to recover damages from municipality after the ordinance under which his car was seized was declared unconstitutional); *Marks v. Townsend*, 97 N.Y. 590 (1885) (addressing false imprisonment and malicious prosecution claims)). *See Muro-Light* at 847 (citing *347 Cent. Park. Assoc. v. Pine Top Assoc.*, 919 N.Y.S.2d 892 (2d Dep't 2011) (addressing malicious prosecution claim)); *Camp v. Wolosin*, 622 N.Y.S.2d 291 (2d Dep't 2011) (addressing malicious prosecution claim)).

Other courts have assumed, without really deciding, that the clock begins to tick when the underlying action terminates in the claimant's favor because the claim was untimely even with the benefit of later date. *See Benyo v. Sikoorjak*, 858 N.Y.S.2d 215, 218 (2d Dep't 2008); *Beninati v. Nicotra*, 657 N.Y.S.2d 414 (1st Dep't 1999); *Bittner v. Cummings*, 591 N.Y.S.2d 429, 430-31 (2d Dep't 1992); *Village of Valley Stream v. Zulli*, 406 N.Y.S.2d 534 (2d Dep't 1978).

[10]   One New York court seems to have articulated an exception to the rule. An abuse of process claim may accrue upon favorable termination, it held, if the claimant "would not have been able to allege that he suffered an injury without justification until the proceeding was terminated." *Dobies v. Brefka*, 694 N.Y.S.2d 499, 501-502 (3rd Dep't 1999). I read this exception, however, as being consistent with the "discovery" rule stated above. At any rate, Aleynikov's case does not fall within this exception. To be sure, his allegation of injury is strengthened by the addition of a

Here, Aleynikov alleges that Goldman was involved in initiating the federal prosecution no later than July 2009, the month in which he was arrested and the criminal complaint was filed against him. (*See, e.g.*, CIR ¶¶ 2, 12, 32-33, 35, 36, 61-68, 70) He also alleges that Goldman was involved in instituting the state prosecution no later than August 2012, the month in which he was again arrested and the state criminal complaint was filed against him. (*See, e.g. id.* at ¶¶ 90-95) Aleynikov surely knew these facts at the time. At any rate, he has not alleged that he remained unaware of Goldman's involvement in these prosecution until a later date.

The limitation period for CIR Count 2, the abuse of process claim based on the federal prosecution, expired no later than July 2010, so it is time-barred. The motion to dismiss CIR Count 2 on statute of limitations grounds is therefore granted.

CIR Count 6, the abuse of process claim based on the state prosecution, was brought within the year preceding the relation-back date of December 21, 2012. The motion to dismiss CIR Count 6 on statute of limitations grounds is therefore denied.

---

favorable termination. That, however, would be true in any abuse of process case, and the exception would swallow the rule. Aleynikov claims that he always knew that Goldman's allegations against him were false, and the resulting injury—undergoing criminal prosecution—was immediately apparent.

To look at it another way, favorable termination seems to be virtually the only distinction between Aleynikov's malicious prosecution and abuse of process theories. It there is no such distinction, the abuse of process claim may be superfluous.

3.  **Tortious Interference with Contract and Prospective Economic Advantage (Counts 3 & 4)**

CIR Count 3 alleges tortious interference with contract, and Count 4 alleges tortious interference with prospective economic advantage.

Tortious interference with contract, under New York law, is subject to a three-year statute of limitations.[11] *See, e.g.*, *10 Ellicot*, 916 N.Y.S.2d at 707. The claim accrues when the claimant suffers actual damage as a result of the tortious conduct. *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 97, 595 N.Y.S.2d 931 (1992). It is not a continuing tort; that is, the statute of limitations does not restart upon on each instance of wrongdoing. *Spinap Corp., Inc. v. Cafagno*, 756 N.Y.S.2d 86, 87 (1st Dep't 2003) ("Since tortious interference with contract is not a continuing tort, it does not avail the plaintiff to argue that Cafagno continued to solicit its customers up until the time of the filing of the

---

[11]   As I observed when I ruled that New York law governed Goldman's breach of contract, misappropriation of trade secrets, and conversion counterclaims, "[v]irtually all of the relevant events, whether disputed or agreed, occurred in New York." Opinion, *Aleynikov v. Goldman Sachs Group, Inc.*, No. 12-cv-5994 (ECF No. 192). But because New Jersey has a more capacious six-year statute of limitations, Aleynikov contends that New Jersey law applies to his tortious interference CIRs. At least with respect to tortious interference with contract, I am not persuaded.

A full-blown choice of law analysis is not required to identify the error in the argument. Aleynikov contends that (1) where, as here, a federal court sits in diversity, it applies the forum state's choice of law rules; (2) New Jersey applies the "most significant relationship" where there in an actual conflict between two laws; and (3) there is an actual conflict between New Jersey and New York with respect to the statute of limitations governing tortious interference claims. *See Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir. 2007); *P.V. v. Camp Jaycee*, 197 N.J. 132 (2008). So far so good, but here is the misstep: Aleynikov argues New Jersey law should be presumed to apply under Section 150 of the Restatement (Second) of Conflict of Laws, which addresses multistate defamation communicated by book, newspaper, radio broadcast, or "similar aggregate communication". Aleynikov, however, has not alleged that Goldman disseminated any "injurious falsehoods" by aggregate communication.

With respect to balancing the factors enumerated in Section 145, Aleynikov has provided no reason (other than an inapplicable presumption that New Jersey law should govern) for me to depart from my prior analysis. *See Aleynikov v. Goldman Sachs Group, Inc.*, 6-7, No. 12-cv-5994 (ECF 192). In sum, I find that New York law applies to Aleynikov's tortious interference with contract CIR and is therefore subject to a three-year state of limitations.

complaint, or that most of the solicitations occurred in 1997, 1998, and 1999.").

As to Count 3, Aleynikov alleges that Goldman instigated federal criminal proceedings as of July 5, 2009, and that, as a result, Teza cancelled its employment agreement with Aleynikov sometime in July 2009. (CIR ¶¶ 113-122) A limitations period of three years running from July 2009 brings us only to July 2012. That is some five months before the relation-back date of December 21, 2012. CIR Count 3, Aleynikov's claim of tortious interference with contract, is therefore time-barred. The motion to dismiss CIR Count 3 on statute of limitations grounds is granted, with prejudice.

As to Count 4, the picture is less clear. Aleynikov alleges that Goldman's acts had the effect of interfering with other prospective business relationships between July 5, 2009, and December 2010, a period that overlaps the limitations period. (CIR ¶ 119) The CIR, however, does not identify these employers, state where they might be located, or specify the particular relationships interfered with. These facts, if pled, might affect the choice of law analysis. *See Camp Jaycee*, 197 N.J. at 143; Restatement (Second) of Conflict of Laws §§ 6, 145. More fundamentally, however, this lack of specificity will require dismissal of CIR Count 4 for failure to state a claim. *See* Part IV.C., *infra*.

### 4.   Defamation (Count 7)

CIR Count 7 alleges the tort of defamation. Under New Jersey law, the statute of limitations for defamation is one year.[12] Aleynikov concedes that a defamation cause of action based on any statements Goldman made before or during the federal prosecution are now time-barred. (Aleynikov Br. 15) But he

---

[12]   The parties agree that the court should default to New Jersey law, because that there is no conflict between New Jersey and New York law on this point. *Lawrence v. Bauer Pub., & Printing, Ltd.*, 78 N.J. 371, 374-75 (1979) (one-year statute of limitation for defamation); *Wilson v. Erra*, 942 N.Y.S.2d 127, 129 (2d Dep't 2012) (one-year statute of limitation for defamation).

argues that a defamation claim based on statements Goldman made during the state prosecution is timely.[13] (CIR ¶¶ 135, 136) Aleynikov focuses on one allegation: that in September 2012 Goldman made "knowingly false" statements that he "had violated the Unlawful Duplication and Unlawful Use statutes." (CIR ¶¶ 90-95) Such statements, Aleynikov says, are "defamatory per se because they falsely conveyed that Aleynikov had committed a crime and disparaged in the way of his office, profession, and trade." (CIR ¶ 136)

For its part, Goldman argues that these statements should not count for statute of limitations purposes; they were made to a law enforcement officer, and hence are subject to an absolute or qualified privilege. *See Hawkins v. Harris*, 141 N.J. 207, 289 (1997) (absolute privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of litigation; and (4) that have some connection or logical relation to the action.") That contention, a fair statement of tort law as far as it goes, nevertheless depends on facts outside the pleadings. It may be that the defamation claim would be vulnerable to a summary judgment motion. At this stage, however, I consider only whether there is an allegation of a defamatory statement within the limitations period.

Such is the case here. Aleynikov pleads that Goldman "knowingly made false statements" that Aleynikov violated the Unlawful Duplication and Unlawful Use statutes, which implied "that Aleynikov had committed a crime and disparaged him in the way of his office, profession, and trade." Aleynikov also alleges that Goldman did so sometime around September 2012, which is

---

[13]     Indeed, because the state prosecution continued into 2015, Aleynikov argues that a defamation claim might be timely even without the benefit of relation back. It is not necessary to reach that argument.

well within the one year preceding December 21, 2012. (CIR ¶¶ 135-36, 95) Allowing for relation back, *see supra,* the defamation claim is timely.[14]

### C.    Equitable Recoupment

Aleynikov next argues that, even if some or all of his CIRs are barred by the applicable statutes of limitations, they are saved to the extent that they reduce any judgment Goldman might obtain for its counterclaims. As I noted when I denied Aleynikov's motion to dismiss Goldman's counterclaims, the doctrine of equitable recoupment permits assertion, to some extent, of otherwise untimely claims. Equitable recoupment, if applicable, might thus allow Aleynikov's CIRs to proceed even if they would have been time-barred as of December 21, 2012, or indeed even if they did not relate back at all. *Aleynikov v. Goldman Sachs Group, Inc.,* No. 12-5994, at 9-10 & n. 5. Under the circumstances, however, I find that the equitable recoupment doctrine does not apply to the relevant claims.

Equitable recoupment is available by statute in New York and by common law in New Jersey. Unlike federal relation-back doctrine, equitable recoupment is limited and strictly construed. New York law provides:

> A defense or counterclaim is interposed when a pleading is not barred if it was not barred at the time the claims asserted in the complaint were interposed, except that if the defense or counterclaim arose from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the

---

[14]     Citing *Palladino ex rel. U.S. v. VNA of Southern N.J., Inc.,* Goldman argues Aleynikov has failed to plead a defamation counterclaim based on statements made during the state prosecution because he has not identified "facts sufficient to identify the defamatory words, their utterer, and the fact of their publication." 68 F. Supp. 244, 474-75 (D.N.J. 1999). However, as the court in *Palladino* recognized, "while state law may define the general substance of the pleading for a claim based on state law, it does not govern the standard of pleading." *Id.* Under Rule 8, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief" sufficient to give the defendant notice of the allegations against him and the grounds on which they are based.  Fed. R. Civ. P. Rule 8(a)(2). He has sufficiently discharged that obligation here.

> complaint depends, it is not barred to the extent of the
> demand in the complaint notwithstanding that that it
> was barred at the time the claims were asserted in the
> complaint were interposed.

N.Y. C.P.L.R. § 203(d); *LaLoggia v. Document Sec. Sys. Co.*, No. 2005/08307 2006 WL 1465595, at *2-3 (N.Y. Sup. Ct. Mar. 22, 2006) ("The recoupment doctrine is a limited one and should be narrowly construed. Thus, *even where claims arise from the same contract*, equitable recoupment will not be available where the claims do not arise from the same transaction.") (internal citations and quotations omitted) (emphasis added). Similarly, New Jersey law provides:

> [A]ny claim for recoupment must arise out of the
> *identical* transaction that provided plaintiff with a
> cause of action, and no affirmative relief may be
> granted independent of plaintiff's claim . . . . The
> defense of recoupment is never barred by the statute
> of limitations so long as the main action itself is
> timely.

*Assocs. Home Equity Servs. Inc. v. Troup*, 343 N.J. Super. 254, 271-72 (App. Div. 2001) (internal citations and quotation marks omitted) (emphasis in original)).

In addition, New Jersey and New York both recognize that "recoupment" is a concept distinct from that of "setoff." Setoff allows a timely counterclaim to recover damages in excess of an opposing claim, whether or not it arises from the same transaction or occurrence. Recoupment permits an otherwise-untimely counterclaim, but only one that arises from the same transaction, and recovery is limited to a diminution in the damages recovered by the opposing party.[15] In short, equitable recoupment is a defensive and narrow

---

15    *See, e.g.*, *Nat'l Cash Register Co. v. Joseph*, 299 N.Y. 200, 203 (1949) ("Recoupment means a deduction from a money claim through a process whereby cross demands arising out of the same transaction are allowed to compensate one another and the balance only to be recovered. Of course, such a process does not allow one transaction to be offset against another, but only permits a transaction which is made the subject of a suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as whole.")

remedy. Wright & Miller, 6 Fed. Prac. & Proc. Civ § 1401 (3d ed) ("At common law the term 'recoupment' described a claim that defendant could assert against plaintiff only if it arose from the same transaction as plaintiff's claim. It was purely defensive in character and could be used only to defeat or diminish plaintiff's recovery; recoupment could not be the basis for affirmative relief.").

Here, Goldman's counterclaims for breach of contract, conversion, and misappropriation of trade secrets arise from a series of transactions and occurrences from May 1, 2009, to June 5, 2009. During that time Aleynikov allegedly (1) told Goldman that he intended to seek employment opportunities elsewhere; (2) uploaded Goldman's computer code to an outside server; and (3) copied the code to his home computer and other devices. (GS CC ¶¶ 23-32) By contrast, Aleynikov's CIRs for federal abuse of process, tortious interference, and defamation arise from a series of transactions and occurrences that began on July 1, 2009 (when Goldman allegedly contacted the FBI), and extended for some months thereafter. (CIR ¶¶ 61-100) Surely the events alleged by Goldman are related to the *sequelae* alleged by Aleynikov—but they are not identical.

What Aleynikov's CIR seeks is best characterized as a set-off, not equitable recoupment. (*See* CIR ¶¶ 106, 117, 122, 128, 133, 138 (requesting compensatory and punitive damages)) Set-off (unlike equitable recoupment) provides no escape from the statute of limitations. And, as I have already found, Aleynikov's CIR Counts 2, 3, and 7 (to the extent it relates to the federal prosecution) are untimely.

---

(internal citations omitted); *Ins. Restoration Specialists, Inc. v. 26 Kennedy Blvd. Assocs., Ltd.*, No. L-5326-11, 2016 WL 1418113, at *3 (N.J. Super. Ct. App. Div. Apr. 12, 2016) ("Equitable recoupment is the reduction of a claim because of an offsetting claim arising out of exactly the same transaction. In contrast, a setoff is an offsetting claim arising out of a completely independent and unrelated transaction . . . . Setoffs are subject to statutes of limitations. In contrast, recoupment is never barred by the statute of limitations so long as the main action itself is timely.") (internal citations and quotations omitted).

*       *       *

Despite Aleynikov's invocation of equitable recoupment, I will therefore grant Goldman's motion to dismiss CIR Counts 2, 3, and 7 (to the extent it relates to the federal prosecution), on statute of limitations grounds. To the extent the motion is denied, that denial is without prejudice to a later reassertion of the statute of limitations based on a factual record.

## IV.   FAILURE TO STATE A CLAIM

Even if the CIR is timely filed and pled, Goldman argues, it fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

Goldman, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

Rule 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a

'probability requirement'. . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### A.    Malicious Prosecution (Counts 1 & 5)

The parties essentially agree on the elements of malicious prosecution. A plaintiff must adequately allege: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). *See also Bermudez v. City of New York*, 790 F.3d 368, 376-77 (2d Cir. 2015); *Sankin v. Abeshouse*, 545 F. Supp. 2d 324, 327 (S.D.N.Y. 2008). Goldman asserts that the complaint fails to allege that it initiated (Goldman says "controlled") the prosecutions; that probable cause was lacking; and that Goldman acted with malice.

A private party may "initiate" a prosecution by "play[ing] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Williams*, 6 N.Y.S.3d at 80. Merely lodging a complaint, or furnishing information to the police or prosecutors that turns out to be false is not tortious. *Du Chateau v. Metro-N. Commuter R.R. Co.*, 688 N.Y.S.2d 12, 15 (1st Dep't 1999). It may be tortious, however, to furnish the police or prosecutors with information that the complainant then knew to be false. *Williams*, 6 N.Y.S.3d at 81. Embedded within this concept is also a causation element. For a private party to have "initiated" the prosecution, its false information must have been the cause of the prosecution. *Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118, 128 (S.D.N.Y. 2012).

As to the federal prosecution, the initiation element is pled. Aleynikov's CIR alleges that Goldman furnished the following facts to the FBI and prosecutors, knowing them to be false; that Aleynikov committed a federal offense; that he was not authorized to copy the source code; that he copied the "entire platform" for Goldman's HFT business; that the code was worth a billion dollars; and that it empowered the person who held it to unfairly manipulate

the financial markets. (CIR ¶¶ 2, 12, 33) It also alleges that Goldman took an unusually active role in the ongoing prosecution.

As an allegation, that is sufficient; nothing more is required at this stage. Such issues as whether Goldman's information was in fact the cause of the prosecution, whether the prosecutors' decisions broke the chain of causation, and so on, are factual disputes. They must await discovery and summary judgment or trial.

Lack of probable cause, too, is adequately alleged. The CIR alleges that the facts supplied to the investigators, as outlined above, were knowingly false. It also alleges that they these facts failed to make out a criminal offense as a matter of law. At a later stage, these claims may face daunting factual obstacles. In another context, I have dismissed analogous § 1983 and *Bivens* malicious prosecution allegations as against the federal agents. (*See Aleynikov v. McSwain*, Civ. No. 15-1170 (ECF nos. 38–39, as amended, 52–53). Those agents, however, enjoyed qualified immunity, a doctrine that enables and indeed requires the Court to dispose of claims at the motion to dismiss stage. And Goldman here is alleged to have known its allegations were false, whereas the agents, who were not firsthand witnesses, might plausibly claim that they had little choice but to rely on Goldman's statements. *See id.*

Counts 1 (and 5) of the CIR allege malice in more general terms. (*E.g.*, CIR ¶ 11 ("Goldman Sachs acted maliciously, not reasonably, in advising, encouraging...."); CIR ¶ 12 ("After Goldman Sachs maliciously advised .... Agents McSwain and Casey to initiate the malicious Federal Prosecution ....")) That is not unusual. *Cf.* Fed. R. Civ. P. 9(b) (even as to heightened fraud pleading requirements, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally"). Malice also may be permissibly (though not necessarily) inferred from allegations that Goldman lacked a probable cause basis for its allegations, or purposely relayed falsehoods to the authorities. The malice element, though far from proven, is adequately alleged.

As to CIR Count 1, malicious prosecution in relation to the federal criminal case, I will therefore deny the motion to dismiss.

The malicious prosecution claim with respect to the state prosecution is parallel, but procedurally as well as factually distinct. To begin with, the element of a final decision in plaintiff's favor is lacking. The state jury convicted on one count, hung on a second, and acquitted Aleynikov on a third. The trial judge vacated the conviction, and the State has appealed from that ruling. Under the circumstances, I will stay further litigation of CIR Count 5. My reasons are essentially the same as those expressed in the parallel case against the FBI agents, incorporated here by reference. *See Aleynikov v. McSwain*, Civ. No. 15-1170 (ECF no. 38 at 26–28, as amended, ECF no. 52) (citing, *inter alia*, *Kossler v. Cristani*, 564 F.3d 181, 187 (3d Cir. 2009) (discussing favorable termination element); *Linnen v. Armainis*, 991 F.2d 1102, 1107 (3d Cir. 1993) (noting a "preference for holding federal civil rights claims in abeyance until state appellate proceedings that may affect the outcome of the federal action are decided"); *Herrera v. City of New Brunswick*, Civ. No. 04-3002, 2008 WL 305275, at *10 (D.N.J. Feb. 1, 2008) (staying § 1983 malicious prosecution claim pending the outcome of defendant's appeal of her conviction)).

As to CIR Count 5, the motion to dismiss is administratively terminated without prejudice. Proceedings as to Count 5 are stayed pending the outcome of the State appeal.

## B.     Abuse of Process – State (Count 6)

The parties largely agree as to the three elements of abuse of process: "(1) regularly issued process, either criminal or civil, (2) an intent to do harm without excuse of justification, and (3) use of process in a perverted manner to obtain a collateral objective."[16] *Curiano v. Souzzi*, 63 N.Y.2d 113, 116 (1984);

---

[16]     New York law applies because there is an actual conflict between the elements of abuse of process in New York and New Jersey, and New York has a more substantial relationship to this action. *See Stolinski v. Pennypacker*, 772 F. Supp. 2d 626 (D.N.J. 2011) ("The establish a claim for abuse of process, Plaintiff must show: "(1)

*see also Savnio v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (restating the third element as "in order to obtain a collateral objective that is outside the legitimate ends of the process"). Goldman asserts that Alyenikov has not adequately alleged (1) that Goldman abused the state criminal proceedings after they were commenced, or (2) that Goldman used the proceedings for an illegitimate collateral objective. (GS Br. 24)

The parties disagree as to whether, as a matter of law, any abuse must have occurred *after* the state criminal proceeding commenced. Like the accrual issue discussed above, that is an open question under New York law. *See Parkin v. Cornell Univ. Inc.*, 78 N.Y.2d 523, 530 (1991) (noting that "nothing in this Court's holdings would seem to preclude an abuse of process claim based on the issuance of the process itself."). Goldman argues, however, that I am bound by *Cook v. Sheldon*, 41 F.3d 73 (2d Cir. 1994). There, in the process of holding that abuse of process claims can be brought under 42 U.S.C. § 1983, the U.S. Court of Appeals for the Second Circuit observed that "the gist of the action for abuse of process lies in the improper use of process after it is issued." *Id.* at 80 (citing New York Pattern Jury Instructions from 1968)). Some federal district courts within the Second Circuit have thought themselves bound by that language; others have not.[17] The most recent statement from a

---

an ulterior motive and (2) some further act after issuance of process representing the perversion of the legitimate use of process"). *See* n.7 & 8, *supra*.

[17]    *E.g. Gilman*, F. Supp. at 131-32 (recognizing the *Parkin* dicta but ruling that "this Court is bound by the law of the Circuit" and *Parkin* "does not alter the established law governing malicious abuse of process claims") (quoting *Richardson v. N.Y.C. Health and Hospital Corp.*, No. 05-cv-6278, 2009 WL 804096 (S.D.N.Y. Mar. 25, 2009) (internal quotations omitted); *Widget v. Town of Poughkeepsie*, No. 12-cv-3459, 2013 WL 1104273, at *8 n.7 (S.D.N.Y. Mar. 18, 2013) (citing *Gilman*); *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 213 (S.D.N.Y. 2014) (citing *Richardson* and *Gilman*); *but see, e.g., Crockett v. City of N.Y.*, No. 11-cv-4378, 2015 WL 5719737, at *10 (E.D.N.Y. Sept. 29, 2015) (recognizing the *Parkin* dicta and ruling that a "a jury could find that Plaintiff's alleged false arrest, if executed by the Defendant-Officers for a 'collateral objective outside the legitimate ends of the process', satisfies the first element of an abuse of process claim"); *TADCO Construction Corp. v. Dormitory Auth. of N.Y.*, 700 F. Supp. 2d 253, 272 (E.D.N.Y. 2010) (ruling that plaintiff plausibly alleged abuse of process claim in light of *Parkin* dicta and the split of

New York appellate court suggests that *Cook* may have it right: "In general, such a claim will only lie for improperly using process after it is issued." *Place v. Ciccotelli*, 995 N.Y.S.2d 348, 551 (3d Dep't 2014).

But because Aleynikov pleads that Godman abused the state criminal process both before and after it was initiated, this issue need not be resolved now. The CIR alleges that Agent McSwain knowingly made false statements to obtain an arrest warrant and presented false testimony before a grand jury at Goldman's "behest and with its advice, encouragement, and importuning." It *also* alleges that Goldman "played an active role in and was integrally involved in all stages of the investigation and State Prosecution of Aleynikov, taking steps that included . . . engaging counsel who met with and assisted state prosecutors and who attended Aleynikov's trial." (CIR ¶¶ 91, 98) Aleynikov further alleges that Goldman representatives falsely testified that "Aleynikov intended to and did appropriate valuable computer code to Goldman Sachs's HFT platform." (*Id.* ¶ 98) That is enough to sustain CIR Count 6 at this stage.

The collateral objective element, too, is pled. "[T]o state a claim for abuse of criminal process . . . [the plaintiff] must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino*, 331 F.3d 78. Aleynikov alleges that Goldman's objectives included "confining Aleynikov to prevent any risk of competition to Goldman"; "making an example out of Aleynkov to deter any future conduct that Goldman Sachs deemed harmful to its commercial interests"; and "restraining him from lawfully assisting a start-up company, Teza, that planned to participate in the HFT space." (CIR ¶¶ 110, 132)

Goldman protests that these are not collateral objectives, but "the very goals for which the criminal processes are designed." (GS Br. 25; GS Reply. Br.

---

authority on this issue); *Giannattasio v. Artuz*, No. 97-civ-7606, 2000 WL 335242, at *7 (S.D.N.Y. Mar. 30, 2000) ("In light of the Court of Appeals' observation in *Parkin*, proof of a defendant's actions *after* the process has been issued is not required for an abuse of process claim.") (emphasis in original)).

28) In a general sense it is true that the criminal law protects, *inter alia*, certain commercial and property rights. But the purposeful infliction of economic harm and squelching of lawful competition are beyond the legitimate purposes of a criminal prosecution, which is brought on behalf of the state, not a private party. *See TADCO*, 700 F. Supp. 2d at 272 (denying motion to dismiss where the complaint alleged that defendant had plaintiff arrested and charged with trespassing "in order to intimidate and frustrate [plaintiffs] and thereby obtain an advantage over them in the ongoing contractual and construction disputes"); *Del Col v. Rice*, No. 11-cv-5138, 2012 WL 6589839, at *9-10 (E.D.N.Y. Dec. 18, 2012) (sustaining allegations that defendants unjustifiably initiated criminal proceedings against the plaintiff for the purpose of gaining control of plaintiff's claim to a patent). Drawing all reasonable inferences in Aleynikov's favor and accepting his allegations as true, I find that the CIR alleges the elements of abuse of process. Goldman's motion to dismiss CIR Count 6 is denied.[18]

---

[18]    Goldman also argues that Aleynikov's allegations that Goldman acted with an intent to do harm without justification (element two) are "threadbare recitals." *Iqbal*, 556 U.S. at 678. But, as noted above, malice is pled generally throughout the complaint and can be inferred from allegations that Goldman lacked a probable cause or purposely relayed falsehoods to the authorities. He also alleges that Goldman initiated the state prosecution to "make an example out of him." (CIR ¶¶ 110, 132). The second element of abuse of process is pled adequately. *See TADCO*, 700 F. Supp. 2d at 272.

**C. Tortious Interference with Prospective Economic Advantage (Count 4)**

The parties disagree whether New York or New Jersey law governs the CIR Count 4, tortious interference with economic advantage.[19] The distinction, however, makes no difference. Aleynikov has failed to adequately plead this claim under either state's substantive law.

Aleynikov alleges that, between July 2009 and December 2010, he had "business relations with prospective employers as reflected in his interviews for programming positions." (CIR ¶ 119) As noted above, absent from the CIR are key facts, such as the identities of those employers, their relationship to Aleynikov, the nature of the jobs for which he allegedly interviewed, and the prospective employers' level of interest. There are no allegations that any of the positions he interviewed for involved high-frequency trading. Besides the bare allegation that he "lost job opportunities" and income because of Goldman's conduct, there is no allegation that any of these unidentified employers actually offered or were likely to offer him a job. (CIR ¶¶ 122) Nor is there any allegation that Goldman knew about or had reason to know about these interviews. (*Compare* CIR ¶¶ 113 *with* 118-122)

Under New York law, such deficiencies are fatal to a claim of tortious interference with prospective economic advantage. *See, e.g., Plasticware, LLC v. Flint Hills Resources, LP* 852 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2012) ("There

---

[19]    Under New York law, Aleynikov must allege that "(1) it had a business relationship with a third party, (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means, and (4) the defendant's interference caused injury to the relationship." *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003), *certified question answered*, 3 N.Y.3d 182 (2004). In New Jersey, Aleynikov must allege (1) "a reasonable expectation of economic benefit or advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff would have received the anticipated economic benefit, and (5) damages resulting from the defendant's interference. *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171 (3d Cir. 1992) (citing *Printing Mart–Morristown v. Sharp Elec. Corp.*, 116 N.J. 739 (N.J.1989) and Restatement (2d) of Torts § 766B)).

are several deficiencies in Plaintiff's complaint. First, Plaintiff has not adequately alleged *specific* business relationships with which the Defendant allegedly interfered.") (emphasis in original)); *Burns Jackson Miller Summit & Spitzer v. Linder*, 452 N.Y.S.2d 80, 93 (2d Dep't 1988) ("[E]ven in [this tort's] most liberal formulation, the relationships must be specified, as must the defendant's knowledge and interference."). And while New Jersey courts tend be more generous at the motion to dismiss stage, the tort still requires an allegation that the defendant knew about plaintiff's relationship with the third party and a proffer of facts "giving rise to some reasonable expectation of economic advantage." *Printing Mart*, 116 N.J. at 751.[20] That Aleynikov interviewed with some unknown employers in unknown fields for an unspecified position for which he may never have been likely to receive an offer

---

[20]    Aleynikov is correct that a number of New Jersey courts have ruled that a plaintiff need not identify the specific third parties with which she was prevented from interacting. But in these cases, the plaintiff actually alleged with some particularity the nature of economic benefit she was wrongfully denied, and that the defendant knew of that benefit. *See, e.g., Church v. Dwight Co., v. SPD Swiss Precision Diagnostics GmBH*, Civ. No. 10-453, 2010 WL 5239238, at *4 (D.N.J. Dec. 16, 2010) (denying motion to dismiss where plaintiff alleged "ongoing and expected sales to the public at large" and that defendant knew of plaintiff's reasonable expectation of economic benefit); *Teva v. Pharmaceutical Indust. Ltd., v. Apotex, Inc.*, Civ. No. 07-5514, 2008 WL 3413862, at *9 (D.N.J. Aug. 8, 2008) (denying motion to dismiss where plaintiff alleged that had a "continuing, economically advantageous relationship with the supply of carvedilol for use in its carvedilol products" and defendant "knowingly interfered with this relationship by filing lawsuits for the purpose of barring others from beginning or continuing to supply carvedilol.") (internal quotations omitted); *Slim CD, Inc. v. Heartland Payment Sys., Inc.*, Civ. No. 06-2256, 2007 WL 2459349, at *3 (D.N.J. Aug. 24, 2007) (denying motion to dismiss where plaintiff alleged that it "could sell all or part of [its] company to a successor or potential acquirer" and that defendant "had knowledge of such expectations because [plaintiff] notified [defendant] that '[defendant's] failure to accept [plaintiff's] software and satisfy other provisions of the Contract threatened to undermine the sale of all or part of [plaintiff] to a successor or potential acquirer.'"); *Syncosort v. Innovative Routines, Int'l, Inc,*. No. Civ. 04-3634, 2005 WL 1076043, at *12 (D.N.J. May 6, 2005) (denying motion to dismiss where defendant alleged that plaintiff "induced prospective customers of defendant to breach non-disclosure agreements they had entered into with defendant for the purpose of learning pricing information so that plaintiff could sell its product to those consumers at a lower price" and had offered to provide "a free copy of plaintiff's product and to pay off any debt that customer owed to defendant" to a prospective customer).

at some time between July 2009 and December 2010 is not sufficient to establish that he had a reasonable expectancy of an economic advantage.

As to CIR Count 4, then, Goldman's motion to dismiss is granted. This dismissal on pleading grounds is without prejudice to the filing within No wo of an amended CIR that remedies the deficiencies of Count 4.

### D.    Defamation (Count 7)

CIR Count 7 alleges the tort of defamation with respect to Goldman's statements in connection with the federal and state prosecutions. Aleynikov concedes that the allegations regarding the federal prosecution are time-barred, and they have been dismissed. *See* Section III.B.4, *supra.* I deal here with the state aspect only.

The elements of defamation under New Jersey law[21] are well-settled: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 558 (2009). The CIR alleges that that Goldman relayed to Agent McSwain "knowingly false allegations" that he "had violated the Unlawful Duplication and Unlawful Use Statues". (CIR ¶ 95) Goldman says that this fails to set forth the first element of defamation because it is a non-actionable statement of opinion.

""Whether the statement is susceptible of a defamatory meaning is a question of law for the court." *Ward v. Zelikovsky,* 136 N.J. 516, 529 (1994). "In making this determination, courts must consider three factors: (1) the content, (2) the verifiability, and (3) the context of the challenged statement." *DeAngelis v. Hill,* 180 N.J. 1, 14 (2004). To qualify as defamatory, the statement must be capable of being proven true or false. *Mangan v. Corporate Synergies Grp.,*

---

[21]    Because the elements of defamation in New Jersey and New York do not conflict, I default to New Jersey law. *Kersey v. Becton Dickinson, Co.,* 433 F. App'x 105, 109-110 (3rd Cir. 2011).

*Inc.*, 834 F. Supp. 2d 199, 204–05 (D.N.J. 2011) (quoting and citing *Lynch v. N.J. Educ. Assoc.*, 161 N.J. 152, 167 (1999)). "Certain kinds of statements, however, denote such defamatory meaning that they are considered defamatory as a matter of law. The false attribution of criminality is a prime example of such a statement." *Ciemniecki v. Parker*, Civ. No. 09-6450, 2010 WL 2326209, at *9 (D.N.J. June 7, 2010) (quoting and citing *Romaine v. Kallinger*, 109 N.J. 282 (1988) (internal citations and quotations omitted)). "Furthermore, one who falsely and without privilege to do so publishes a slander which ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, or profession is liable for slander per se." *Solokay v. Edlin*, 65 N.J. Super 112, 216 (App. Div. 1961).

The statement that Aleynikov committed a crime is susceptible of a defamatory meaning. Relying on cases involving disputes under the Lanham Act, Goldman argues that its statement that Aleynikov violated the Unlawful Use and Unlawful Duplication statutes is a legal opinion that cannot be proven true or false. *See Coastal Abstract Serv., Inc. v. First Am. Title. Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) ("Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by lay persons that purport to interpret the meaning of a statue or regulation are opinion statements, and not statements of fact."); *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230-31 (3d Cir. 1990).

But the alleged statement that "Aleynikov violated the Unlawful Use and Unlawful Duplication statutes" was made in a factual context. That context is that Goldman was accusing Aleynikov of outright thievery. Consider, for example, Smith's statement that Jones "stole" his car. That statement is susceptible of a defamatory meaning, even if Jones says that he was joyriding or that he had Smith's implied permission to borrow the car. What Goldman was saying—accurately, it says, though Aleynikov says not—is that Aleynikov, a successful programmer, took valuable computer code from Goldman without authorization to shop his services to a competitor. (CIR ¶ 58, GS CC ¶¶25-31)

Whether Aleynikov did that is indeed an issue of fact. That he took the code without authorization is a falsifiable proposition. And if false, it has the obvious potential to harm Aleynikov in his business, profession and trade.

As noted above, there may be factual and legal hurdles, such as privilege, that Aleynikov will need to face at later stage. For now, taking the allegations as true and drawing all reasonable inferences in Aleynikov's favor, I find that the elements of defamation are pled. Goldman's motion to dismiss CIR Count 7 (to the extent it relates to statements made in connection with the State criminal proceeding) is denied.

## V.   CONCLUSION

For the foregoing reasons,

1) Goldman's motion to strike the CIR as untimely pled is DENIED.

2) Goldman's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is GRANTED IN PART, DENIED IN PART, and ADMINISTRATIVELY TERMINATED IN PART, as follows:

(a) The motion to dismiss on statute of limitations grounds is GRANTED as to CIR Counts 2 and 3, which are dismissed with prejudice;

(b) The motion to dismiss is GRANTED as to CIR Count 4, which is dismissed without prejudice to the filing within 30 days of an amended CIR that remedies the deficiencies of CIR Count.

(c) The motion to dismiss is DENIED as to CIR Count 7 to the extent it relates to statements made during the state criminal proceeding, and GRANTED on consent to the extent CIR Count 7 relates to statements made during the federal criminal proceeding.

(d) The motion to dismiss is DENIED as to CIR Counts 1 and 6.

(e) The motion to dismiss is ADMINISTRATIVELY TERMINATED WITHOUT PREJUDICE as to CIR Count 5, and proceedings on CIR Count

5 are STAYED pending the outcome of the New York State criminal appeal.

An appropriate Order is filed with this Opinion.

Dated: October 28, 2016

**KEVIN MCNULTY**
**United States District Judge**