UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

SERGEY ALEYNIKOV,

    Plaintiff,

vs.

THE GOLDMAN SACHS GROUP, INC.,

    Defendant.

Civ. No. 2:12:-cv-5994-KM-MAH

OPINION

### KEVIN MCNULTY, U.S.D.J.:

Plaintiff Sergey Aleynikov sues the Goldman Sachs Group ("GSG"), the parent company of his former employer, seeking advancement and indemnification of legal costs in connection with criminal proceedings brought against him. The GSG bylaws mandate advancement and indemnification of legal fees for "officers" involved in legal proceedings arising from their employment with the company. Mr. Aleynikov, whose position bore the designation of vice president, claims he was an "officer" within the meaning of the bylaws; GSG disagrees, stating that it awards the title of vice president to ordinary employees. I write here for the parties, and have already written several opinions in this and related matters. Familiarity with the background is therefore assumed.

This court granted summary judgment to Mr. Aleynikov on the officer/fee advancement issue. The Third Circuit overturned that decision, holding that this Court had misapplied Delaware state law. In a later, related action, the

1

Delaware Chancery Court conducted a summary bench trial. While expressing misgivings about the correctness of the Third Circuit's interpretation of Delaware law, the Delaware court nevertheless held that it was bound, via *res judicata*, by the Third Circuit's decision. Mr. Aleynikov, it held after trial, was not an "officer" entitled to advancement and indemnification. The Delaware Supreme Court affirmed.

Now, back in this Court, Goldman is making a sort of issue preclusion double-bank-shot. Goldman claims the Third Circuit decision on appeal from this Court bound the Delaware court—and that the Delaware court decision now binds this Court. Mr. Aleynikov responds that I remain free to deem him an officer under the GSG bylaws, and should do so. For the reasons stated herein, I will grant Goldman's motion and deny the motion of Aleynikov.

## I. BACKGROUND[1]

### A. Criminal Cases Against Mr. Aleynikov

Plaintiff Sergey Aleynikov worked at Goldman, Sachs & Co. ("GSCo") from 2007 to 2009. (Compl. ¶¶ 10, 15). He worked as a computer programmer and held the title of "vice president." (Compl. ¶ 15).[2] Mr. Aleynikov was charged in a criminal complaint for allegedly transferring source code out of GSCo. (Compl. ¶ 17). He was indicted by a federal grand jury and convicted under the National Stolen Property Act, 18 U.S.C. § 2314, and the Economic Espionage Act, 18

---

[1] For the reasons stated above, this is a condensed version of the procedural history. Certain citations to the record are abbreviated as follows:

   Compl. = Verified Complaint (ECF No. 1)

   Def. Br. = Memorandum of Law in Support of Motion of the Goldman Sachs Group, Inc. for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) and for Partial Stay of Discovery (ECF No. 344-1)

   Pl. Br. = Memorandum of Law in Opposition to the Goldman Sachs Group, Inc.'s Motion for Judgment on the Pleadings and a Partial Stay of Discovery and in Support of Sergey Aleynikov's Cross-Motion for Judgment on the Pleadings (ECF No. 347)

[2] The Third Circuit noted that GSCo employs tens of thousands of employees, approximately one-third whom hold the title of "vice president." *See Aleynikov v. Goldman Sachs Group*, 765 F.3d 350, 354 (3d Cir. 2014).

2

U.S.C. § 1831. (Compl. ¶¶ 17-22); *see United States v. Aleynikov*, 737 F. Supp. 2d 173 (S.D.N.Y. 2010). The U.S. Court of Appeals for the Second Circuit reversed his convictions, holding that his conduct did not violate federal law. *United States v. Aleynikov*, 476 F. App'x 473 (2d Cir. 2012). In that case, Mr. Aleynikov allegedly incurred legal fees and expenses exceeding $2.3 million. (Compl. ¶ 26).

Mr. Aleynikov was promptly re-indicted based on the same facts, this time by a New York state grand jury for violations of New York law. That state case, too, was tried. The jury was unable to reach a unanimous verdict on the first count (unlawful use of secret scientific material), returned a guilty verdict on the second count (unlawful use of secret scientific material), and reached a not-guilty verdict on the third count (unlawful duplication of computer related material). *People v. Aleynikov*, 15 N.Y.S. 3d 587 (N.Y. Sup. Ct. 2015). Mr. Aleynikov moved the trial court for an order of dismissal. *Id.* The court granted Aleynikov's motion, finding insufficient evidence, and dismissed the first and second counts. The New York Supreme Court, Appellate Division, reversed that order of dismissal. *People v. Aleynikov*, 48 N.Y.S.3d 9 (App. Div. 2017). It reinstated the jury's verdict and remanded the matter for sentencing. That remand has not occurred, however, because on April 20, 2017, the New York Court of Appeals granted leave to appeal. *People v. Aleynikov*, 80 N.E.3d 410 (N.Y. 2017). That appeal has been argued and a decision is pending.

### B. DNJ Advancement and Indemnification Action

On September 25, 2012, Mr. Aleynikov sued Goldman Sachs Group ("GSG"), the parent company of GSCo, in the District of New Jersey; he sought advancement and indemnification for legal fees, as well as "fees on fees" associated with obtaining that relief. *Aleynikov v. Goldman Sachs Group, Inc.*, 2013 WL 5739137 (D.N.J. Oct. 22, 2013); (ECF No. 1).[3] He argued that he was entitled to mandatory indemnification and advancement under GSG's bylaws

---

3   At the time, the federal conviction had been reversed by the Second Circuit and the New York State charges were pending in the trial court.

3

as an "officer." (Compl. ¶ 31). This court granted summary judgment for Mr. Aleynikov. 2013 WL 5739137; *see also* 2012 WL 6603397 (Dec. 14, 2012).

That grant of summary judgment was reversed by the U.S. Court of Appeals for the Third Circuit. *Aleynikov v. Goldman Sachs Group, Inc.*, 765 F.3d 350 (3d Cir. 2014). The Third Circuit, over a dissenting opinion by Judge Fuentes, found that (a) fact issues remained as to whether Mr. Aleynikov was an "officer" for the purposes of GSG's advancement and indemnification provision and (b) that, for purposes of construing that provision, the doctrine of *contra proferentem* was inapplicable. *Id.* The Court of Appeals reasoned as follows:

> [C]ontra proferentem applies to determine the scope of a person's rights under a contract which they had no role in drafting; it does not suggest that the doctrine applies to determine whether a person has rights and obligations under—i.e., whether he or she is a party to or beneficiary of—a contract.

*Id.* at 366.[4]

On remand, Aleynikov renewed his motion for summary judgment, citing the views on *contra proferentem* and related public policy grounds expressed in Judge Fuentes's dissent. I denied that motion, holding that the statements in the dissent did not detract from the majority's overruling of my prior decision.[5]

---

[4] The contract-interpretation doctrine of *contra proferentem* instructs courts to construe any ambiguities against the drafter. As noted in my prior opinion, the doctrine has been applied to corporate bylaws. It is not contested, of course, that Mr. Aleynikov was employed by a Goldman entity. In stating that the doctrine does not apply to a determination of who is a party or beneficiary, the Third Circuit treated the indemnification provision within the bylaws, or possibly the bylaws themselves, as the relevant "contract."

[5] I am confirmed in that conclusion by the dissenting opinion of Judge Fuentes. Judge Fuentes first states that the term "officer" is ambiguous, but states his belief "that Delaware has clearly stated the rule for deciding between competing interpretations of an ambiguous term: courts should construe the ambiguous term in the corporate instrument against the drafter...." 765 F.3d at 368. Woven through the rest of the dissent is a discussion of Delaware's strong public policy in favor of advancement. The tenor throughout, however, is that consideration of public policy should inform the court's analysis and tip it the other way:

4

## C. Delaware Advancement Action

On February 10, 2015, Mr. Aleynikov instituted a related action in Delaware Chancery Court to obtain advancement for legal fees incurred while defending counterclaims brought by GSG against Aleynikov, as well as related "fees on fees." *Aleynikov v. Goldman Sachs Group, Inc.*, No. 10636-VCL (Del. Ch. July 13, 2016). The Delaware Chancery Court issued its decision on July 13, 2016. The learned Vice Chancellor ("VC") J. Travis Laster, applying New Jersey issue preclusion law, found that the Third Circuit's prior decision precluded the Delaware Chancery Court from applying the doctrine of *contra proferentem*. *Id.* at *2-3.

VC Laster wrote, however, that "I am personally inclined to think that this case presents precisely the type of situation where the doctrine of *contra proferentem* should and does apply." *Id.* at *3. VC Laster thoroughly explicated his view of applicable Delaware law, stating in effect that he, writing on a clean slate, would disagree with the Third Circuit's view. *Id.* Nonetheless, holding that "issue preclusion prevent[s] relitigation of wrong decisions just as much as right ones," VC Laster applied the Third Circuit's analysis and declined to apply *contra proferentem*. *Id.* at *8.

VC Laster tried the factual issues. Without the benefit of *contra proferentem*, VC Laster held, he was bound to find that the evidence of whether Mr. Aleynikov qualified as an officer was "in equipoise." *Id.* at *9. Thus, "[b]ecause Aleynikov had the burden of proof, he failed to prove that someone

---

"I believe Delaware law compels this conclusion, as does the public policy animating Delaware's interpretation of governing documents," *id.* at 368; "applying [*contra proferentem* ] ... furthers Delaware public policy by encouraging clearer drafting, and by protecting the reasonable expectations of the relevant stakeholders," *id.* at 371; "[t]he distinction drawn by the majority not only lacks any basis in Delaware law, it also lacks any clear policy rationale," *id.* at 373 (Fuentes, J., dissenting). At any rate, the public policy issue that Aleynikov raises now was at the very heart of the disagreement between the majority and the dissent. And the dissenting view, by definition, did not prevail.

*Aleynikov v. Goldman Sachs Grp., Inc.*, No. CIV. 12-5994 KM-MAH, 2015 WL 225804, at *2 (D.N.J. Jan. 16, 2015).

5

who held the bare title of 'Vice President,' but who otherwise held a position with the responsibilities of an employee, qualified as an officer for purposes of advancement under the Bylaws." *Id.*

Mr. Aleynikov appealed VC Laster's decision to the Delaware Supreme Court, which affirmed his application of issue preclusion. *Aleynikov v. Goldman Sachs Group, Inc.*, 155 A.3d 370 (Del. 2017) (unpublished table opinion). The Delaware Supreme Court noted that while VC Laster "express[ed] concern on whether the Third Circuit's ruling accorded with Delaware Law, [he] applied the appropriate principles of law and concluded that he was not free to re-adjudicate issues already decided in the federal action." *Id.*

### D. Return to DNJ

On March 10, 2017, GSG returned to this Court and moved for judgment on the pleadings in this advancement and indemnification action. (ECF No. 344). Mr. Aleynikov, too, moved for judgment on the pleadings. (ECF No. 347). This case has been through many twists, turns, and reversals of fortune, and each party, when it deemed itself to have the advantage, sought to enshrine it in a binding ruling. The court's instinct was therefore to await the final outcome in the New York proceedings before ruling further. (ECF no. 364 (administratively terminating motions without prejudice)). In response to the Court's inquiry, however, counsel for both parties agreed that this motion may be decided without the benefit of the ultimate decision of the New York Court of Appeals. (ECF nos. 364, 365, 366) The motions have therefore been reinstated (ECF nos. 370, 371), and I address them now. The essential dispute is whether the prior Third Circuit and Delaware decisions preclude relitigation of the issue of whether Mr. Aleynikov, who held the position of vice president, was an "officer" under the GSG bylaws.

## II. LEGAL STANDARDS

### A. Motion for Judgment on the Pleadings

A motion for judgment on the pleadings is often indistinguishable from a motion to dismiss, except that it is made after the filing of a responsive pleading. Fed. R. Civ. P. 12(h)(2) "provides that a defense of failure to state a claim upon which relief can be granted may also be made by a motion for judgment on the pleadings." *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Accordingly, when a Rule 12(c) motion asserts that the complaint fails to state a claim, the familiar Rule 12(b)(6) standard applies (making due allowance, of course, for any factual allegations that are admitted in the responsive pleading). *Id.* Thus, the moving party bears the burden of showing that no claim has been stated. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

I thus take allegations of the complaint as true and draw reasonable inferences in the light most favorable to the nonmoving party. *Philips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). I am also permitted to consider "extraneous documents that are referred to in the complaint or documents on which the claims in the complaint are based" without converting this motion into one for summary judgment. *Morano v. BMW of N. Am., LLC*, 928 F. Supp. 2d 826, 830 (D.N.J. 2013) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1996 (3d Cir. 1993)). In particular, I may take notice of the Delaware courts' opinions:

> [O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Funk v. Commissioner*, 163 F.2d 796, 800-01 (3d Cir. 1947) (whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case).

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.

The existence of those Delaware state court opinions is therefore noted. The legal effect of those opinions, however, is the issue to be decided here.

### B. Issue Preclusion

Issue preclusion "prevents parties from relitigating an issue that has already been actually litigated." *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007). "[T]he principle is simply that later courts should honor the first actual decision of a matter that has been actually litigated." 18 Wright & Miller, *Federal Practice & Procedure* § 4416 (3d ed. 2016). This doctrine ensures that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979); *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979); *Burlington N. R.R. v. Hyundai Merchant Marine Co.*, 63 F.3d 1227, 1232 (3d Cir. 1995).

Issue preclusion has four essential elements:

(1) [T]he issue sought to be precluded [is] the same as that involved in the prior action;
(2) that issue [was] actually litigated;
(3) it [was] determined by a final and valid judgment; and
(4) the determination [was] essential to the prior judgment.

*Peloro*, 488 F.3d at 175 (quoting *Burlington N. R.R.*, 63 F.3d at 1231-32).

The policies underlying issue preclusion include securing peace for the parties and promoting the courts' efficient resolution of claims. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). Thus issue preclusion is concerned with "the defendant's interest in avoiding the burdens of twice defending a suit," and also "the avoidance of unnecessary judicial waste." *Arizona v. California*, 530 U.S. 392, 412-13 (2000) (citing *United States v. Sioux Nation of Indians*, 448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting)). Moreover, as the first Justice

8

Harlan long ago explained, issue preclusion is necessary to the civil courts' functioning as effective tribunals:

> This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them.

S. Pac. R.R. Co. v. United States, 168 U.S. 1, 49 (1897).

### III. DISCUSSION

The parties disagree as to whether the prior Third Circuit and Delaware decisions preclude relitigation of Mr. Aleynikov's status as an "officer" under the GSG bylaws.

The Third Circuit held that *contra proferentem*, which mandates that an ambiguity be construed against the drafter who created it, cannot be applied in this case. *Aleynikov*, 765 F.3d at 355, 367. According to the Third Circuit, the doctrine is ruled out as a matter of Delaware law:

> [C]ontra proferentem has no application in resolving whether a person has rights under the contract at all—here, whether Aleynikov is an officer of GSCo. Applying the doctrine of *contra proferentem* in this circumstance would put the cart before the horse. It would have us resolve ambiguities in favor of a non-drafting individual in order to determine whether that non-drafting individual was even subject to the agreement.

*Id.* at 367 (footnote omitted). Applying the Third Circuit's view of Delaware law, the Delaware court held a trial and found that Mr. Aleynikov was not an officer. *Id.*; *Aleynikov v. Goldman Sachs Group, Inc.*, 155 A.3d 370 (Del. 2017) (unpublished table opinion); *Aleynikov v. Goldman Sachs Group, Inc.*, No. 10636-VCL (Del. Ch. July 13, 2016). GSG argues that issue preclusion and claim preclusion bar Mr. Aleynikov from relitigating that issue here. (Def. Br.).

Mr. Aleynikov disagrees. He argues that this court is not bound by the Third Circuit or Delaware decisions; rather, this court can and should apply *contra proferentem* because of certain statements in the Delaware Chancery Court opinion. Mr. Aleynikov's reasoning has five essential steps:

(1) Delaware courts, applying New Jersey issue-preclusion rules, had to apply the Third Circuit's decision barring the application of *contra proferentem*.

(2) But for the issue-preclusive Third Circuit decision, Delaware courts would have applied *contra proferentem*.

(3) This court should apply Delaware issue preclusion law.

(4) This court can (and should) apply *contra proferentem* because (a) whether Mr. Aleynikov met the burden of proof that he was an "officer" is a question of law, and the Delaware version of issue preclusion does not apply to issues of law; or, alternatively, (b) a federal district court must follow the law as set forth in an intervening state court decision.

(5) Thus, the parties can relitigate here whether Mr. Aleynikov was an "officer" and the court can apply *contra proferentem* in adjudicating that issue.

I first address **(A)** whether issue preclusion generally prevents the parties from relitigating whether Mr. Aleynikov was an officer. I then consider **(B)** Mr. Aleynikov's cross-motion, which argues that an intervening decision of state law undercuts the basis for issue preclusion.

### A. Issue Preclusion

The Federal Full Faith and Credit Statue, 28 U.S.C. § 1738, "obliges federal courts to give the same preclusive effect to a state-court judgment as would the courts of the State rendering the judgment." *McDonald v. West Branch*, 466 U.S. 284, 287 (1984); *see Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1562 (3d Cir. 1994). Therefore, I will apply the issue preclusion

10

rules of Delaware to determine the preclusive effect of the Delaware decisions. Under Delaware law, issue preclusion applies if:

> (1) the issue sought to be precluded [is] the same as that involved in the prior action;
>
> (2) that issue [was] actually litigated;
>
> (3) [the issue was] determined by a final and valid judgment; and
>
> (4) the determination [was] essential to the prior judgment.

*Acierno v. New Castle Cty.*, 679 A.2d 455, 459 (Del. 1996) (citing *Graham v. IRS*, 973 F.3d 1089, 1097 (3d Cir. 1992)). Where the parties are engaged in multiple pending actions involving the same issue, "it is the first final judgment rendered in one of the actions which becomes conclusive in the other action, regardless of which action was brought first." Restatement (Second) of Judgments § 27, cmt. *l*; *see also M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 520 (Del. 1999) ("Irrespective of [which...] *action* is decided first, the doctrine of collateral estoppel provides repose by preventing the relitigation of an *issue of fact* previously decided." (emphasis added)).

### i. Same Issue

The Delaware action and this action involve the same issue. In the Delaware action, Mr. Aleynikov sought a determination that he was an "officer" under the SGS bylaws and thus was entitled to an advancement of certain legal fees. *Aleynikov*, No. 10636-VCL. In this action, Mr. Aleynikov seeks a determination that he was an "officer" under the same SGS bylaws to receive advancement and indemnification of other legal fees. (Compl.; Pl. Br.).

### ii. Actually Litigated

The issue of whether Mr. Aleynikov was an "officer" was actually litigated in the Delaware action. That issue was central to, and hotly contested in, the Delaware action. The Delaware court explicitly ruled that Mr. Aleynikov was not an officer under the GSG bylaws.

Courts have found that an issue was not "actually litigated" when it was not decided in prior litigation, arose out of separate transactions and facts, or

11

was not necessary to the judgment. 18 Wright & Miller, *Federal Practice & Procedure* § 4419 (3d ed. 2016). Other scenarios under which an issue was raised in some fashion, but not actually litigated, have included administrative proceedings that are not adversarial, dismissals for lack of subject matter jurisdiction, or settlements where the parties did not intend their agreement to have preclusive effect. *Id.*; *see Arizona v. California*, 530 U.S. 392, 414 (2000).[6]

None of those considerations apply here. In this case, the issue of whether Mr. Aleynikov was an officer was fully litigated in and central to the Delaware action. That court adopted the Third Circuit's view of the law, conducted a bench trial on the facts, and decided the issue on the merits. *Aleynikov*, No. 10636-VCL.

### iii. Final and Valid Judgment

For issue preclusion to apply there must have been a valid final judgment on the merits in the prior case. *Peloro v. United States*, 488 F.3d 163, 175 (3d Cir. 2007). For example, "[a] judgment dismissing an action for want of personal jurisdiction ... may be clearly final and preclusive on the jurisdiction issue, but it is not on the merits for purposes of claim preclusion." 18 Wright & Miller, *Federal Practice & Procedure* § 4432 (3d ed. 2016).

In this matter, VC Laster of the Delaware Chancery Court ruled, after a bench trial, that Mr. Aleynikov was not an officer within the meaning of GSG's bylaws. *Aleynikov*, No. 10636-VCL. VC Laster did state, in dicta, that he would be "personally inclined" to find *contra proferentem* applicable as a matter of Delaware law. *Id.* He did not follow his view of Delaware law, however, believing himself to be bound by the Third Circuit's contrary view, and he did not apply *contra proferentem*. After trial, he held that Mr. Aleynikov was not an officer

---

[6] Fairness concerns may also arise when a defendant did not vigorously litigate a case for small or nominal damages and then offensive collateral estoppel is sought against that defendant in a later, more consequential case. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330 (1979). No such concerns are raised by this case. The parties in this action are identical to the parties in the Delaware action, and they were well aware of the stakes.

12

and thus not entitled to advancement. *Id.* That constituted a valid final judgment on the merits.

### iv. Essential to the Prior Judgment

Finally, the Delaware court's setting aside of *contra proferentem* and determination that Mr. Aleynikov was not an officer were essential to the prior judgment. If Mr. Aleynikov had been deemed an officer, he would have received advancement; since he was not found to be an officer, he did not receive advancement. That was not just an essential issue, but really the only issue, that determined the outcome of the Delaware case.

### v. Legal or Factual Issue

VC Laster ultimately ruled that Mr. Aleynikov, unaided by the *contra proferentem* tie-breaker, had failed to meet his "burden of proof" to establish that he was an officer. *Aleynikov*, No. 10636-VCL. Aleynikov claims that failure to meet the burden of proof was a legal ruling, not a factual one. Legal determinations, he says, do not result in issue preclusion. Therefore, he reasons, he can relitigate the issue in this court.

It is true that issue preclusion may not apply to bar relitigation of a pure, unmixed issue of law in a separate context. *See Montana v. United States*, 440 U.S. 147, 162-63 n.5 (1979) ("Where, for example, a court in deciding a case has enunciated a rule of law, the parties in a subsequent action *upon a different demand* are not estopped from insisting that the law is otherwise, merely because the parties are the same in both cases."). Whether a party has met its burden of proof at trial, however, is a factual, not legal, determination. *See, e.g., Davis v. Herlihy*, 628 A.2d 83, at *2 (Del. 1993) (unpublished table decision) ("[T]he trial judge must determine whether the party asserting that a *Batson* violation has occurred has the burden of proving purposeful discrimination. Our review of such a factual determination requires an application of the 'clearly erroneous' standard of appellate review." (internal citation omitted)); *York Distrib. Co. Div. of McCory Corp. v. Wittig*, 422 A.2d 1270, 1271 (Del. 1980) ("The Trial Judge … stat[ed] that [plaintiff] did not meet

13

its burden of proof. In an appeal from such a factual determination, we act with restraint."). Were it not so, virtually any factual determination could be recast as a legal issue; every factual determination, even one by a jury, involves a finding that a party did or did not meet some burden of proof.

Issue preclusion applies when a court holds that a litigant failed to prove the existence of a fact under the applicable burden of proof. "[A] party may be precluded under the doctrine of collateral estoppel from attempting a second time to prove a fact that he sought unsuccessfully to prove in a prior action." *Yates v. United States*, 354 U.S. 298, 335-36 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1, 8 (1978); *see Union Tel. Co. v. Qwest Corp.*, 495 F.3d 1187, 1195 (10th Cir. 2007) ("A judgment that a party has failed to carry their burden of proof may preclude that party, under the doctrine of collateral estoppel, from attempting to prove the same issue in a later adjudication." (citing *Yates*, 354 U.S. at 335-36)).

Wright and Miller have authoritatively elaborated on the fact/law distinction thus:

> It is reasonably clear that preclusion does not extend to principles of law formulated in abstract terms that could apply to completely separate fact settings. At the same time, it is quite clear that preclusion extends beyond findings of historic fact to include some determinations that mingle facts with conclusions of law. Preclusion generally is appropriate if both the first and second action involve application of the same principles of law to a historic fact setting that was complete by the time of the first adjudication.

18 Wright & Miller, *Federal Practice & Procedure* § 4425 (3d ed. 2018). Mr. Aleynikov seeks to apply the same principles of law to a historic fact setting—*i.e.*, the issue of whether he, as a vice president, occupied the position of officer. Issue preclusion applies.

Mr. Aleynikov's citations to case law are inapposite. He cites two Superior Court of Delaware cases stating that, for purposes of appellate review of unemployment compensation claims, the question of whether the employer has met its burden of proof under the preponderance standard is one of law. *Case*

14

*v. Bayhealth Med. Ctr., Inc.*, C.A. No. K15A-10-001 RBY, 2016 Del. Super. LEXIS 23, *5 (Del. Super. Ct. Jan. 19, 2016); *Reynolds v. Unemployment Ins. Appeal Bd.*, C.A. No. K15A-08-003 RBY, 2016 Del. Super. LEXIS 25, at *5 (Del. Super. Ct. Jan. 15, 2016). He also cites *Logullo v. State*, No. 9501013770, 1997 Del. Super. LEXIS 130, at *1-2 (Del. Super. Ct. Mar. 20, 1997) (holding htat the burden of proving that two driving statutes were similar, which would affect defendant's status as a repeat offender, was a question of law). Finally, he cites an appeal from a decision of the Board of Immigration Appeals. *Noori v. Att'y Gen.*, 193 F. App'x 181, 184 (3d Cir. 2006).

Those cases are far afield. They involve the treatment of factual findings on appeal, and they occurred in the context of a review of administrative decisions or a criminal sentence. They are not instructive regarding the preclusive effect of the Delaware action in this civil litigation.

The decision in the Delaware action that Mr. Aleynikov failed to meet his burden to prove that he was an officer has preclusive effect here.

### B. Mr. Aleynikov's Cross Motion and Alleged Change in State Law

Mr. Aleynikov argues that this court is nevertheless obligated to apply *contra proferentem*. (Pl. Br. 22-30). He claims that VC Laster's comments about his contrary view of Delaware law, post-dating the Third Circuit's decision, represent a binding, supervening change in applicable law. (Pl. Br. 22).

A federal court, it is true, generally "must apply the law in effect at the time it renders its decision." *See Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696, 714 (1974); *see also Zichy v. Philadelphia*, 590 F.2d 503, 508 (3d Cir. 1979) ("This court has a duty to apply a supervening rule of law despite its prior decisions to the contrary when the new legal rule is valid and applicable to the issues of the case."). Federal courts must "apply state law 'in accordance with the then controlling decision of the highest state court.... This requires the application of current state law, as determined by the state supreme court, even if it were to be changed while the federal action is pending." *Jacobson ex rel. Jacobson v. BMW of N. Am., LLC*, 376 F. App'x 261, 265 n.4 (3d Cir. 2010).

In this case, however, there has not been any supervening change in the law. VC Laster's statement that, were he not bound, he would apply *contra proferentem* to this case does not constitute a supervening rule of law. VC Laster did not apply a new view of *contra proferentem* in the Delaware action; rather, he regarded himself as bound by the Third Circuit's view that *contra proferentem* did not apply. Thus, after fact finding, he held that Mr. Aleynikov was not an officer for purposes of the GSG bylaws. *Aleynikov*, No. 10636-VCL. That decision turned, not on Delaware law as such, but on the binding issue-preclusive effect of the Third Circuit's prior decision. Thus VC Laster's comments as to Delaware law "must be regarded as dictum without any precedential value." *Gatz Props., LLC v. Auriga Capital Corp.*, 59 A.3d 1206, 1218 (Del. 2012). The Delaware Supreme Court, moreover, made this clear. Affirming, it expressly rested its decision on the correctness of VC Laster's application of issue preclusion. It "express[ed] no view at all on whether the Third Circuit's ruling was correct as a matter of Delaware law or on the Vice Chancellor's consideration of that question." *Aleynikov v. Goldman Sachs Group, Inc.*, 155 A.3d 370 (Del. 2017). VC Laster's comments are dicta; they worked no change in the law. Rather, his decision represents fact finding guided by precisely the Third Circuit view that directly binds this Court.

The issue of whether Mr. Aleynikov is an officer under the GSG bylaws has already been determined by the Delaware courts. Issue preclusion prevents relitigation of that issue in this court.

## IV. CONCLUSION

Mr. Aleynikov of course would prefer the view of the law stated by me in my original summary judgment decision and by VC Laster in dictum. This trial-level court, however, must faithfully implement the mandate of the Court of Appeals. It is doubly bound by the issue-preclusive effect of the prior Delaware judgment, which itself incorporated that same Court of Appeals decision. The Delaware court's decision now rebounds upon this court, constraining it to find that Aleynikov is not an officer.

Goldman Sachs Group's motion for judgment on the pleadings is granted. Aleynikov's motion for judgment on the pleadings is denied. An appropriate order accompanies this opinion.

Dated: March 23, 2018

KEVIN MCNULTY
**United States District Judge**